**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MASIMO CORPORATION,

       *Plaintiff*,

         v.

UNITED STATES CUSTOMS AND BORDER
PROTECTION; KRISTI NOEM, in her official capacity
as Secretary of Homeland Security; RODNEY SCOTT,
in his official capacity as Commissioner of U.S.
Customs and Border Protection; ALICE KIPEL, in her
official capacity as Executive Director of Regulations
and Rulings Office of International Trade, U.S. Customs
and Border Protection,

       *Defendants*.

Case No.: 1:25-cv-02749-ACR

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

BACKGROUND .......................................................................................................... 4

I.    Congress Granted the Commission and the Federal Circuit Exclusive Authority over
Section 337 Exclusion Orders ................................................................................ 4

II.   The Commission Issues an Exclusion Order Covering Certain Apple Smartwatches
Found to Infringe, but not Redesigned Smartwatches that do not ............................... 6

III.  Masimo Sues in this Court, Rather than Pursue Expedited Ancillary Proceedings
Before the Commission, and Applies for Extraordinary Injunctive Relief ........................ 12

SUMMARY OF THE ARGUMENT ................................................................................ 13

ARGUMENT ................................................................................................................ 14

I.    This Court Lacks Jurisdiction to Consider Masimo's Claims, All of Which Must be
Brought Before the Commission and then the Federal Circuit .................................. 14

    A.   Congress Intended to Preclude District-Court Jurisdiction Over Masimo's Claims, all
    of Which Involve the Commission's Limited Exclusion Order ............................. 18

    B.   Masimo Can Obtain Meaningful Judicial Review by Bringing its Claim Before the
    Commission and Appealing to the Sole Federal Appeals Court with Authority to Hear
    Patent and Trade Cases ....................................................................................... 20

    C.   Masimo's Claims Are Not "Wholly Collateral" to Section 337's Review Provision .. 21

    D.   The Commission Has Extensive Expertise in Addressing Masimo's Design-Around
    Claims ................................................................................................................ 23

II.   Even if this Court Has Subject-Matter Jurisdiction, this Action Should Nevertheless be
Dismissed Because the Commission Has Primary Jurisdiction .................................. 23

III.  Masimo Fails to Meet the High Bar Required for Obtaining the Extraordinary Relief of
a TRO or PI .......................................................................................................... 27

    A.   Masimo Is Not Likely To Succeed On The Merits Of Its Claims ............................ 27

    B.   Masimo Fails to Make a Clear Showing of Imminent Irreparable Harm .................... 32

    C.   The Public Interest and Balance of Hardships Compel Denial Of Injunctive Relief ... 38

IV.   Masimo Must Give Security for Injunctive Relief ...................................................... 40

CONCLUSION ............................................................................................................. 41

## **TABLE OF AUTHORITIES**

**Cases**

*Akzo N.V. v. ITC,*
  808 F.2d 1471 (Fed. Cir. 1986) .......................................................................... 4

*Apple Inc. v. Samsung Elecs. Co., Inc.,*
  735 F.3d 1352 (Fed. Cir. 2013) ........................................................................ 39

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) .......................................................................................... 14

*\*Axon Enter., Inc. v. Fed. Trade Comm'n,*
  598 U.S. 175 (2023) ............................................................................ 17, 18, 22, 23

*Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984) .......................................................................................... 17

*Borlem S.A.-Empreedimentos Industriais v. United States,*
  710 F. Supp. 797 (Ct. Int'l Trade 1989) ............................................................ 25

*Cardinal Health, Inc. v. Holder,*
  846 F. Supp. 2d 203 (D.D.C. 2012) .................................................................. 33

*\*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006) ................................................................ 32, 33, 34

*Corning Gilbert Inc. v. United States,*
  896 F. Supp. 2d 1281 (Ct. Int'l Trade 2013) .................................................... 21

*Crucible Materials Corp. v. ITC,*
  127 F.3d 1057 (Fed. Cir. 1997) .......................................................................... 6

*Dep't of Educ. v. California,*
  145 S. Ct. 966 (2025) ........................................................................................ 27

*DSE, Inc. v. United States,*
  169 F.3d 21 (D.C. Cir. 1999) ............................................................................ 39

*\*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ................................................................................ 34, 37, 39

*\*Elgin v. Dep't of Treas.,*
  567 U.S. 1 (2012) ........................................................................................ 15, 17

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) .......................................................................................... 29

*Endo Par Innovation Co. v. Becerra*,
   2024 WL 2988904 (D.D.C. June 10, 2024)..................................................35, 36

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010)..............................................................................17, 18

*Fresno Cmty. Hosp. & Med. Ctr v. Azar*,
   370 F. Supp. 3d 139 (D.D.C. 2019).................................................................15

*Fuji Photo Film Co., Ltd. v. ITC*,
   474 F.3d 1281 (Fed. Cir. 2007)....................................................................4, 5

*Gunn v. Minton*,
   568 U.S. 251 (2013)...............................................................................14

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
   607 F.3d 453 (7th Cir. 2010) .....................................................................40

*Hanson v. D.C.*,
   120 F.4th 223 (D.C. Cir. 2024)..................................................................32, 33

*Hensley v. United States*,
   292 F. Supp. 3d 399 (D.D.C. 2018)................................................................30

*Hesai Tech. Co. v. U.S. Dep't of Def.*,
   2025 WL 1911673 (D.D.C. July 11, 2025) ........................................................28

*Himmelman v. MCI Commc'ns Corp.*,
   104 F. Supp. 2d 1 (D.D.C. 2000).........................................................24, 25, 26

*Hi-Tech Pharmacal Co. v. FDA*,
   587 F. Supp. 2d 1 (D.D.C. 2008)..................................................................35

*Hyundai Elecs. Indus. Co. v. ITC*,
   899 F.2d 1204 (Fed. Cir. 1990) ...................................................................5

*Int'l Custom Prods., Inc. v. United States*,
   791 F.3d 1329 (Fed. Cir. 2015)..................................................................31, 32

*James Madison Ltd. by Hecht v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996)....................................................................14

*Jarkesy v. S.E.C.*,
   803 F.3d 9 (D.C. Cir. 2015)...................................................................19, 23

*Jazz Photo Corp. v. United States*,
   439 F.3d 1344 (Fed. Cir. 2006) .................................................................21, 31

*John Doe Co. v. CFPB*,
    235 F. Supp. 3d 194 (D.D.C. 2017) ................................................................ 32, 33

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................................. 21

*Loma Linda-Inland Consortium for Healthcare Educ. v. N.L.R.B.*,
    2023 WL 7294839 (D.C. Cir. May 25, 2023) ................................................... 18, 23

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
    2015 WL 2406061 (D. Del. May 18, 2015) .......................................................... 34

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ................................................................................................. 27

*Mova Pharmaceutical Corp. v. Shalala*,
    955 F. Supp. 128 (D.D.C. 1997) ............................................................................ 35

*Nat'l Assoc. of Immigration Judges v. Owen*,
    139 F.4th 293 (4th Cir. 2025) ................................................................................. 23

*Nat'l Black Police Ass'n v. D.C.*,
    108 F.3d 346 (D.C. Cir. 1997) .................................................................................. 3

*Nat'l Lifeline Ass'n v. FCC*,
    921 F.3d 1102 (D.C. Cir. 2019) .............................................................................. 28

*Nat'l Mining Ass'n v. Jackson*,
    768 F. Supp. 2d 34 (D.D.C. 2011) .......................................................................... 34

*Nat'l Treas. Emps. Union v. Trump*,
    2025 WL 1441563 (D.C. Cir. May 16, 2025) ........................................................ 40

*New Mexico v. Musk*,
    769 F. Supp. 3d 1 (D.D.C. 2025) ............................................................................ 27

*Ninestar v. ITC*,
    667 F.3d 1373 (Fed. Cir. 2012) ................................................................................ 4

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................. 37

*Reiter v. Cooper*,
    507 U.S. 258 (1993) ................................................................................................. 24

*Sampson v. Murray*,
    415 U.S. 61 (1974) ................................................................................................... 33

*Scottsdale Capital Advisors Corp. v. FINRA*,
  390 F. Supp. 3d 72 (D.D.C. 2019) ............................................................... 15

*SoundExchange, Inc. v. Music Choice*,
  2021 WL 5998382 (D.D.C. Dec. 20, 2021).................................................... 26

*Suprema, Inc. v. ITC*,
  796 F.3d 1338 (Fed. Cir. 2015) ...................................................................... 4

*Telecomms. Res. & Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984)......................................................................... 15

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)............................................................... 13, 16, 17, 20, 23

*Tompkins Seals, Inc. v. West Co.*,
  1985 WL 4952 (E.D. Pa. Dec. 17, 1985)....................................................... 25

*United States v. Philip Morris USA Inc.*,
  686 F.3d 832 (D.C. Cir. 2012)....................................................................... 24

*United States v. Western Pac. R. Co.*,
  352 U.S. 59 (1956).......................................................................................... 24

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).................................................................... 27, 36, 37, 38

*Wirtgen Am., Inc. v. United States*,
  2021 WL 12242760 (D.D.C. Apr. 6, 2021)...................................................... 3

*Wirtgen Am., Inc. v. United States*,
  443 F. Supp. 3d 198 (D.D.C. 2020) ................................. 3, 13, 18, 19, 20, 21, 22, 23

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985)................................................................. 33, 36

**Statutes**

19 U.S.C. § 1337 ................................................................................. 1, 4, 21

19 U.S.C. § 1337(a)(1)(B)(i)........................................................................... 4

19 U.S.C. § 1337(c) ................................................................................ 4, 6, 19

19 U.S.C. § 1337(d) ......................................................................................... 5

19 U.S.C. § 1337(d)(1) .............................................................................. 25, 35

19 U.S.C. § 1337(f).................................................................................... 6, 19

19 U.S.C. § 1337(i) ................................................................................................ 5

19 U.S.C. § 1337(j) ................................................................................................ 7

19 U.S.C. § 1337(j)(3) ....................................................................................... 9, 37

19 U.S.C. § 1337(k) ............................................................................................... 5

19 U.S.C. § 1337(k)(2) ........................................................................................... 5

19 U.S.C. § 1401(i) ................................................................................................ 5

19 U.S.C. § 1499 .................................................................................................. 30

19 U.S.C. § 1502 .................................................................................................. 29

19 U.S.C. § 1624 .................................................................................................. 29

19 U.S.C. § 66 ...................................................................................................... 29

28 U.S.C. § 1295 .............................................................................................. 1, 20

28 U.S.C. § 1295(a)(6) ................................................................................ 6, 19, 20

28 U.S.C. § 1331 .................................................................................................. 15

28 U.S.C. § 1581(a) .............................................................................................. 21

28 U.S.C. § 1659(a) .............................................................................................. 26

35 U.S.C. § 271(a) ................................................................................................ 34

5 U.S.C. § 706 .................................................................................................. 6, 28

6 U.S.C. § 212 ........................................................................................................ 5

6 U.S.C. § 215 ........................................................................................................ 5

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................................. 39

**Regulations**

19 C.F.R. § 177.11 .......................................................................................... 11, 29

19 C.F.R. § 177.11(b)(5) ....................................................................................... 29

19 C.F.R. § 177.2 .................................................................................................. 29

19 C.F.R. § 177.7(a) .................................................................................. 29

19 C.F.R. § 210.50(a)(3) .......................................................................... 37

19 C.F.R. § 210.50(a)(4) ............................................................................ 8

19 C.F.R. § 210.75 ..................................................................................... 2

19 C.F.R. § 210.76 ..................................................................................... 2

19 C.F.R. pt. 0 ............................................................................................ 5

19 C.F.R. pt. 177 ............................................................................ 9, 11, 29

19 C.F.R. pt. 210 ...................................................................................... 31

**Other Authorities**

86 Fed. Reg. 46,275 (ITC Aug. 18, 2021) ............................................. 6, 8

88 Fed. Reg. 32,243 (ITC May 19, 2023) .................................................. 8

88 Fed. Reg. 75,032 (ITC Nov. 1, 2023) .................................................... 9

Customs Directive No. 2310-006A (Dec. 16, 1999) ................................... 5

H.R. Rep. No. 100-576 (1988) ................................................................. 35

H.R. Rep. No. 103-826(I) (1994) ............................................................. 26

HQ H335304 (Jan. 12, 2024) .............................................................. 9, 10

HQ H338254 (Jan. 7, 2025) ............................................... 2, 11, 14, 28, 30

HQ H351038 (Aug. 1, 2025) ............................................. 2, 11, 14, 30, 31

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MASIMO CORPORATION,<br><br>       *Plaintiff*,<br><br>       v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; ALICE KIPEL, in her official capacity as Executive Director of Regulations and Rulings Office of International Trade, U.S. Customs and Border Protection,<br><br>       *Defendants*. | Case No.: 1:25-cv-02749-ACR |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Congress tasked the U.S. International Trade Commission with determining whether imported products infringe a patent and should be excluded from entry into the United States. By statute, only the Commission has the authority to issue these import bans, called exclusion orders, or to modify them to address changed conditions of fact or law, including whether redesigned articles, certain importation practices, or post-importation conduct violate section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. And by statute, review of the Commission's exclusion orders can be had only through direct appeal to the U.S. Court of Appeals for the Federal Circuit—the specialized appellate court with exclusive jurisdiction over patent and trade matters. 28 U.S.C. § 1295.

In 2023, the Commission issued a limited exclusion order barring the importation of certain models of Apple, Inc. smartwatches based on its finding that one feature thereof—a blood oxygen sensor system—infringed plaintiff Masimo Corporation's asserted patents. Apple redesigned its smartwatches so that the infringing functionality is no longer performed on the smartwatch in its entirety. In a January 2025 *inter partes* ruling, U.S. Customs and Border Protection (Customs), which merely enforces the Commission's orders as written and lacks the authority to modify them, explained that the redesigned smartwatches, when imported alone, would not be excluded from entry. HQ H338254 at 35 (Jan. 7, 2025). Specifically, Customs determined "that Masimo's theory of infringement for the Redesign 2 Watch, when considered ***alone*** for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the [limited exclusion order]." *Id.* (emphasis in original). Masimo raised no other theory of infringement in the proceeding leading to the January 2025 ruling, and Customs reiterated its position on the redesigned smartwatch's admissibility in an August 2025 "internal advice ruling" requested solely by a Customs field office. HQ H351038 at 21 (Aug. 1, 2025).

Masimo waited to sue the defendants until Customs' August 2025 ruling confirmed that the January 2025 ruling meant what it said—that the Commission's order does not cover Apple's redesigned smartwatches when imported alone. The thrust of Masimo's claims, which it couches in terms of the Administrative Procedure Act (APA) and Fifth Amendment due process, is that Customs should have read the limited exclusion order to bar the redesigned smartwatches regardless of their condition as imported.

Masimo's sole remedy, however, is to pursue an ancillary proceeding—whether an enforcement proceeding under 19 C.F.R. § 210.75, a modification proceeding under 19 C.F.R. § 210.76, or both—before the Commission to address Apple's redesigned smartwatches and any

allegation of post-importation infringement. The Commission's final determination would then be appealable to the Federal Circuit. Masimo cannot bypass this statutorily prescribed avenue of administrative and judicial review by seeking a temporary restraining order (TRO) and preliminary injunction (PI) from this Court, rather than seeking enforcement or modification of the limited exclusion order from the Commission. The comprehensive statutory scheme enacted by Congress, which provides Masimo with an exclusive avenue to have its challenges adjudicated, precludes this Court's exercise of subject-matter jurisdiction in this case, just as this Court concluded in *Wirtgen America, Inc. v. United States*, 443 F. Supp. 3d 198, 210–14 (D.D.C. 2020).[1]

Even if this Court had subject-matter jurisdiction (it does not), a TRO and PI is unwarranted for the simple reason that Masimo has failed to make the clear showing of imminent, irreparable harm that is required for such extraordinary relief. Masimo has not provided a single declaration substantiating its asserted harms, which regardless amount to reparable monetary harm. Nor has Masimo demonstrated a likelihood of success on its APA and constitutional claims, or that the balance of harms and public interest favor it over defendants.

Accordingly, the Court should dismiss this action for lack of subject-matter jurisdiction and deny Masimo injunctive relief.

---

[1] Although *Wirtgen* was later vacated as moot due to the Commission's subsequent modification of the exclusion order at issue, *Wirtgen Am., Inc. v. United States*, 2021 WL 12242760, at *1 (D.D.C. Apr. 6, 2021), vacatur for mootness simply eliminates any preclusive effect of a judgment. *See id.* It does not reduce an opinion's persuasive value. *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 354 (D.C. Cir. 1997) ("[S]ince the district court's opinion will remain 'on the books' even if vacated, albeit without any preclusive effect, future courts will be able to consult its reasoning.").

## BACKGROUND

**I.    Congress Granted the Commission and the Federal Circuit Exclusive Authority over Section 337 Exclusion Orders**

Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, is a trade statute enacted to protect American industry from unfair trade practices occurring overseas. *See, e.g.*, *Ninestar v. ITC*, 667 F.3d 1373, 1384 (Fed. Cir. 2012) (quoting *Akzo N.V. v. ITC*, 808 F.2d 1471, 1488 (Fed. Cir. 1986) ("Although it is true that private rights may be affected by section 337 determinations, the thrust of the statute is directed toward the protection of the public interest from unfair trade practices in international commerce.")); *see also Suprema, Inc. v. ITC*, 796 F.3d 1338, 1350 (Fed. Cir. 2015) (en banc) ("The legislative history consistently evidences Congressional intent to vest the Commission with broad enforcement authority to remedy unfair trade acts."). Specifically, section 337 prohibits "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation … of articles" that "infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B)(i).

Congress charged the Commission with investigating potential violations of section 337. At the conclusion of an investigation, the Commission determines whether a violation of section 337 has occurred. A determination that results in an exclusion order must "be made on the record after notice and opportunity for a hearing," at which "[a]ll legal and equitable defenses may be presented." *Id*. § 1337(c).

The Commission generally issues one of two types of exclusion orders: (1) a limited exclusion order or (2) a general exclusion order. *See Fuji Photo Film Co., Ltd. v. ITC*, 474 F.3d 1281, 1286 (Fed. Cir. 2007). "A limited exclusion order is 'limited' in that it only applies to the specific parties before the Commission in the investigation. In contrast, a general exclusion order bars the importation of infringing products by everyone, regardless of whether they were

respondents in the Commission's investigation." *Id.* The Commission may also order "that any article imported in violation of" section 337 "be seized and forfeited to the United States" if certain conditions are met. 19 U.S.C. § 1337(i).

The Commission does not enforce its exclusion or its seizure and forfeiture orders at the border, but, rather, directs Customs to exclude from entry into the United States merchandise that is subject to a section 337 exclusion order. *See* 19 U.S.C. § 1337(d) ("The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry."); 19 U.S.C. § 1401(i); 6 U.S.C. §§ 212, 215; 19 C.F.R. pt. 0; Customs Directive No. 2310-006A (Dec. 16, 1999). In addition, the Commission may issue an order under 19 U.S.C. § 1337(i) directing Customs to seize and forfeit articles attempting entry in violation of an exclusion order when certain parameters are met.

Customs will continue to enforce an exclusion order until the Commission finds "that the conditions which led to such exclusion from entry no longer exist." 19 U.S.C. § 1337(k). A party to a Commission proceeding may seek a modification or rescission of an existing exclusion order or a seizure-and-forfeiture order on the ground that the infringer is no longer violating the statute, or that the infringer is circumventing an exclusion order, such as in the instance of a redesign. *See id.* § 1337(d) and (k)(2). The burden of proof in such proceedings (for instance, to demonstrate non-infringement) is on "would-be importers of potentially infringing articles[.]" *Hyundai Elecs. Indus. Co. v. ITC*, 899 F.2d 1204, 1210 (Fed. Cir. 1990). Both the patentee and the infringer are parties to a modification proceeding.

Section 337 also provides for judicial review. "Any person adversely affected by a final determination of the Commission" has 60 days to appeal the Commission's determination to the

Federal Circuit.  19 U.S.C. § 1337(c).  The outcome of an enforcement proceeding and

modification or rescission proceeding is likewise subject to direct review in the Federal Circuit.

*Crucible Materials Corp. v. ITC*, 127 F.3d 1057, 1061 (Fed. Cir. 1997).  The Federal Circuit has

exclusive jurisdiction to hear such appeals, 28 U.S.C. § 1295(a)(6), and reviews the

Commission's orders under the standards prescribed by the APA, 5 U.S.C. § 706.  *See Crucible*

*Materials Corp.*, 127 F.3d at 1061.  District-court review is only available in the narrow

circumstances where a respondent raises a counterclaim, 19 U.S.C. § 1337(c), or where a person

violates a cease-and-desist order and the Commission moves to collect a penalty it has assessed

against that person, *id.* § 1337(f).

## II.     The Commission Issues an Exclusion Order Covering Certain Apple Smartwatches Found to Infringe, but not Redesigned Smartwatches that do not

On August 18, 2021, the Commission initiated an investigation based on an amended and

supplemented complaint filed by complainants Masimo and Cercacor Laboratories, Inc.

(Cercacor).  86 Fed. Reg. 46,275, 46,275–76 (ITC Aug. 18, 2021).  The complaint alleged

violations of section 337 based upon the importation into the United States, the sale for

importation, and the sale within the United States after importation of certain light-based

physiological measurement devices and components thereof by reason of infringement of certain

claims of U.S. Patent Nos. 10,912,501 (the '501 patent), 10,912,502 (the '502 patent),

10,945,648 (the '648 patent), 10,687,745 (the '745 patent), and 7,761,127 (the '127 patent,

owned by Cercacor) (collectively, the Asserted Patents).  *Id.*  The complaint further alleged that

an industry in the United States exists and/or is in the process of being established.  *Id.*  The

notice of investigation named Apple Inc. of Cupertino, California as the sole respondent.  *Id.* at

46,276.

On March 23, 2022, the Commission's investigation was terminated as to several claims. Order No. 25 (Mar. 23, 2022), *unreviewed by* Comm'n Notice (Apr. 12, 2022); Order No. 33 (May 20, 2022), *unreviewed by* Comm'n Notice (June 10, 2022).  On May 13, 2022, the parties filed their pre-hearing briefs.  From June 6 through 10, 2022, a full hearing before a Commission Administrative Law Judge (ALJ) was held on the claims that remained at issue: claim 12 of the '501 patent; claims 22 and 28 of the '502 patent; claims 12, 24, and 30 of the '648 patent; claims 9, 18,4 and 27 of the '745 patent; and claim 9 of the '127 patent.  The parties filed initial post-hearing briefs on June 27, 2022, and the parties filed post-hearing reply briefs on July 11, 2022.

On January 10, 2023, the ALJ issued a Final Initial Determination (Final ID), which found that Apple violated section 337 as to only claims 24 and 30 of the '648 patent.  *See* Final ID at 335–36.  The Final ID found that Masimo did not establish a violation as to the other remaining asserted claims.

On January 23, 2023, the parties filed petitions for review of the Final ID.  The parties each filed responses to the other's respective petitions on January 31, 2023.

Separately, on January 24, 2023, the ALJ issued a Recommended Determination on Remedy and Bonding (RD).  The RD recommended that, if the Commission finds a violation, it should issue a limited exclusion order directed to certain wearable electronic devices with light-based pulse oximetry functionality and components thereof that are imported, sold for importation, and/or sold after importation by Apple; and a cease-and-desist order directed to Apple.  *See* RD at 2–5.  The RD additionally recommended that the Commission set a zero percent bond (*i.e.*, no bond) during the sixty-day period of Presidential review.[2]  *See id.* at 6–7.

---

[2] Under 19 U.S.C. § 1337(j), the President has the authority to disapprove the Commission's determination that there is a violation of the statute "for policy reasons."

The Commission's notice of investigation did not instruct the ALJ to make findings and recommendations concerning the public interest. *See* 86 Fed. Reg. at 46,275–76.

On January 24 and 30, 2023, after the Final ID issued and petitions for review were filed before the Commission, the United States Patent and Trademark Office (USPTO) denied Apple's request for the institution of *inter partes* review proceedings (IPRs) as to the '501, '502, and '648 patents based on a combination of references that included the same primary reference as one of the combinations of references asserted against the asserted claims of those patents in the Commission investigation. *See Apple Inc. v. Masimo Corp.*, IPR2022-01272 (USPTO Jan. 24, 2023) ('501 patent); *Apple Inc. v. Masimo Corp.*, IPR2022-01274 (USPTO Jan. 24, 2023) ('502 patent); *Apple Inc. v. Masimo Corp.*, IPR2022-01276 (USPTO Jan. 30, 2023) ('648 patent).

On February 23, 2023, the parties filed their public interest statements at the Comission pursuant to 19 C.F.R. § 210.50(a)(4). On May 15, 2023, after considering the parties' petitions and responses thereto, the Commission determined to review the Final ID in part. *See* 88 Fed. Reg. 32,243, 32,243–46 (ITC May 19, 2023). In particular, the Commission determined to review: (1) the domestic industry with regard to the '501 patent, the '502 patent, the '648 patent, and the '745 patent; (2) obviousness with regard to the '501 patent, the '502 patent, the '648 patent, and the '745 patent; (3) written description with regard to claim 28 of the '502 patent and claim 12 of the '648 patent; (4) claim construction and infringement with regard to the '745 patent; and (5) subject matter jurisdiction. *Id.* at 32,244. The Commission determined not to review the remaining findings of the Final ID, including the finding of no violation as to the '127 patent. *Id.* The Commission requested briefing on certain issues under review and also on remedy, the public interest, and bonding. *See id.* at 32,244–46. The Commission's public interest briefing request also solicited input from non-parties. *See id*.

On June 5, 2023, the parties filed their written submissions on the issues under review and on remedy, public interest, and bonding. Then, on June 12, 2023, the parties filed their reply submissions. The Commission also received numerous comments on the public interest from non-parties.

On October 26, 2023, the Commission found that Apple violated section 337 as to claims 22 and 28 of the '502 patent and claims 12, 24, and 30 of the '648 patent, and issued limited exclusion order and cease-and-desist order. 88 Fed. Reg. 75,032, 75,032–33 (ITC Nov. 1, 2023). The Commission determined that the public interest factors did not preclude issuance of the remedial orders. *See id.*; 19 U.S.C. § 1337(j)(3). In the limited exclusion order, the Commission ordered that "light-based physiological measurement devices and components thereof … that infringe one or more of claims 22 and 28 of the '502 patent and claims 12, 24 and 30 of the '648 patent are excluded from entry for consumption into the United States … for the remaining terms of the Asserted Patents, except under license from, or with the permission of, the patent owner or as provided by law." *Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276, EDIS Doc. ID 2011470, Limited Exclusion Order (Oct. 26, 2023) at 2, ¶ 1. The Commission further defined the articles covered by the limited exclusion order as "wearable electronic devices with light-based pulse oximetry functionality and components thereof." *Id.* at 2, ¶ 2.

Apple then redesigned its smartwatches. On October 27, 2023, Apple requested an *inter partes* administrative ruling from Customs, subject to 19 C.F.R. pt. 177, arguing that its redesigned smartwatches were not subject to the limited exclusion order because they did not infringe any claims of the '502 and '648 patents. *See* HQ H335304 at 8 (Jan. 12, 2024). In its ruling request, Apple stated that the redesigned smartwatches in question were no longer

reasonably capable of satisfying the claim limitations at issue in the limited exclusion order. *Id.* at 1. Specifically, Apple's argument was based on the pairing process between the redesigned smartwatch and an unmodified iPhone such that the infringing pulse oximetry functionality was disabled. *Id.* at 11.

In response, Masimo argued that an ability existed that allowed the redesigned Apple Watch to practice the claim limitations at issue. *Id.* at 13. Specifically, Masimo attempted to show that the infringing pulse oximetry functionality from the legacy devices at issue in the underlying Commission investigation, while disabled, could nonetheless be enabled "after (1) jailbreaking the iPhones used for pairing with the Redesigned Watches that is needed to activate the Watches and put them into operation; and (2) installing third-party software[.]" *Id.* at 29.

While that process was ongoing, on December 26, 2023, the Commission's limited exclusion order became final after the expiration of the 60-day Presidential review period. Compl. ¶ 31. On January 9, 2024, Apple appealed the Commission's orders to the U.S. Court of Appeals for the Federal Circuit. *Apple, Inc. v. ITC*, No. 24-1285 (Fed. Cir.). Oral arguments were held on July 7, 2025, and a decision remains pending.

Then, on January 12, 2024, Customs concluded that Apple's redesigned smartwatches with the pulse oximetry functionality disabled "cannot infringe without modification—the modification of jailbreaking the iPhones that is needed for pairing with the Redesigned Watches for their operation and the installation of the software." HQ H335304 at 28 (Jan. 12, 2024). Accordingly, Customs concluded that the redesigned smartwatches at issue in the January 2024 ruling did not infringe the '502 and '648 patents, and were therefore not subject to the Commission's limited exclusion order. *See id.*

On March 26, 2024, Apple submitted a second request to Customs for an *inter partes* administrative ruling pursuant to 19 C.F.R. pt. 177. Apple's second request concerned its "Redesign 2 Watch" in which the processing responsible for the final calculation of a user's blood oxygen saturation moved from the Apple Watch to the iPhone. HQ H338254 at 9 (Jan. 7, 2025). Apple referred to its smart watches at issue in this second administrative ruling request as the "Redesign 2 Watch" and the iPhone at issue as the "Redesigned iPhone." *Id.*

On January 7, 2025, following the *inter partes* proceeding conducted pursuant to 19 C.F.R. pt. 177—in which both Masimo and Apple participated—Customs determined "that Masimo's theory of infringement for the Redesign 2 Watch, when considered ***alone*** for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the [limited exclusion order]." *Id.* at 35 (emphasis in original).

On August 1, 2025, in response to an Internal Advice Request, 19 C.F.R. § 177.11, from a Customs' field office, Customs Headquarters applied its prior January 2025 ruling, which resulted from the *inter partes* process in which both Apple and Masimo participated, to a detained shipment of Redesign 2 Watches, imported by Apple, and concluded that

> the redesign[ed] Apple Watch, when considered alone, [is] "not a basis to refuse the article's entry pursuant to the" limited exclusion order from the 1276 investigation. As such, if imported alone, there is no basis to exclude the Apple Watches from entry because, as noted above and in light of the [Exclusion Order Enforcement] Branch's findings, they do not directly infringe the asserted patents in the limited exclusion order from ITC Inv. No. 337-TA-1276. In other words, if imported alone, the redesigned Apple Watches are not subject to exclusion from entry and, for purposes of Section 337 administration, they are to be released since, by themselves, they do not satisfy all of the relevant claim limitations and therefore cannot directly infringe the asserted patent claims. For these reasons, the redesigned Apple Watches at the Port of Chicago under Detention No. 1751555713390 are to be released.

HQ H351038 at 16 (Aug. 1, 2025).

11

**III.    Masimo Sues in this Court, Rather than Pursue Expedited Ancillary Proceedings Before the Commission, and Applies for Extraordinary Injunctive Relief**

Rather than seek an expedited ancillary proceeding before the Commission to evaluate Apple's redesigned smartwatches following Customs' January 7, 2025 ruling, Masimo instead waited nearly eight months to improperly seek relief from this Court.  Masimo now seeks an order enjoining Customs from giving effect to its August 1, 2025 ruling letter, based on three separate legal theories.

First, in Count I, Masimo alleges that "[Customs'] August 2025 ruling is arbitrary and capricious" because (1) "it enables circumvention of the January 2025 ruling's core finding that the watch and phone combination infringes on Plaintiff's patent, without any explanation of the practical inconsistency"; (2) "[Customs] adopted a self-imposed rule against considering indirect infringement theories without adequate justification"; and (3) "[Customs] failed to consider the impact on [Masimo's] patent rights, which were specifically protected by the [Commission's] limited exclusion order."  Compl. ¶¶ 72–74.

In Count II of its complaint, Masimo alleges that Customs' "August 2025 ruling improperly narrows the scope of its analysis to exclude consideration of indirect infringement theories that would prevent circumvention of the [Commission's] Exclusion."  *Id.* ¶ 83.

Finally, in Count III of its complaint, Masimo alleges it has been denied due process in violation of the Fifth Amendment.  *Id.* ¶¶ 89–97.  Specifically, Masimo contends that Customs "employed an *ex parte* process that wholly excluded the participation and technical expertise of [Masimo]."  *Id.* ¶ 95.

With its complaint, Masimo filed a motion for a TRO and PI, seeking an order "preventing implementation of the August 2025 ruling and requiring [Customs] to enforce the [Commission's] exclusion order" according to Masimo's incorrect understanding of Customs'

January 2025 ruling and its holding regarding the importation of the redesigned smartwatches when entered alone.  Mot. at 2.  As we demonstrate below, all three counts of the complaint should be dismissed for lack of subject-matter jurisdiction.  And even if this Court did have subject-matter jurisdiction—it does not—the extraordinary relief of a TRO or PI is unwarranted given that Masimo has failed to show imminent irreparable harm, let alone that it is likely to succeed on the merits or that the public interest and balance of hardships favor it over the United States.

## <u>SUMMARY OF THE ARGUMENT</u>

In section 337, Congress has set forth a comprehensive statutory scheme for hearing challenges involving the Commission's exclusion orders.  The scheme includes a challenge before the Commission in an ancillary proceeding and direct appeal to the Federal Circuit.  The scheme does not, however, include commencing an action in a district court.  Through section 337, Congress required that challenges to the scope of a limited exclusion order be channeled back to the Commission and to the Federal Circuit, precluding district-court jurisdiction in the process.  *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  Resolving a challenge over whether Apple's redesign is within the scope of the exclusion order—which is what all of Masimo's claims boil down to—is thus solely within the ambit of the Commission and the Federal Circuit, just as *Wirtgen* concluded.  443 F. Supp. 3d at 210–14.  Masimo's complaint should therefore be dismissed in its entirety for lack of subject-matter jurisdiction.  And even if *Thunder Basin* did not deprive this Court of jurisdiction, the separate doctrine of primary jurisdiction would still counsel in favor of allowing the Commission to consider Masimo's claims first.

Even assuming this Court had jurisdiction (which it does not), Masimo's request for the extraordinary relief of a TRO or PI still should be denied. To start, Masimo's APA and constitutional claims are unlikely to succeed. Masimo's complaint purports to challenge Customs' ruling of August 2025 permitting entry of Apple's redesigned smartwatches, HQ H351038 (Aug. 1, 2025), as substantively and procedurally flawed. Customs' August 2025 ruling, however, is merely an inevitable application of its January 2025 *inter partes* ruling that concluded that the redesigned smartwatch, "when considered ***alone*** for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the [limited exclusion order]." HQ H338254 at 35 (Jan. 7, 2025) (emphasis in original). Moreover, there is no basis for Masimo to raise challenges of due process as Customs issued its January and August 2025 rulings in accordance with its regulatory framework and the law. Nor has Masimo made a clear showing of imminent irreparable harm. It does not support its arguments with any evidence, and, in any event, its asserted harms are monetary ones that could be remedied by seeking damages against Apple. Finally, Masimo has not demonstrated that the public interest or balance of hardships would favor it over the defendants.

## **ARGUMENT**

### I.    **This Court Lacks Jurisdiction to Consider Masimo's Claims, All of Which Must be Brought Before the Commission and then the Federal Circuit**

"Federal courts are courts of limited jurisdiction, with only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation omitted). They thus "have an affirmative obligation to consider whether the constitutional and statutory authority exist … to hear each dispute" before them. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quotation omitted). Absent subject-matter jurisdiction over a case, the Court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Masimo's complaint purports to challenge Customs' August 2025 ruling permitting entry of Apple's redesigned smartwatches. HQ H351038 (Aug. 1, 2025). But this is artful pleading. *See Scottsdale Capital Advisors Corp. v. FINRA*, 390 F. Supp. 3d 72, 75 (D.D.C. 2019) ("[T]his Court's jurisdiction turns on the substance of that claim rather than the label affixed to it."); *Fresno Cmty. Hosp. & Med. Ctr v. Azar*, 370 F. Supp. 3d 139, 149 (D.D.C. 2019) ("Plaintiffs' crafty pleading cannot hide the true nature of their claims. Nor can Plaintiff's clever phrasing be used to avoid a bar on judicial review."). As evidenced by Masimo's requested relief, all of Masimo's claims concern whether the redesigned smartwatches that were the subject of the January 2025 *inter partes* ruling, when imported alone, are covered by the Commission's limited exclusion order and, as a consequence, excluded from entry into the United States. Under *Thunder Basin* and its progeny, Masimo must bring these claims before the Commission, and then appeal to the Federal Circuit if necessary—the exclusive avenue for enforcement, modification, and review of limited exclusion orders.

District courts generally possess jurisdiction over "all actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. However, where Congress has "channeled" judicial review through "a statutory scheme of administrative review followed by direct review in a federal appellate court," district-court jurisdiction can be pre-empted. *Elgin v. Dep't of Treas.*, 567 U.S. 1, 9–10 (2012). Channeling serves several "compelling policy goals"—including the appellate courts' "develop[ment of] expertise concerning the agencies assigned them for review," the "promot[ion of] judicial economy and fairness to the litigants by taking advantage of that expertise," and the "eliminat[ion of] duplicative and potentially conflicting review, and the delay and expense incidental thereto." *Telecomms. Res. & Action Ctr. v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984) (citation omitted).

Two Supreme Court decisions establish the pertinent law concerning subject-matter jurisdiction and channeling as it concerns the jurisdiction of Federal district courts: *Thunder Basin* and *Elgin*.

The statutory scheme under consideration in *Thunder Basin* was the Federal Mine Safety and Health Amendments Act of 1977 (Mine Act), which was enacted to "protect the health and safety of the Nation's coal or other miners." *Thunder Basin*, 510 U.S. at 202. Violations of the Mine Act could be met with various sanctions and penalties. *Id*. at 203. The Mine Act created a comprehensive scheme for reviewing and challenging assessed penalties such that mine operators could challenge the assessed violation to an administrative body whose decision could then be appealed to an appropriate Court of Appeals. *Id*. at 208.

One of the requirements under the Mine Act was for the Secretary of Labor or its agent to conduct random inspections of mines. *Id.* at 202–03. Mining companies were required to designate and post the identity of company representatives to accompany the inspectors and participate in post inspection discussions. *Id.* at 203–04. Thunder Basin Coal Company operated a non-union mine. *Id*. at 204. Although it designated the required representatives, it did not post the identity of these individuals as required by the Act. *Id*. Prior to being penalized under the Mine Act, Thunder Basin challenged the Mine Act's requirement to post the identity of the representatives in the district court as having violated Thunder Basin's rights under the National Labor Relations Act. *Id*. at 205. Thunder Basin sought and received an injunction in the district court, but the court of appeals reversed, holding that "the Mine Act's comprehensive enforcement and administrative review scheme precluded district court jurisdiction over petitioner's claims." *Id*. (quotation omitted). The Supreme Court agreed and held that Congress had channeled enforcement proceedings concerning the Mine Act to the Federal Mine Safety

Commission, not the district courts.  *Id.* at 214. The Court explained that to determine whether Congress has channeled review, no express or even heightened showing of congressional intent is required.  Congress's intent needs only be "fairly discernible in the statutory scheme." *Id.* at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).

Similarly, in *Elgin*, the Supreme Court held that district courts lack jurisdiction to entertain certain Merit Systems Protection Board claims that are appealable from that board directly to the Federal Circuit.  567 U.S. at 10.  The Court rejected an attempt by the plaintiffs— Federal employees who were terminated for failing to register for the selective service—to challenge the constitutionality of their termination without proceeding through the administrative process established in the Civil Service Reform Act.  *Id.* at 6–8.  The Act provided for administrative review followed by direct appeal to the Federal Circuit.  *Id.* at 10.  The Supreme Court held that the Act's "comprehensive system for reviewing personnel action taken against federal employees" provided the plaintiffs' exclusive means of review.  *Id.* at 5.  Further, the Court expressly rejected the plaintiffs' argument that the Act's "exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional." *Id.* at 13.  The Court explained that "the [Act] does not foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit," and "the Federal Circuit is fully capable of providing meaningful review of petitioners' claims." *Id.* at 10.

*Thunder Basin* and *Elgin* are to be distinguished from *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), each of which held that structural constitutional challenges need not be channeled to agencies.  In *Free Enterprise Fund*, the Court

held that challenges to the unconstitutional insulation of agency officials were not channeled to the agency itself, explaining that each of the *Thunder Basin* factors favored district-court jurisdiction.  561 U.S. at 490–91.  And the Court concluded much the same in *Axon*, holding that "sweeping constitutional claims" that an agency as a whole is unconstitutional can proceed directly to district court, after comparing the case to *Free Enterprise Fund* and applying the *Thunder Basin* factors.  598 U.S. at 188–96.  Indeed, in *Axon*, the plaintiff "would have the same claim had it *won* before the agency" because it complained of being subject "to an illegitimate proceeding, led by an illegitimate decisionmaker."  *Id.* at 191; *see Loma Linda-Inland Consortium for Healthcare Educ. v. N.L.R.B.*, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) (per curiam).

## A.    Congress Intended to Preclude District-Court Jurisdiction Over Masimo's Claims, all of Which Involve the Commission's Limited Exclusion Order

Here, as in *Thunder Basin* and *Elgin*, Masimo's claims about the Commission's limited exclusion order, enforced by Customs according to its plain language, belong with the Commission and the Federal Circuit, not a district court.  Under the framework of *Thunder Basin*, courts must determine whether Congress intended an exclusive path of administrative and judicial review.  Congress's intent with respect to the review of section 337 exclusion orders is "fairly discernable" from a review of the statute.

As the Court explained in *Wirtgen*, "the Tariff Act creates a comprehensive administrative scheme that entrusts the [Commission] with investigating, making determinations as to, and issuing exclusion orders to remedy violations of Section 337."  443 F. Supp. 3d at 210.  "Proceedings concerning the modification or rescission of an exclusion order may be requested by aggrieved parties or initiated by the Commission," with judicial review obtained through appeal "of final Commission determinations in the Federal Circuit."  *Id.* at 210–11.  The Federal

18

Circuit, moreover, has "exclusive jurisdiction to review the final determinations of the" Commission under section 337, precluding district court jurisdiction. *Id.* at 211 (quoting 28 U.S.C. § 1295(a)(6)). "Given this 'comprehensive structure for the adjudication of [Section 337 violations] in administrative proceedings,' it is 'fairly discernable' that Congress intended to preclude district court review of Commission factual and remedial determinations under Section 337." *Id.* (quoting *Jarkesy v. S.E.C.*, 803 F.3d 9, 16–17 (D.C. Cir. 2015)).

Indeed, district-court jurisdiction is contemplated only in the specific contexts of (1) proceedings brought by the Commission to collect administrative penalties for violations of cease-and-desist orders, 19 U.S.C. § 1337(f), and (2) counterclaims raised by respondents, *id.* § 1337(c). That Congress provided an exclusive avenue for review of Commission decisions to the Federal Circuit, and carved out district-court jurisdiction for only limited circumstances, confirms that Congress intended to deprive district courts of jurisdiction to review the sort of Commission determinations regarding limited exclusion orders that are at the heart of this case and within the heartland of 28 U.S.C. § 1295(a)(6).

Moreover, each of the *Thunder Basin* factors confirms that Congress precluded district-court review of Masimo's claims: (1) Masimo will obtain "meaningful judicial review" by bringing its claims in front of the Commission with any appeal by the adversely affected party to the Federal Circuit; (2) its claims are not "wholly collateral" challenges, whether to the structure of Customs or the Commission or to decisions unrelated to the limited exclusion order; and (3) the Commission has vast expertise in determining whether a respondent's "design-around" is permissible under one of its exclusion orders. *Wirtgen*, 443 F. Supp. 3d at 213–14.

**B.      Masimo Can Obtain Meaningful Judicial Review by Bringing its Claim Before the Commission and Appealing to the Sole Federal Appeals Court with Authority to Hear Patent and Trade Cases**

First, "a finding of preclusion [of the district court's jurisdiction] would not foreclose all meaningful judicial review" of Masimo's claims.  *Id.* at 213 (cleaned up) (quoting *Thunder Basin*, 510 U.S. at 212–13).  Masimo can still seek enforcement or a modification of the limited exclusion order, so that it covers the redesigned smartwatches, from the Commission.  And the Commission's final determination in such an ancillary proceeding can be appealed to the Federal Circuit—the sole appellate court with jurisdiction over patent and trade matters, *see* 28 U.S.C. § 1295, which has extensive experience reviewing the Commission's limited exclusion orders. Indeed, the Federal Circuit is currently reviewing the limited exclusion order that is at issue in this case, with oral argument held not long ago on July 7, 2025.  The Federal Circuit is also best equipped to address Masimo and Apple's competing claims over the patents and limited exclusion order at issue, given its specialized docket and familiarity with the subject matter of this case.

Indeed, entertaining jurisdiction of Masimo's claims in this Court would have the effect of *undermining* Congress's intent to channel patent and trade matters to the Federal Circuit. Holding that district-court jurisdiction is not precluded in this case would permit actions involving section 337 limited exclusion orders to be brought in district court then appealed to the regional courts of appeals—despite Congress's clear instruction that the Federal Circuit "shall have exclusive jurisdiction" over these matters.  28 U.S.C. § 1295(a)(6).  This could then lead to circuit splits over patent infringement and the Commission's section 337 determinations, neither of which was contemplated by the statutory framework.

**C.    Masimo's Claims Are Not "Wholly Collateral" to Section 337's Review Provision**

Second, Masimo's claims are of the type that Congress intended be channeled to the Commission and are not "wholly collateral" to section 337's statutory scheme.[3]  The claims here fall within the heartland of the type of matter that Congress mandated be channeled through Commission proceedings pursuant to section 337.  Masimo seeks to litigate the scope and implementation of the Commission's limited exclusion order.  Those claims must be heard by the Commission in the first instance.

In Counts I and II of its complaint, Masimo alleges that Apple's redesigned smartwatches, when imported alone, fall within the scope of the limited exclusion order.  Masimo alleges that Customs' determination otherwise was unreasonable and in excess of its statutory authority.  Counts I and II.  Masimo agrees, however, that "[u]nder 19 U.S.C. § 1337, the [Commission] has exclusive authority to determine whether imported articles infringe valid and enforceable U.S. patents and to issue exclusion orders prohibiting the importation of infringing products."  Compl. ¶ 79.  In enacting section 337, the proper scope of a limited exclusion order is precisely the type of claim that Congress channeled to the Commission in the form of an enforcement or modification proceeding or an appeal to the Federal Circuit.  Arguments regarding the proper scope of a Commission order belong before the Commission,

---

[3]  Both the Federal Circuit and the Court of International Trade, which generally review Customs' decisions to exclude merchandise, have previously assumed that the legal framework of section 337 did not preclude the Court of International Trade from exercising jurisdiction pursuant to 28 U.S.C. § 1581(a).  *See, e.g., Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1348 (Fed. Cir. 2006); *Corning Gilbert Inc. v. United States*, 896 F. Supp. 2d 1281, 1284 (Ct. Int'l Trade 2013).  But neither court has ever been presented with the effect of section 337 channeling on the Court of International Trade's jurisdiction.  "The existence of unaddressed jurisdictional defects has no precedential effect."  *Lewis v. Casey*, 518 U.S. 343, 353 n.2 (1996).  Further, these decisions are not binding on this Court.  In any case, even if an alternative forum existed at the Court of International Trade, it would not alter the fact that a district court is plainly the wrong forum in which to litigate issues regarding the scope of exclusion orders.

not a district court.  *Wirtgen*, 443 F. Supp. 3d at 213 ("In the modification proceeding before the Commission, Wirtgen is free to raise its arguments as to why the [limited exclusion order] does not—or should not—encompass its redesigned machines.").

Count III, which purports to raise a Constitutional Due Process challenge, is likewise not "wholly collateral" to section 337.  Masimo claims that Customs violated its due process rights by failing to provide notice that Customs "was considering a ruling that would reverse its own prior ruling and effectively nullify the" Commission's limited exclusion order, conducting "*ex parte* proceedings," and issuing a ruling without any opportunity to review.  Compl. ¶ 96. Although now couched in terms of due process, the relief Masimo is seeking is the same as in the other counts: a determination that the redesigned watch, when considered by itself, is covered by the limited exclusion order.  As set forth above, the scope and modification of the limited exclusion order is up to the Commission, not Customs.  In other words, it does not matter that Masimo is purporting to "challenge action by *Customs*, not the [Commission]"; Masimo's "claims against Customs are just a thinly veiled disguise for its real grievance—that the *Commission* should" modify or clarify its limited exclusion order to cover the redesigned smartwatches.  *Wirtgen*, 443 F. Supp. 3d at 212.  "After all, … Customs merely enforces remedial orders issued by the Commission[.]"  *Id.*  And because Masimo "is effectively challenging whether the exclusion order encompasses the redesigned articles," all of Masimo's claims "belong with the [Commission] and the Federal Circuit."  *Id.* at 212–13.

Masimo's APA and constitutional claims, moreover, are unlike the structural constitutional challenges to agencies as a whole that courts have held "wholly collateral" under *Thunder Basin*.  For example, this is not a situation like in *Axon*, where the plaintiff "would have the same claim had it *won* before the agency" because it complained of being subject "to an

illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191; *see Loma Linda-Inland Consortium for Healthcare Educ.*, 2023 WL 7294839, at *11. Instead, this case falls on the *Thunder Basin* and *Elgin* side of preclusion, as Masimo challenges a "specific substantive decision" made by an agency and "commonplace procedures agencies use to make" such decisions. *Nat'l Assoc. of Immigration Judges v. Owen*, 139 F.4th 293, 311 (4th Cir. 2025) (quoting *Axon*, 598 U.S. at 189).

**D.      The Commission Has Extensive Expertise in Addressing Masimo's Design-Around Claims**

Third, Masimo's claims are not "outside the [Commission's] expertise." *Wirtgen*, 443 F. Supp. at 213 (quoting *Thunder Basin*, 510 U.S. at 212). "To the extent that [Masimo] contests the meaning of the exclusion order, the Commission—as the order's drafter—can certainly shed some light." *Id.* And "the experience" of "the Commission" and "the Federal Circuit" in "dealing with [limited exclusion orders]" can doubtless "be brought to bear on" Masimo's claims that the redesigned smartwatch is subject to the limited exclusion order. *Id.* at 214 (quoting *Jarkesy*, 803 F.3d at 29). All of Masimo's claims, regardless of their APA and constitutional labels, are thus "intertwined with or embedded in matters on which the [Commission and the Federal Circuit] are expert." *Axon*, 598 U.S. at 195.

Because all three *Thunder Basin* factors favor preclusion, this Court lacks subject-matter jurisdiction over this action, and must dismiss it.

**II.     Even if this Court Has Subject-Matter Jurisdiction, this Action Should Nevertheless be Dismissed Because the Commission Has Primary Jurisdiction**

Regardless of whether the Court has subject-matter jurisdiction (it does not), this action should still be dismissed under the doctrine of primary jurisdiction. "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with

promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 63 (1956). But unlike exhaustion, primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed with the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* at 63–64. "The primary jurisdiction doctrine rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently) … and on the advantages of allowing an agency to apply its expert judgment." *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 837 (D.C. Cir. 2012) (quotation omitted).

"Although there is no fixed formula for determining whether to apply the doctrine of primary jurisdiction, the courts traditionally have considered four factors: (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1, 4 (D.D.C. 2000) (citation omitted). Here, each factor weighs in favor of dismissal of this action to permit the Commission to decide whether the redesigned smartwatches fall within the Commission's limited exclusion order. *See Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993) (when an agency has primary jurisdiction, a court "has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice").

As to the first two factors, although this Court has expertise in deciding APA claims, constitutional issues, and even patent infringement, it does not have "conventional expertise" in deciding whether a redesigned article should be considered within or without the scope of a limited exclusion order.  That is in part because Congress designated only the Commission and Federal Circuit, by statute, to review and decide such issues, again reflecting that Congress precluded district-court jurisdiction in this case.  "Pursuant to 19 U.S.C. § 1337, Congress has expressly given the [Commission] power and guidelines over claims of unfair competition and unfair acts in the importation of articles into the United States.  Thus, the [Commission] has undoubtedly had a great deal more experience than a district court in matters of this kind." *Tompkins Seals, Inc. v. West Co.*, 1985 WL 4952, at *3 (E.D. Pa. Dec. 17, 1985).  The Commission, in other words, "is the administrative agency that possesses the requisite specialized experience and expertise in the field of" section 337 investigations and orders. *Himmelman*, 104 F. Supp. 2d at 4.  Whether and how allegedly infringing imports should be dealt with "is squarely at the heart of the [Commission's] mandate," *id.* at 5 (quotation omitted), and requires considerations of factors that district courts should decline evaluating—including effects of imports on "the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers," 19 U.S.C. § 1337(d)(1).  *See also Borlem S.A.-Empreedimentos Industriais v. United States*, 710 F. Supp. 797, 802 (Ct. Int'l Trade 1989) ("[T]he Commission is in the best position to evaluate, in the first instance, whether reconsideration of its final determination is appropriate in the circumstances of this case.   Moreover, the Court will be in a better position to carry out its reviewing function when it has recourse to the studied views of the Commission.").

As to the third factor, there does exist "a substantial danger of inconsistent rulings." *Himmelman*, 104 F. Supp. 2d at 4.  Because the Commission has the exclusive authority to modify its limited exclusion orders, and because the Federal Circuit has exclusive jurisdiction to review the Commission's section 337 determinations, entertaining Masimo's claims in this case could lead to a situation where the Commission or Federal Circuit vacates the limited exclusion order in its entirety and this Court conflictingly orders Customs to enforce it against the redesigned smartwatches.  Moreover, the "complex and technical questions" at the heart of a limited exclusion order heighten the danger of inconsistency among courts and agencies. *SoundExchange, Inc. v. Music Choice*, 2021 WL 5998382, at *10 (D.D.C. Dec. 20, 2021). Indeed, in cases where district courts do have concurrent jurisdiction with the Commission—that is, in patent-infringement cases—Congress has *mandated* that district courts stay proceedings pending the Commission's final section 337 determination.  28 U.S.C. § 1659(a).  That Congress has required such stays in cases where district courts undisputedly have jurisdiction so that the Commission can first address "questions of patent validity, infringement, and any defenses that might be raised in both proceedings," H.R. Rep. No. 103-826(I) at 141 (1994), supports the conclusion that the Commission has primary jurisdiction over the type of claims being brought by Masimo.

And as to the fourth factor, Masimo made "a prior application to the [Commission]," *Himmelman*, 104 F. Supp. 2d at 4, when it sought a limited exclusion order in the first place. Moreover, Masimo can return to the Commission at any time to seek modification of the limited exclusion order.  In sum, each of the primary-jurisdiction factors favor dismissal of this action to permit the Commission to rule on the scope of its limited exclusion order in the first instance.

**III.    Masimo Fails to Meet the High Bar Required for Obtaining the Extraordinary Relief of a TRO or PI**

Even if the Court determines it possesses jurisdiction, it should deny Masimo's request for a TRO and PI.  For the reasons explained in detail below, Masimo is not entitled to the requested relief.

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citations and quotation marks omitted).  A preliminary injunction is "never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008) (citation omitted).  To obtain a PI, a party must establish each of four elements: (1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest.  *Id.* at 20.  A TRO is judged under the same standard.  *New Mexico v. Musk*, 769 F. Supp. 3d 1, 5 (D.D.C. 2025).  As explained below, all four factors weigh against Masimo's request for injunctive relief.

**A.    Masimo Is Not Likely To Succeed On The Merits Of Its Claims**

As a threshold matter, Masimo is not likely to succeed on the merits of its claims.  First and foremost, Masimo is unlikely to succeed here because the Court lacks subject-matter jurisdiction for all the reasons explained above.  *See, e.g.*, *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (staying a TRO that was issued by a district court that likely lacked jurisdiction).  Moreover, as discussed above, this action should be stayed or dismissed because the Commission has primary jurisdiction over Masimo's claims, and should be afforded the opportunity to address them in the first instance.

Even putting these jurisdictional problems aside, Masimo's claims are unlikely to succeed. Masimo argues that Customs, in reaching the August 2025 internal advice ruling, violated the APA by inexplicably reversing course, misapplying "precedent," failing to consider important aspects of the issues, failing to follow its own regulations, and arbitrarily precluding indirect-infringement analysis; acted in excess of its statutory authority by failing to apply the limited exclusion order; and violated the Due Process Clause of the Fifth Amendment. *See* Mot. at 17–30. But all of these claims rest on the same flawed premise: that the August ruling is somehow inconsistent with the *inter partes* January 2025 ruling. That is simply not true. As noted above, the January 2025 ruling explicitly notes that the limited exclusion order would not cover the redesigned smartwatch imported on its own. Specifically, Customs concluded "that Masimo's theory of infringement for the Redesign 2 Watch, when considered ***alone*** for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the [limited exclusion order]," HQ H338254 at 35 (Jan. 7, 2025) (emphasis in original). But Masimo does not take issue with this ruling.

Put another way, Customs would continue to permit entry of Apple's redesigned smartwatches even if the August 2025 ruling were set aside because of the admissibility determination rendered in the January 2025 ruling. As such, Masimo's claims, all of which are directed to the August 2025 ruling, are unlikely to succeed on the merits. It is the January 2025 ruling—which Masimo participated in—that forms the basis for Masimo's grievance. To the extent that the Court finds any error in Customs' administrative process leading to the August 2025 ruling (though there was none), such error was entirely harmless. 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); *see, e.g.*, *Hesai Tech. Co. v. U.S. Dep't of Def.*, 2025 WL 1911673, at *18 (D.D.C. July 11, 2025).

For much the same reasons, however, there was no APA error.  Although Masimo attacks Customs' August 2025 internal advice ruling—claiming, among other things, that it was an unexplained, unreasonable about-face, *see* Mot. at 17–23—its arguments can only be reconciled if the ruling represented Customs "ignor[ing] its prior factual findings that contradict its new policy," *Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1111 (D.C. Cir. 2019), or reaching an "unexplained inconsistency in agency policy," *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016).  But just the opposite is true.  The August 2025 ruling was the only logical result of Customs following its earlier January 2025 ruling that concluded the redesigned smartwatch, imported "alone," would not be barred by the plain terms of the limited exclusion order.  That is, had Customs reached the result that Masimo thinks was required by the January 2025 ruling, Customs could have violated the APA absent a reasoned explanation for the change.  Because the August 2025 ruling was consistent with, and merely an application of, the January 2025 ruling, the APA required no new explanation by Customs.

Masimo also fundamentally miscasts Customs' regulations.  Customs did not violate any of its regulations in issuing the August 2025 internal advice ruling.  Regardless of whether a ruling request is received as a request for a prospective (that is, pre-importation) ruling under 19 C.F.R. § 177.2, or a request for internal advice pursuant to 19 C.F.R. § 177.11, under Customs' regulations, complainants are not entitled to an *inter partes* proceeding with respect to any ruling, including one regarding a section 337 exclusion order.  *See* 19 C.F.R. pt. 177.  Masimo has cited no statute or regulation that requires an *inter partes* proceeding in any instance.[4]  The

---

[4] As a general matter, Customs is not statutorily required to issue rulings.  Customs issues rulings pursuant to its regulations at 19 C.F.R. pt. 177 (which are promulgated pursuant to 19 U.S.C. §§ 66, 1502, and 1624), and it retains the discretion to decline to issue a ruling in any instance "in which it appears contrary to the sound administration of the Customs and related

August 2025 ruling about which Masimo complains was issued pursuant to 19 C.F.R. § 177.11, which pertains to requests for advice by field offices, and states that "[a]dvice or guidance as to the interpretation or proper application of the Customs and related laws with respect to a specific Customs transaction may be requested by Customs Service field offices from the Headquarters office at any time…."  The August 2025 ruling responds to a request from a Customs field office regarding one detained shipment containing five articles of merchandise and the applicability of the January 2025 ruling to that specific importation.[5]  Masimo's assumption that Customs was required to follow procedures for reconsideration of existing rulings, Mot. at 23–25, again flows from the mistaken assumption that the August 2025 ruling departed from the January 2025 ruling in some way.  It did not.

Masimo also takes issue with Customs declining to apply indirect infringement theories when enforcing an exclusion order, Mot. at 26–27, but it fails to identify any authority requiring Customs to take such action or entertain such arguments.  Customs held in the January 2025 ruling that the redesigned smartwatch, imported alone, would not be covered by the limited exclusion order.  HQ H338254 at 35 (Jan. 7, 2025).  Masimo could have argued in the proceeding leading to the January 2025 ruling that the redesigned smartwatch should nevertheless be excluded from entry on other theories of infringement, but it never raised these arguments.  HQ H351038 at 21 (Aug. 1, 2025) (explaining that Masimo failed to raise any indirect infringement theories in the proceeding leading to the January 2025 ruling).  Customs

---

laws."  19 C.F.R. § 177.7(a); *see also* 19 C.F.R. § 177.11(b)(5) (Refusal by Headquarters to furnish advice).

[5] Once merchandise is detained, Customs has 30 days from the date on which the merchandise is presented for examination to determine the merchandise's admissibility.  19 U.S.C. § 1499.  Given the tight timeframe, the Customs field office requested that Customs Headquarters provide direction on the admissibility of the merchandise in the shipment.  HQ H351038 (Aug. 1, 2025).

cannot be held to account for failing to address arguments that Masimo never raised.  *Hensley v. United States*, 292 F. Supp. 3d 399, 409 (D.D.C. 2018) (an agency's "decision cannot be deemed arbitrary and capricious for failing to address arguments [the plaintiff] never made").

Nor was Customs' August 2025 ruling "in excess of statutory authority," Mot. at 27.  All Masimo argues is that the Commission, not Customs, "has the exclusive authority to determine what articles infringe a valid and enforceable U.S. patent and to issue appropriate remedial orders."  *Id.*  This simply underscores that the Commission, not this Court, has jurisdiction over this dispute (or at the very least that this Court should await the Commission's decision in an ancillary proceeding under the primary-jurisdiction doctrine).[6]  In any event, the August 2025 ruling did not "effectively modif[y]" the limited exclusion order, as Masimo claims.  *Id.*  As discussed, it merely applied the limited exclusion order's plain language and the earlier January 2025 ruling.

Finally, there was no Fifth Amendment due-process violation.  Mot. at 28–30.  To start, Masimo has failed to identify any legally protectable property interest it has in a limited exclusion order, let alone the application of a limited exclusion order against products not actually covered by that order.  If the Constitution does not afford "a protectable interest to engage in international trade," *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quotation omitted), it is difficult to see how Masimo could have a protectable interest in international trade occurring on its terms.  All Masimo cites to support that proposition is *Jazz Photo Corp.*, but that case does not suggest, as Masimo claims, that a limited exclusion

---

[6] Indeed, as Customs acknowledges in its August 2025 ruling, "determinations of the Commission resulting from the underlying investigation or a related proceeding under 19 C.F.R. pt. 210 are binding authority on CBP and, in the case of conflict, will by operation of law modify or revoke any contrary CBP ruling or decision pertaining to Section 337 exclusion orders."  HQ H351038 at 2 (Aug. 1, 2025).

order "creates a statutory entitlement that constitutes a protected property interest." Mot. at 28. *Jazz Photo Corp.* just says that while a patentee may have a "general interest in protecting its patent rights," that interest is not so great to allow intervention in a case when statutorily prohibited. 439 F.3d at 1357. Masimo cites no authority to suggest that the rules governing intervention require a Fifth Amendment property interest, and *Jazz Photo Corp.* did not purport to decide that question. That Masimo has a property interest in its patents cannot, by itself, mean that it must have a property interest in international trade that might in some way relate to its patents. After all, importers have property interests in the imported goods that they have purchased from overseas, but lack Fifth Amendment interests in matters relating to those goods' importation, like particular duty rates. *Int'l Custom Prods.*, 791 F.3d at 1337.

Even if Masimo did have a Fifth Amendment property interest, Masimo was afforded all the process it was due. As explained above, Customs complied with the APA in merely applying its earlier *inter partes* January 2025 ruling and the plain language of the limited exclusion order—the results of two proceedings to which Masimo was a party—in the August 2025 ruling that Masimo challenges. And in any event, Masimo never availed itself of the process that could actually provide it the relief that it seeks: requesting enforcement or modification of the limited exclusion order before the Commission. Masimo fails to address the existence of this process in its briefing.

For all these reasons, Masimo is not likely to succeed on the merits of its claims.

**B.    Masimo Fails to Make a Clear Showing of Imminent Irreparable Harm**

Regardless of the jurisdictional problem with this case and Masimo's failure to demonstrate likely success on the merits, a TRO or PI is unwarranted for the independent reason that Masimo has failed to make the "*clear showing* that it will likely suffer irreparable harm

before the district court can resolve the merits of the case." *Hanson v. D.C.*, 120 F.4th 223, 243 (D.C. Cir. 2024) (emphasis added) (cleaned up). The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Masimo's injury must be "certain," "great," "actual" rather than "theoretical," *id.* (cleaned up), and "so imminent as to be irreparable if a court waits until the end of trial to resolve the harm," *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 202 (D.D.C. 2017) (quotation omitted). The injury must truly be "beyond remediation." *Chaplaincy*, 454 F.3d at 297. "The *possibility* that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (quotation omitted) (emphasis added); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("temporary loss of income" does not constitute irreparable harm).

Masimo fails to meet the high bar that the D.C. Circuit has set. To start, Masimo has provided no evidence of any injury. It has not submitted any declarations or other evidence to support the assertions made in its briefing. *See generally* Mot. It has not even discussed injury in its complaint. *See generally* Compl. Masimo's speculative assertions in its briefing that its "negotiating position" could be damaged and that it could suffer unrecoverable economic losses, Mot. at 32–33, are thus insufficient to make the "clear showing" of irreparable harm that is required to obtain extraordinary relief, *Hanson*, 120 F.4th at 243. *See, e.g. Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (plaintiffs that asserted they would "probably" lose contracts were not entitled to injunctive relief, where no plaintiff "provided any evidence that a single supplier has stated an intention to cease contracting"). Nor has Masimo even attempted to quantify the harm it expects to face between now and the time that the Court can rule on the merits. *See John Doe Co.*, 235 F. Supp. 3d at 202.

That Masimo cannot recover damages from the Government, Mot. at 32, is immaterial. "The loss of business opportunities, market share, and customer goodwill are typically considered to be economic harms," which, as a "general rule," do "not constitute irreparable injury" in this circuit. *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 211 (D.D.C. 2012) (quotation omitted). That a "claimed economic loss is unrecoverable" due to sovereign immunity is merely "one factor the court must consider in assessing alleged irreparable harm"— it "does not, in and of itself, compel a finding of irreparable harm." *Id.* (quoting *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 53 (D.D.C. 2011)). Even if Masimo's arguments involving sovereign immunity were relevant, "[s]omething more than" Masimo's "conclusory projection is necessary to show" that it "currently face[s] certain, imminent business closings" or similar unrecoverable economic losses. *Nat'l Mining Ass'n*, 768 F. Supp. 2d at 52.

And Masimo's arguments that it cannot "recover monetarily from Apple," Mot. at 32, are contradicted by its past actions. Masimo has demonstrated that it is more than capable of seeking and obtaining damages from parties who infringe its patents. In 2015, for example, Masimo obtained a $467 million jury verdict against an infringer. *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 2015 WL 2406061, at *1 (D. Del. May 18, 2015). And Masimo currently is suing Apple over infringement. *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048 (C.D. Cal. filed Jan. 9, 2020). Regardless, the "possibility" of damages from Apple "in the ordinary course of litigation" for any injury resulting from Apple's importation and sales of infringing products, 35 U.S.C. § 271(a), suffices to show that Masimo's harm—if any—is, in fact, reparable. *Chaplaincy*, 454 F.3d at 297. Injunctive relief is not awarded as of right simply because a patent is involved. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) (confirming that

34

"the four-factor test historically employed by courts of equity" in deciding whether to award injunctive relief "applies to disputes arising under the Patent Act").

Masimo also points to the limited exclusion order as reason alone for injunctive relief, Mot. at 30–31, but a limited exclusion order is not the sort of "clear statutory right" the loss of which could support a claim of irreparable harm. The idea that the loss of a "clear statutory right" can be irreparable harm traces back to *Mova Pharmaceutical Corp. v. Shalala*, which concluded that loss "of a 180-day statutory grant of exclusivity" in marketing a generic drug would "cause injury to" the plaintiff, "a small company" directly competing with pharmaceutical giant Mylan, under the circumstances of that case. 955 F. Supp. 128, 131 (D.D.C. 1997). The Commission, however, *may* grant a limited exclusion order after considering a number of factors, including effects on public health and consumers, 19 U.S.C. § 1337(d)(1)—and, as Masimo acknowledges, Mot. at 31, without the patentee having to "prove injury", H.R. Rep. No. 100-576, at 633 (1988). The mere existence of a limited exclusion order, in short, does not automatically demonstrate irreparable harm when the order is allegedly violated.

In any event, the loss of "a clear statutory entitlement" "*may* be sufficiently irreparable to justify emergency injunctive relief," but the plaintiff must still demonstrate imminent injury as a result. *Endo Par Innovation Co. v. Becerra*, 2024 WL 2988904, at *7 (D.D.C. June 10, 2024) (quoting *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008)) (emphasis added). Indeed, in *Hi-Tech Pharmacal*, the court denied injunctive relief, even though the plaintiff had been deprived of a "statutory entitlement to 180-day marketing exclusivity," which "would be lost forever" absent an injunction. 587 F. Supp. 2d at 11. The plaintiff failed to show, "as required under *Wisconsin Gas* and other cases," that "the risk of harm" it faced was

35

"sufficiently 'certain' and 'great' to warrant injunctive relief." *Id.* at 11–12. That is the case here, given that Masimo has submitted no evidence of any imminent irreparable harm.

In arguing that it has suffered irreparable harm, Masimo heavily relies on *Endo*, s*ee* Mot. at 30–33, but its reliance is misplaced for many of the reasons already discussed. There, the plaintiff drug patentee argued that it was irreparably harmed by the Food and Drug Administration's cutting short a statutorily mandated 30-month stay of final approval of a competitor's generic drug. *Endo*, 2024 WL 2988904, at *6–*9. The Court found the plaintiff's injury irreparable and imminent, crediting the plaintiff's "sworn assertions" that, "within six weeks," it would suffer "irreversible price erosion" due to the generic drug's approval. *Id.* at *8– *9 ("BPI does not offer any persuasive argument countering Par's sworn assertions that the effects of even just six-weeks of price erosion will be permanent."). The Court also doubted whether the plaintiff "could recover from" the competitor, "whether through [a] pending patent infringement suit … or otherwise." *Id.* at *7.

Aside from the fact that it also involved an underlying patent dispute, *Endo* bears little resemblance to this case. For one thing, the *Endo* plaintiff submitted "sworn assertions" demonstrating the irreparable harm that it was about to suffer within six weeks, absent injunctive relief. *Id.* at *8. But Masimo, as discussed, has not submitted any evidence to substantiate its claims of irreparable harm. *Wisconsin Gas Co.*, 758 F.2d at 674 ("The movant must provide *proof* that … the harm is certain to occur in the near future.") (emphasis added); *see, e.g.*, *Winter*, 555 U.S. at 12 (reversing an injunction that issued despite "the record contain[ing] no evidence" of "harm") (quotation omitted). For another, unlike the plaintiff in *Endo*, Masimo has proven that it is capable of obtaining damages for infringement of its patents. That it must attempt to do

so through a separate case, rather than this one, Mot. at 32, is no reason to conclude that damages are unavailable.

And, perhaps most importantly, *Endo* involved claims of immediate harm from a directly competitive product. *See* 2024 WL 2988904, at *6–*9. That directly competitive, cheaper product was likely to lead to permanent price erosion of the plaintiff's patented product. *Id.* at *8. But Masimo does not claim that it makes, or will soon make, a product that directly (or even indirectly) competes with the products covered by the limited exclusion order. As such, Masimo's position in this litigation is no different from its failure to identify a competing product in the underlying investigation at the Commission for purposes of bonding in an amount to be "sufficient to protect the complainant from any injury." 19 U.S.C. § 1337(j)(3); *see also* 19 C.F.R. § 210.50(a)(3). As the Commission noted, during the underlying investigation, "Apple argued that a zero percent bond is appropriate because [Masimo did] not identif[y] any domestic industry products that compete with the Accused Products [i.e., the legacy Apple Watches]." *Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276, Comm'n Op. at 120 (November 14, 2023) (Public Version). Furthermore, "[t]he RD found that [Masimo] did not meet their burden of establishing the need for a bond" and it "pointed out that [Masimo] did not argue that a bond is needed to protect any of its own competing products during the period of Presidential review." *Id*. The Commission ultimately "agree[d] with the RD that Complainants have not shown any basis for supporting any specific bond based on pricing information or reasonable royalty rates." *Id*. at 123.

Accordingly, the analogy to *Endo* falls apart. This is not a zero-sum game involving competing products. Rather, it is one where "the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for

undue leverage in negotiations"; in such cases, "legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest." *eBay*, 547 U.S. at 396–97 (Kennedy, J., concurring).  Masimo has thus failed to show that it would be irreparably injured in the time it takes for the Court to reach a decision on the merits.

## C.    The Public Interest and Balance of Hardships Compel Denial Of Injunctive Relief

Finally, Masimo fails to show that its request for a preliminary injunction is supported by the balance of hardships and the public interest, *see Winter*, 555 U.S. at 33, factors that "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, these factors also weigh in favor of denying injunctive relief.

The Supreme Court has instructed that courts "should pay particular regard for the public consequences" when "employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citations and quotation marks omitted).  Indeed, in *Winter*, the Supreme Court reversed the lower court, concluding that, even if petitioners were likely to succeed on the merits and had shown irreparable harm, the public interest and balance of equities weighed decisively against injunctive relief.  *Id.* at 23–31.  The Court held that "the balance of equities and consideration of the public interest . . . are pertinent in assessing the propriety of any injunctive relief," as "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."  *Id*. at 32 (citation omitted).

Turning to these factors, the public interest weighs strongly in favor of denying the injunction.  Masimo's arguments amount to overstating the result of not granting its requested TRO and PI.  Mot. at 34.  Instead of setting forth harms occurring without interim relief, Masimo improperly argues over harms associated with never having the merits of its dispute heard in any forum—that is, procedural harm.  Specifically, Masimo claims that Customs has "irremediably

negat[ed] Masimo's statutory right to exclusion …." *Id.* Masimo continues by asserting that Customs allegedly "unwound years of contested litigation and fair adjudication of those rights." *Id.* Masimo's assertions are without support. It can have its dispute heard on the merits in the proper forum: the Commission, then the Federal Circuit. That Customs merely enforced the limited exclusion order as written does not weigh in Masimo's favor when balancing the harms and the public interest.

Additionally, the public interest does not favor Masimo. "[A]n injunction may not serve the public interest" where "the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations." *eBay*, 547 U.S. at 396–97 (Kennedy, J., concurring). That is the case here. Massimo in fact admits that it seeks to maintain its ability to leverage the limited exclusion order in licensing negotiations with third parties. Mot. at 32–33. But practicing a pulse oximetry system that promotes public health in smartwatches and smartphones that have many other non-infringing uses—rather than rewarding rent-seeking behavior—promotes the public interest. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Inc.*, 735 F.3d 1352, 1372 (Fed. Cir. 2013) (explaining that a district court properly denied an injunction where it reasoned that "it would not be in the public interest to deprive consumers of phones that infringe limited non-core features, or to risk disruption to consumers without clear legal authority").

The balance of the hardships and public interest thus weigh strongly against any injunctive relief.

\* \* \*

Because Masimo fails to establish any of the factors which would support entry of a TRO or PI, Masimo's motion should be denied.

**IV.     Masimo Must Give Security for Injunctive Relief**

If the Court does order injunctive relief despite lacking subject-matter jurisdiction and despite Masimo's lack of imminent irreparable harm, the Court should order Masimo provide a bond or other security.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Although the D.C. Circuit has interpreted this language to "vest broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), a panel of that court also recently clarified "that injunction bonds are generally required," even for injunctions against the Government, *Nat'l Treas. Emps. Union v. Trump*, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025).  Here, an injunction requiring Customs to exclude redesigned smartwatches would impose an administrative burden on Customs to issue immediate instructions to ports of entry across the country, which in turn will require officers at those ports to identify importations of redesigned smartwatches and exclude them from entry.  Such exclusions, moreover, will impose additional administrative burdens on Customs and ultimately on Apple.  The Court should accordingly order Masimo to provide security in an amount sufficient to ensure that, if defendants are found to have been wrongfully restrained, these "costs of government are borne" by Masimo, rather than "by taxpayers."  *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 459 (7th Cir. 2010).

## <u>CONCLUSION</u>

The Court should dismiss Masimo's complaint and deny Masimo's motion for a TRO and PI.

<div style="margin-left: 50%;">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
EDWARD F. KENNY
MONICA TRIANA
Senior Trial Counsel
LUKE MATHERS
Trial Attorney
U.S. Dept. of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9230
*Attorneys for Defendants*

</div>

Dated: August 27, 2025