**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MASIMO CORPORATION,

       Plaintiff,

       v.

UNITED STATES CUSTOMS AND BORDER
PROTECTION *et al.*
       Defendants,

UNITED STATES INTERNATIONAL
TRADE COMMISSION,

       Intervenor-Defendant.

Civil Action No. 1:25-cv-02749-ACR

**MEMORANDUM IN SUPPORT OF THE U.S. INTERNATIONAL TRADE
COMMISSION'S MOTION TO DISMISS, AND IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................ ii

I.    BACKGROUND ...................................................................................................... 3

    A.  The U.S. International Trade Commission ........................................................ 3

    B.  The Underlying Commission Investigation ...................................................... 3

    C.  Proceedings Before Customs ............................................................................ 4

II.    ARGUMENT ........................................................................................................... 6

    A.  THIS DISPUTE SHOULD RETURN TO THE COMMISSION ............................ 6

    B.  MOTION TO DISMISS FOR LACK OF JURISDICTION .................................. 12

        1.  Standard of Review Under Rule 12(b)(1) ............................................... 12

        2.  This Court Lacks Subject-Matter Jurisdiction Over This Civil Action.................... 12

        3.  Alternatively, This Court Should Dismiss the Civil Action Based on Primary Jurisdiction ............................................................................ 19

    C.  OPPOSITION TO THE MOTION FOR A TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION ...................................................... 22

        1.  Legal Standard.......................................................................................... 22

        2.  Masimo Has Failed to Show Irreparable Harm........................................ 23

        3.  Masimo Has Failed to Show Likelihood of Success................................. 29

        4.  The Balance of Harms and Public Interest Do Not Support Masimo ...................... 30

III.    CONCLUSION ....................................................................................................... 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227 (D. Del. 1984)......................21

*Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9 (2d Cir. 1981) ......................................21

*Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573 (Fed. Cir. 1988)................................11

*Allnet Commc'n Serv., Inc. v. National Exch. Carrier Ass'n*,
      965 F.2d 1118 (D.C. Cir. 1992)..........................................................................20, 21, 22

*Alpine Securities Corp. v. Financial Indus. Reg. Auth.*,
      121 F.4th 1314 (D.C. Cir. 2024)..........................................................................23

*Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd.*,
      31 F.3d 1184 (D.C. Cir. 1994).............................................................................19

*Am Fed. of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633 (D.C. Cir. 2013) ...........................13

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) .............13, 14, 17

*Apotex, Inc. v. FDA*, 2006 WL 1030151 (D.D.C. Apr. 19, 2006) ................................................26

*Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370 (Fed. Cir. 2013).......................................25, 26

*\* Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018)........................................2, 14, 16, 19

*Ashlow Ltd. v. USITC*, 672 F.2d 371 (4th Cir. 1982) ...................................................................14

*Ashlow, Ltd. v. U.S. Int't Trade Comm'n*, 673 F.2d 1265 (C.C.P.A. 1982) ................................15

*Axon Enters., Inc. v. Fed. Trade Comm'n*, 508 U.S. 175 (2023).............................................16, 17

*Bell Helicopter Textron Inc. v. Airbus Helicopters*,
      78 F. Supp. 3d 253 (D.D.C. 2015) ........................................................................29

*Bldg. Trades Unions v. Dep't of Def.*, 2025 WL 1423610 (D.D.C. May 16, 2025)......................30

*Brendsel v. Office of Fed. Housing Enters. Oversight*,
      339 F. Supp. 2d 52 (D.D.C. 2004) ........................................................................27

*California Ass'n of Priv. Postsecondary Sch. v. DeVos*,
      344 F. Supp. 3d 158 (D.D.C. 2018)......................................................................27

*Campaign Legal Ctr. v. FEC*, 245 F. Supp. 3d 119 (D.D.C. 2017)..............................................12

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)..............23, 29

*Cisco Sys., Inc. v. Int'l Trade Comm'n*, 873 F.3d 1354 (Fed. Cir. 2017) ...................8, 9

*Cisco Sys., Inc. v. Int'l Trade Comm'n*,
   No. 17-2289, Order (Fed. Cir. Sept. 22, 2017) (ECF No. 57) .................16

*Comcast Corp. v. Int'l Trade Comm'n*, 951 F.3d 1301 (Fed. Cir. 2020) ......................8

*Crucible Materials Corp. v. U.S. Int'l Trade Comm'n*,
   127 F.3d 1057 (Fed. Cir. 1997)...............................................11, 15

* *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 ..................................... *passim*

* *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)...............................13, 14, 19

*Endo Par Innovation Co. v. Becerra*,
   No. CV 24-999 (TJK), 2024 WL 2988904 (D.D.C. June 10, 2024)......................25

*Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93 (D.D.C. 2003) ..........................22

*Fed. Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470 (1952).........................................8, 9

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
   317 F. Supp. 3d 504 (D.D.C. 2018) ..............................................12

*Fox Television Stations, Inc. v. BarryDriller Content Sys.*,
   PLC, 915 F. Supp. 2d 1138 (C.D. Cal. 2012) ........................................29

*Fox Television Stations, Inc. v. FilmOn X LLC*,
   966 F. Supp. 2d 30 (D.D.C. 2013) ..................................................29

*Friends of Animals v. BLM*, 232 F. Supp. 3d 53 (D.D.C. 2017)....................................22

*Fuji Photo Film v. Int'l Trade Comm'n*, 386 F.3d 1095 (Fed. Cir. 2004)...................10

*Gilliard v. McWilliams*, 315 F. Supp. 3d 402 (D.D.C. 2018)........................................22

*Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59 (D.D.C. 2009)....................20

*Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1 (D.D.C. 2008)......................26

*Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1 (D.D.C. 2000)....................20

*Hyundai Elecs. Indus. Co. v. U.S. Int'l Trade Comm'n*,
   899 F.2d 1204 (Fed. Cir. 1990)..................................................8

*Jacob Siegel Co. v. Fed. Trade Comm'n*, 327 U.S. 608 (1946) ..................................8

\* *Jarkesy v. S.E.C.*, 803 F.3d 9 (D.C. Cir. 2015) ............................................................. *passim*

*John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194 (D.D.C. 2017) ..................22

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................12

*Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021) ..............................27

*McIver v. Mattis*, 318 F. Supp. 3d 245 (D.D.C. 2018) ................................12

*Meditech Int'l Co. v. Minigrip, Inc.*, 648 F. Supp. 1488 (S.D.N.Y. 1986) ...................................21

*Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290 (1976) ................................................20

*Nat'l Treasury Emps. Union v. Vought*,
No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025)..............................................6, 23

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................27, 31

*N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 2025 WL 1423610, at \*14 (D.D.C.
May 16, 2025)....................................................................................29

*Realtek Semiconductor Corp. v. Int'l Trade Comm'n*,
140 F.4th 1375 (Fed. Cir. 2025) ..............................................................15

*Regeneron Pharms., Inc. v. United States Dep't of Health & Hum. Servs.*,
510 F. Supp. 3d 29 (S.D.N.Y. 2020)........................................................27

\* *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011) ................................25

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Reg. Auth.*,
390 F. Supp. 3d 72 (D.D.C. 2019) ................................................12, 14, 16

*Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205 (D.C. Cir. 1989) ................................22

*South Corp. v. United States*, 690 F.2d 1358 (Fed. Cir. 1982) (en banc) ....................................15

*Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331 (Fed. Cir. 2010)........................................26

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
897 F.2d 511 (Fed. Cir. 1990)........................................................26, 27

*Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338 (Fed. Cir. 2015) (en banc) ....................7, 8

*Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332 (Fed. Cir. 2019) ....................................15

*Talbott v. Untied States*, 775 F. Supp. 3d 283 (D.D.C. 2025) ........................................23

\* *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)....................................................*passim*

*United States v. Mich. Nat'l Corp.*, 419 U.S. 1 (1974) ...................................................22

*Viscofan S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544 (Fed. Cir. 1986) .................................5, 8

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011).....................29

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ...............................................30

* *Winter v. NRDC*, 555 U.S. 7 (2008) ...............................................22, 23

* *Wirtgen Am., Inc. v. United States*, 443 F. Supp. 3d 198 (D.D.C. 2020),
    *vacated as moot*, 2021 WL 12242760 (D.D.C. Apr. 6, 2021) .................................1, 18, 19, 30

*Wirtgen Am., Inc. v. United States*,
    447 F. Supp. 3d 1359 (Ct. Int'l Trade 2020) .......................................19

* *Wis. Gas Co. v. Fed. Energy. Reg. Comm'n*, 758 F.2d 669 (D.C. Cir. 1985) ...............24, 28, 29

## Statutes

5 U.S.C. § 556 ...............................................................3

5 U.S.C. § 557 ...............................................................3

5 U.S.C. § 704 ...............................................................13

5 U.S.C. § 705 ...............................................................15

* 19 U.S.C. § 1337...............................................................*passim*

28 U.S.C. § 1295 ...............................................................22

28 U.S.C. § 1651 ...............................................................14

28 U.S.C. § 1659 ...............................................................22

35 U.S.C. § 271 ...............................................................7, 8

## Regulations

19 C.F.R. Part 177...............................................................5

* 19 C.F.R. § 210.75 ...............................................................1, 6, 11

* 19 C.F.R. § 210.76 ...............................................................1, 6, 11

* 19 C.F.R. § 210.79 ...............................................................1, 6, 11

**Federal Rules**

Fed. R. Civ. P. 65 ..............................................................................................23

Local Civ. R. 65.1 .............................................................................................24

**U.S. International Trade Commission Opinions**

*Certain Light-Based Physiological Measurement Devices & Components Thereof*,
    Inv. No. 337-TA-1276, Comm'n Op., 2023 WL 8109999 (Nov. 14, 2023) ........................4, 7

*Certain Light-Based Physiological Measurement Devices & Components Thereof*,
    Inv. No. 337-TA-1276, Final Initial Determination on Violation of Section
    337, 2023 WL 1965994 (Jan. 10, 2023) .......................................................3, 5, 6, 7

*Certain Marine Sonar Imaging Devices, Including Downscan and Sidescan
    Devices, Prods. Containing the Same, & Components Thereof*,
    Inv. No. 337-TA-921, Comm'n Op. Modifying a Limited Exclusion Order,
    2016 WL 11603660 (Aug. 29, 2016), *dismissed as moot, Garmin Int'l, Inc. v.
    Int'l Trade Comm'n*, 691 F. App'x 624 (Fed. Cir. 2017) .................................10, 11

**Customs & Border Protection Rulings**

*Re: Ruling Request; U.S. Int'l Trade Comm'n; Ltd. Exclusion Order; Inv. No.
    337-TA-1276; Certain Light-Based Physiological Measurement Devices &
    Components Thereof*, HQ H335304 (Customs), 2024 WL 5146677 (Jan. 12,
    2024). .........................................................................................................5

*Re: Ruling Request; U.S. Int'l Trade Comm'n; Ltd. Exclusion Order; Inv. No.
    337-TA-1276; Certain Light-Based Physiological Measurement Devices &
    Components Thereof,* H338254 (Customs) (Jan. 7, 2025),
    https://rulings.cbp.gov/ruling/H338254. ....................................................5

*Internal Advice Request; U.S. Int'l Trade Comm'n; Ltd. Exclusion Order; Inv.
    No. 337-TA-1276; Certain Light-Based Physiological Measurement Devices
    & Components Thereof*, HQ H351038 (Customs) (Aug. 1, 2025),
    https://rulings.cbp.gov/ruling/H351038 (last visited Aug. 27, 2025) ...............5, 6, 7

**Treatises & Other Authorities**

The Cambridge Dictionary ..............................................................................30

11A Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2948.1 (Apr. 2025 supp.).................2, 25

Intervenor-Defendant, the United States International Trade Commission ("Commission" or "ITC"), respectfully submits this response in opposition to Plaintiff Masimo Corporation's motion for a temporary restraining order and preliminary injunction, and in support of the Commission's motion to dismiss.

Masimo asks this Court for relief that, if granted, would be unprecedented. To the Commission's knowledge, this Court has never granted relief to a party dissatisfied with a decision by United States Customs and Border Protection ("Customs" or "CBP") concerning enforcement of a Commission exclusion order under 19 U.S.C. § 1337.

It is indisputable that the Commission has the authority to adjudicate whether Apple's redesigned watches must be excluded from the United States. 19 C.F.R. §§ 210.75 (enforcement proceedings), 210.76 (modification proceedings), 210.79 (advisory opinions). Masimo admits that any decision of the Commission will trump any decision by Customs. Compl. ¶ 82 (recognizing that "determinations of the Commission resulting from . . . a related proceeding under 19 C.F.R. Part 210 are binding authority on CBP and, in the case of conflict will by operation of law modify or revoke any contrary CBP ruling or decision pertaining to Section 337 exclusion orders.") (quotation and citation omitted).

Masimo has not sought relief from the Commission as to Apple's redesign and instead has rushed to this Court for emergency relief. But, as this Court has previously recognized, Congress has channeled such import disputes arising from Customs' enforcement of Commission exclusion orders to the Commission and to the Federal Circuit. *Wirtgen Am., Inc. v. United States*, 443 F. Supp. 3d 198 (D.D.C. 2020), *vacated as moot*, 2021 WL 12242760 (D.D.C. Apr. 6, 2021). This Court lacks jurisdiction to proceed under the Administrative Procedure Act (Counts 1 and 2) or directly under the Constitution (Count 3) in view of the

specialized review scheme contemplated by Congress.   *See, e.g.*, *Jarkesy v. S.E.C.*, 803 F.3d 9, 15-18 (D.C. Cir. 2015); *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018). Accordingly, the unavailability of jurisdiction requires dismissal.

Even if there were jurisdiction, however, emergency relief in this case is unwarranted. "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."   11A Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2948.1, at 24 (Apr. 2025 supp.).   But the showing of irreparable harm here is unusually weak, and unsupported by any evidence.   Instead, Masimo largely relies on a presumption of irreparable harm.   Masimo Mem. in Support of TRO at 30-31 ("Loss of Statutory Right of Exclusion") (Dkt. 3-1).   But as Wright & Miller have recognized, "[c]ourts have largely rejected presumptions of irreparable harm except in the narrow context of first amendment challenges." 11A Wright § 2948.1, at 25; *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (rejecting presumption in favor of injunctive relief in patent cases).   Masimo's showing necessarily fails.

In contrast, if this Court were to grant an injunction, the effects on the Commission would be profound.   If Masimo can show irreparable harm based merely on its alleged showing of "loss of statutory rights to exclusion," "unrecoverable economic injury and sovereign immunity" (*i.e.*, because the Defendants are the Government), and "loss of negotiating position," Masimo Mem. in Support of TRO at 30-32, then irreparable harm would be found in nearly every case, contrary to Federal Circuit practice.   The effect of a successful challenge here is to delay or deter a party from bringing its dispute to the Commission and then from the Commission directly to the Federal Circuit.

I.    **BACKGROUND**

A.    **The U.S. International Trade Commission**

As recited in the Commission's motion to intervene, for more than a century, the

Commission has been charged with investigating "unfair methods of competition and unfair acts

in the importation of articles."    Tariff Act of 1922, Pub. L. No. 318, § 316, *codified as reenacted*

*and amended at* 19 U.S.C. § 1337 ("section 337").    Since 1975, that function has been

accomplished through formal adjudication under the Administrative Procedure Act ("APA"), *see*

5 U.S.C. §§ 554, 556-57, in more than 1,400 investigations alleging violations of section 337

(nearly all of which allege patent infringement).    *See* 19 U.S.C. § 1337(c); *see also* 19 U.S.C. §

1337(a)(1)(B) (patent infringement).    The Commission's six administrative law judges ("ALJ")

adjudicate only section 337 investigations and are widely recognized as experts in adjudicating

patent infringement disputes.    The ALJs and Commissioners themselves are supported by a

cadre of experienced patent law practitioners, many of whom are registered with the U.S. Patent

and Trademark Office.

B.    **The Underlying Commission Investigation**

In the underlying investigation, which commenced on August 18, 2021, the complainant

(*i.e.*, the patentee) Masimo Corp. accused Apple Watch Series 6 and 7 of infringing several

patents including U.S. Patent No. 10,912,502 ("the '502 patent") and U.S. Patent No. 10,945,648

("the '648 patent") related to pulse oximetry sensing and processing.    86 Fed. Reg. 46275-76

(Aug. 18, 2021).    On January 10, 2023, the Commission's presiding ALJ found, in a 337-page

opinion, that the subject watches infringed certain of the asserted patent claims.    *Certain Light-*

*Based Physiological Measurement Devices & Components Thereof*, Inv. No. 337-TA-1276,

Final Initial Determination on Violation of Section 337, 2023 WL 1965994 (Jan. 10, 2023).

Following additional briefing by the parties to the Commission, the Commission found that Apple violated section 337 as to claims 22 and 28 of the '502 patent and claims 12, 24, and 30 of the '648 patent and issued a limited exclusion order and a cease and desist order, attached hereto as Exhibits 1 and 2, respectively.   Notice, 88 Fed. Reg. 75032, 75032-33 (Nov. 1, 2023).   The Commission's notice and remedial orders were accompanied by the Commission's 123-page opinion on the matter.   *Certain Light-Based Physiological Measurement Devices & Components Thereof*, Inv. No. 337-TA-1276, Comm'n Op., 2023 WL 8109999 (Nov. 14, 2023).

Notably, the Commission can only issue remedial orders after concluding that the public interest (as defined in section 337) does not preclude it.   *See* 19 U.S.C. §§ 1337(d)(1), (f)(1). Apple's iPhone was not at issue in the Commission investigation, and the Commission concluded that the public interest did not preclude remedial orders as to the subject Apple Watches.   Comm'n Op., 2023 WL 8109999, at *43-72.   Following a 60-day period of Presidential review by the U.S. Trade Representative and the White House, *see* 19 U.S.C. § 1337(j), the Commission's remedial orders took effect.

Apple appealed the Commission's findings to the United States Court of Appeals for the Federal Circuit.   *Apple Inc. v. Int'l Trade Comm'n*, No. 24-1285 (Fed. Cir.).   On July 7, 2025, the Federal Circuit heard oral argument in that appeal, and in related appeals from the Patent Trial and Appeal Board.   The Federal Circuit's decision is forthcoming.

### C.    Proceedings Before Customs

Following the Commission's issuance of remedial orders, Customs issued three administrative decisions relevant to the instant dispute.   CBP issued the first administrative decision following an October 27, 2023, request by Apple for a ruling under 19 C.F.R. Part 177 to determine whether redesigned watches in which the infringing pulse oximetry functionality

had been removed could be imported. *Re: Ruling Request; U.S. Int'l Trade Comm'n; Ltd. Exclusion Order; Inv. No. 337-TA-1276; Certain Light-Based Physiological Measurement Devices & Components Thereof*, HQ H335304 (Customs), 2024 WL 5146677 at *7 (Jan. 12, 2024). CBP issued a ruling in response to Apple's request on January 12, 2024, in which it determined that Apple's redesigned watches with no pulse oximetry features do not infringe the relevant patent claims and are not subject to the Commission's exclusion order. *Id.* at *24.

On March 26, 2024, Apple submitted a second request for a ruling under 19 C.F.R. Part 177 to determine whether further redesigned watches, which included pulse oximetry features but differed in execution from the original watches presented to the Commission, could be imported. *Re: Ruling Request; U.S. Int'l Trade Comm'n; Ltd. Exclusion Order; Inv. No. 337-TA-1276; Certain Light-Based Physiological Measurement Devices & Components Thereof,* H338254 (Customs) at 9 (Jan. 7, 2025), https://rulings.cbp.gov/ruling/H338254 (last visited on Aug. 27, 2025). Specifically, the further redesigned watches required an iPhone to perform a portion of the processing that was previously performed entirely on the watch. *Id.* CBP issued a ruling in response to Apple's request on January 7, 2025, in which it determined that Apple's Apple's watch, standing alone, does not infringe the patent claims, *id.* at 35-36, but that the combined watch and iPhone do, *id.* at 52.

On August 1, 2025, CBP issued its third administrative decision under 19 C.F.R. Part 177 in response to a request for internal advice within CBP concerning whether the redesigned watches that provide pulse oximetry features in combination with an iPhone are subject to exclusion when imported alone. *Internal Advice Request; U.S. Int'l Trade Comm'n; Ltd. Exclusion Order; Inv. No. 337-TA-1276; Certain Light-Based Physiological Measurement Devices & Components Thereof*, HQ H351038 (Customs) at 6 (Aug. 1, 2025),

https://rulings.cbp.gov/ruling/H351038 (last visited Aug. 27, 2025).   CBP concluded the

redesigned watches on their own, *i.e.*, without the iPhone required to enable the pulse oximetry

features, could be imported.   *Id.* at 21.   The instant matter concerns around Masimo's view that

CBP August 2025 internal advice is incompatible with its January 2025 ruling.

II.    <u>**ARGUMENT**</u>

Regardless of the outcomes of the pending motions, the Commission believes that it is

imperative that this dispute return to the Commission.    What follows first is an explanation for

why the dispute should return to the Commission, which is relevant both to dismissal and denial

of the relief sought by Masimo.    This brief will then address dismissal for lack of jurisdiction,

of which this Circuit recently reiterated: "[I]f a court concludes that a claim fails as a matter of

law—on a point of *jurisdiction* or merits—then a preliminary injunction is inappropriate."

*Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *4 (D.C. Cir. Aug.

15, 2025) ("*NTEU*") (emphasis added).    The brief will then, and last, address Masimo's motion

for extraordinary relief.

A.    <u>**THIS DISPUTE SHOULD RETURN TO THE COMMISSION**</u>

Masimo's complaint and motion invoke the Administrative Procedure Act and the

Constitution to interpret the scope of the Commission's exclusion order.   Masimo pleads, for

example, that the recent decision by Customs is "to bypass a Limited Exclusion Order" issued by

the Commission itself.   Compl. ¶ 1.   Masimo further asserts that "CBP's function is to enforce

ITC exclusion orders, not to create loopholes that render them ineffective."   *Id.* ¶ 6.   In so

doing, Masimo calls into question the relationship between CBP's enforcement of Commission

orders and the Commission's own authority and duty to enforce its orders.   *See* 19 U.S.C. §

1337(k); 19 C.F.R. §§ 210.75, 210.76, 210.79.   The Commission has a vested interest in

whether its orders are bypassed or ineffective.   The Commission, however, does not agree with Masimo's characterizations of the Customs proceedings themselves, the effect of the Customs proceedings, or the options available to redress Masimo's grievance, *i.e.*, at the Commission as opposed to in this Court.

The entirety of the present dispute centers on whether Apple's redesigned watches infringe the asserted patent claims, and if so, on what basis.   Each of the subject patent claims contains between ten and fifteen claim elements.   Compl. ¶ 19 (reprinting the subject claims). Each element generally contains numerous limitations concerning the structure, function, and operation of the claimed device.   *See id.*   It is in part for this reason that the opinion of the Commission's administrative law judge provided hundreds of pages of patent analysis, and the Commission's own opinion was more than 100 pages long.   *Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276, Final Initial Determination on Violation of Section 337, 2023 WL 1965994 (Jan. 10, 2023); *Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276, Comm'n Op., 2023 WL 8109999 (Nov. 14, 2023).

It is undisputed that Customs found that the redesigned watches alone do *not* infringe the asserted claims.[1]   Customs Ruling H338254 at 35-36.   When this dispute returns to the Commission, the Commission can adjudicate direct and indirect infringement to determine whether the redesigned watches sold alone should be excluded from the United States.   *See, e.g.,*

---

[1] Section 337 uses, in connection with patent infringement, the language "articles … that infringe."   19 U.S.C. § 1337(a)(1)(B) & (a)(1)(B)(i).   The Federal Circuit has held that the Patent Act, at 35 U.S.C. § 271, defines infringement as actions taken by persons (as opposed to articles), and that "articles that … infringe" for purposes of section 337 is co-extensive with the direct infringement, induced infringement, and contributory infringement of 35 U.S.C. § 271. *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338 (Fed. Cir. 2015) (en banc).

*Suprema*, 796 F.3d at 1341-42, 1347-49 (inducement by scanners); *Comcast Corp. v. Int'l Trade Comm'n*, 951 F.3d 1301, 1305, 1307-08 (Fed. Cir. 2020) (inducement by cable set-top boxes).

Masimo's complaint calls into question the relationship between a patentee's showing of infringement at the Commission and the prophylactic nature of the Commission's remedies upon the Commission's own finding of a violation of section 337. Once the Commission finds a violation of section 337 by certain products, the Commission's remedy is not limited to the specific products, such as model numbers, at issue in the Commission investigation. The Federal Circuit has found that the Commission has "broad discretion in selecting the form, scope, and extent of the remedy" including its remedial orders. *Viscofan S.A. v. U.S. Int'l Trade Comm'n,* 787 F.2d 544, 548 (Fed. Cir. 1986). *Viscofan* held that the Supreme Court's discussion of the Federal Trade Commission's wide discretion in fashioning a remedy is "equally applicable" to the Commission. *Id.* (quoting *Jacob Siegel Co. v. Fed. Trade Comm'n*, 327 U.S. 608, 611-13 (1946)). The Supreme Court explained that the Federal Trade Commission's remedial authority should be construed broadly so the agency can craft an effective remedy. *See Fed. Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470, 473-75 (1952). That remedial authority therefore is

> not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be bypassed with impunity.

*Id.* at 473. *See generally, e.g.*, *Hyundai Elecs. Indus. Co. v. U.S. Int'l Trade Comm'n,* 899 F.2d 1204, 1210 (Fed. Cir. 1990); *Cisco Sys., Inc. v. Int'l Trade Comm'n,* 873 F.3d 1354, 1363 (Fed. Cir. 2017) (quoting *Hyundai*, 899 F.2d at 1209). The prophylactic nature of the remedy can include imported components, particularly when those components are imported to induce patent

infringement.   *Cisco*, 873 F.3d at 1362-63.   Here, however, there was no adjudication of induced infringement by the Commission and no ruling by CBP on that issue.

Irrespective of whether this Court has jurisdiction or not, the Commission disagrees with Masimo's framing the issue as a simple question of prophylactic coverage of components. Based on the Commission's review of the January 2025 Customs ruling, the Commission does not believe that the August 2025 ruling "bypass[es], "nullifie[s]," or "render[s] … ineffective" the exclusion order in this case or exclusion orders generally.   Compl. ¶¶ 1, 6.   This is not a situation where Apple changed (or broke apart into components) its products after the January 2025 Customs ruling.

It is also unclear to the Commission what the effect would be if Masimo's interpretation of the January 2025 Customs ruling were correct.   Based on Masimo's belief that all components of the system adjudicated by Customs in January 2025 directly infringe both together and separately, it would appear to follow, *a fortiori*, that Apple's iPhones, the other component in the system, should be subject to an import ban for the exact same reason as the Watches.[2]   To the extent that it is not clear from the January 2025 ruling that iPhones should be subject to an import ban, it highlights that further clarification of the January 2025 ruling was warranted.

That the January 2025 decision is unclear, and the August 2025 decision is disputed, is enough reason to recognize that this dispute needs to return to the Commission to provide Masimo with relief, as noted in the August 2025 decision.   It is undisputed—though ignored by Masimo—that the Commission has the authority, experience, and expertise to render a

---

[2] As noted earlier, the Commission did not address public interest considerations concerning exclusion of iPhones in its underlying investigation.

dispositive decision on these issues.   The Federal Circuit itself has held that when a patentee believes that "prior Customs Service opinions of noninfringement in this case demonstrate that Customs cannot adequately enforce the" subject exclusion order,[3] the solution is to go to the Commission.   *Fuji Photo Film v. Int'l Trade Comm'n*, 386 F.3d 1095, 1107 (Fed. Cir. 2004). In this way, the Commission can "provide[] more guidance as to the scope of the order" and "Customs will therefore have new guidance as to the scope of the" order, "which will assist it in restricting the entry of infringing" products.   *Id.*

The Commission has three such mechanisms available to Masimo to help instruct Customs to clarify the scope of the Order and both of the Customs rulings.   The Commission can institute an enforcement proceeding, which can result in civil penalties against Apple in the amount of "the greater of $100,000 or twice the domestic value of the articles entered or sold" each day Apple has violated the cease and desist order.   19 U.S.C. § 1337(f)(2); *see* 19 C.F.R. § 210.75 (procedure for enforcement proceedings).

Masimo can also petition the Commission to institute a modification proceeding pursuant to 19 U.S.C. § 1337(k) & 19 C.F.R. § 210.76, which will not provide civil penalties, but can provide faster relief for potential petitioners such as Masimo.[4]   For example, in *Certain Marine Sonar Imaging Devices, Including Downscan and Sidescan Devices, Prods. Containing the Same, & Components Thereof*, Inv. No. 337-TA-921, Comm'n Op. Modifying a Limited Exclusion Order, 2016 WL 11603660 (Aug. 29, 2016), *dismissed as moot*, *Garmin Int'l, Inc. v.*

---

[3] *Fuji* involves a general exclusion order, which applies to importers who did not participate in the Commission investigation, but that difference is irrelevant to the present action.

[4] *See Pilot Program Will Test Expedited Procedures for USITC Modification and Advisory Opinion Proceedings*, https://www.usitc.gov/press_room/featured_news/ pilot_program_will_test_expedited_procedures_usitc.htm (last visited Aug. 26, 2025).

*Int'l Trade Comm'n*, 691 F. App'x 624 (Fed. Cir. 2017), the patentee alleged that after the Commission exclusion order issued, the adjudged infringer changed its importation practice to, essentially, separate its products in half and that Customs impermissibly allowed the halved products to be imported for recombination in the United States. *Id.* at *2, *4-7 (modifying exclusion order to clarify that it includes certain components). Because the Commission did not need to engage in factfinding, the modification proceeding was concluded (with relief to the patentee) within about three months of the patentee's petition for a modification proceeding.

The Commission also issues advisory opinions, which are faster than enforcement proceedings or modification proceedings. 19 C.F.R. § 210.79. *All* of these Commission processes (even the least formal, the advisory opinion), trump *all* Customs determinations (even the most formal, the *inter partes* process that resulted in the January 2025 Customs decision). *See* Compl. ¶ 82 (recognizing that "determinations of the Commission resulting from the underlying investigation *or a related proceeding under 19 C.F.R. Part 210* are binding authority on CBP and, in the case of conflict, will by operation of law modify or revoke any contrary CBP ruling or decision pertaining to Section 337 exclusion orders.") (emphasis added, quotation omitted). Enforcement and modification proceedings are directly appealable to the Federal Circuit but, based on Federal Circuit precedent, advisory opinions are not subject to judicial review. *See Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573, 1578-80 (Fed. Cir. 1988) (modification proceedings and advisory opinions); *Crucible Materials Corp. v. U.S. Int'l Trade Comm'n*, 127 F.3d 1057, 1060-61 (Fed. Cir. 1997) (enforcement proceedings).

Although parties sometimes choose to argue infringement or non-infringement to Customs—often for simple redesigns, and on the belief that CBP may decide the issue quicker than would the Commission—any of the aforementioned procedures is available at the

Commission to reach the issues that Masimo seeks to raise here.

B.     **MOTION TO DISMISS FOR LACK OF JURISDICTION**

    1.     **Standard of Review Under Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction and the law presumes that 'a cause lies outside this limited jurisdiction.'" *Scottsdale Capital Advisors Corp. v. Fin. Indus. Reg. Auth.*, 390 F. Supp. 3d 72, 78 (D.D.C. 2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). To "defeat a 12(b)(1) motion, a plaintiff must show by a preponderance of the evidence that the Court has subject matter jurisdiction." *Scottsdale Capital*, 390 F. Supp. 3d at 78 (quotation and citation omitted). For purposes of a Rule 12(b)(1) motion, the factual allegations of the complaint are taken as true, but the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Id.* (quotation and citation omitted). Consideration of documents outside the pleadings "does not convert the motion to dismiss into one for summary judgment." *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 317 F. Supp. 3d 504, 513-14 (D.D.C. 2018). The Court may take judicial notice of public court and administrative filings. *See, e.g.*, *McIver v. Mattis*, 318 F. Supp. 3d 245, 250 (D.D.C. 2018); *Campaign Legal Ctr. v. FEC*, 245 F. Supp. 3d 119, 124 (D.D.C. 2017).

    2.     **This Court Lacks Subject-Matter Jurisdiction Over This Civil Action**

Congress has specifically addressed judicial review from issues arising from international trade, including the enforcement of the Commission's order, and neither the Administrative Procedure Act, nor the Constitution directly, allows Masimo to circumvent the Federal Circuit's exclusive review of the issuance of, and scope of, Commission orders.

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Supreme Court held that

Congress had channeled enforcement proceedings concerning the Mine Act to the Federal Mine Safety Commission, not the district courts. *Id.* at 214. Similarly, in *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), the Supreme Court found that district courts lack jurisdiction over certain Merit Systems Protection Board claims that are appealable from that Board directly to the Federal Circuit. *Id.* at 10.

The present case presents a simple application of the *Thunder Basin* doctrine. Section 337's "comprehensive enforcement and administrative-review scheme precludes jurisdiction" over Masimo's claims. *Thunder Basin*, 510 U.S. at 206. Jurisdiction under the Administrative Procedure Act, *see* 5 U.S.C. § 704, cannot be used to bypass Congress's channeling. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2013) (*AFL-CIO*); *Am Fed. of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 639 (D.C. Cir. 2013). The claims foreclosed in *Jarkesy*, like Masimo's, were ostensibly rooted in the Constitution and in the Administrative Procedure Act. *Jarkesy*, 803 F.3d at 29-30. Accordingly, there is no special consideration for Masimo's constitutional claims, as the Supreme Court's decision in *Elgin* recognized. *Elgin*, 567 U.S. at 16. As the *Elgin* Court specifically explained regarding the Federal Circuit, that Court can address constitutional claims even in situations in which the agency below lacked the authority to do so. *Id.* at 19. And the possibility of such constitutional claims cannot be used to fabricate district court jurisdiction.

This Court and the court of appeals routinely and consistently apply these cases. For example, the court of appeals has explained:

> Under *Thunder Basin's* framework, courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is "fairly discernible in the statutory scheme," and (ii) the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure." [*Thunder Basin*] at 207, 212.

*Jarkesy*, 803 F.3d at 15 (holding that Congress did not intend to provide the district courts with jurisdiction over constitutional and non-constitutional claims that could be presented to the SEC, reviewable directly by the regional court of appeals); *see also, e.g.*, *AFL-CIO*, 929 F.3d at 754-60; *Arch Coal*, 888 F.3d at 498-502; *Scottsdale Capital*, 390 F. Supp. 3d 72, 78-83.

Both of these *Thunder Basin* considerations support a judgment that this Court lacks authority here.[5]   As to Congress's fairly discernable intent, the Commission submits that it is found in section 337 itself.   Congress has assigned the Commission exclusive authority to conduct formal adjudications by administrative law judges (in section 337(c)); to assess civil penalties for violations of Commission orders (in section 337(f)(2)); to grant relief from its orders according to certain statutory public interest factors (in section 337(d)(1) and (f)(1)); to issue seizure and forfeiture orders (in section 337(i)); to modify its own orders (in section 337(k)); and to "postpone the effective date of action taken by it, pending judicial review" under the Administrative Procedure Act, *see* 5 U.S.C. § 705.   Of particular interest are the powers assigned to the Commission to adjudicate requests for issuance of exclusion orders and to modify or rescind such orders as may be appropriate under the circumstances.   19 U.S.C. § 1337(c), (k). Congress has further stated that "any exclusion from entry or order under this section [337] shall continue in effect until *the Commission finds* . . . that the conditions which led to such exclusion

---

[5]   Indeed, even prior to the Supreme Court's development of the channeling doctrine, the federal courts refused to exercise jurisdiction that would so interfere with Commission proceedings and the Federal Circuit's right of review.   *See, e.g.*, *Ashlow Ltd. v. USITC*, 672 F.2d 371, 375 (4th Cir. 1982) ("In short, the Congress has created two separate jurisdictions:   One with jurisdiction over unfair acts in connection with the importation of articles from abroad (the Commission), and the other with jurisdiction over the validity of domestic patents (the district court).   There is no authority under [28 U.S.C.] § 1651 for either jurisdiction to review the actions and decisions of the other.").   Additional such cases are grounded on primary jurisdiction, and will be discussed, *infra*.

from entry or order no longer exist."    19 U.S.C. § 1337(k)(1) (emphasis added).

The *Thunder Basin* issue is especially applicable here where Masimo attempts to avoid both the Commission's expertise and the statutorily mandated jurisdiction of a specialized court of review.    Specifically, judicial review of such Commission determinations is available only by direct review in the Federal Circuit.    19 U.S.C. § 1337(c); *see Crucible Materials Corp. v. ITC*, 127 F.3d 1057, 1060-61 (Fed. Cir. 1997).    The Federal Circuit's predecessor stated:    "Congress has given this Court exclusive appellate jurisdiction over subject matter under § 1337 relating to a complex statutory scheme requiring uniform application."    *Ashlow, Ltd. v. U.S. Int't Trade Comm'n*, 673 F.2d 1265, 1268 (C.C.P.A. 1982); *see South Corp. v. United States*, 690 F.2d 1358, 1369 (Fed. Cir. 1982) (en banc) (finding that the holdings of the Court of Customs and Patent Appeals "shall be binding as precedent" in the Federal Circuit).

The Federal Circuit has explained that the scope of its jurisdiction in connection with section 337 encompasses "a final administrative decision on the merits, excluding or refusing to exclude articles from entry under 19 U.S.C. § 1337(d), (e), (f), or (g).    *Realtek Semiconductor Corp. v. Int'l Trade Comm'n*, 140 F.4th 1375, 1378 (Fed. Cir. 2025) (quotation omitted).    The Federal Circuit has also recognized that "[w]ith the jurisdiction to review the Commission's final determinations also comes the jurisdiction to review matters ancillary to or affecting the validity of those final determinations."    *Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1342 n.3 (Fed. Cir. 2019).    As recited above, Masimo's civil action is predicated on the scope of the Commission's exclusion order.    These are all issues that the Federal Circuit, and not this Court, has jurisdiction to hear.

As to the second factor relevant to *Thunder Basin*, as discussed in *Jarkesy, supra*, Masimo's claims—which relate to the scope and operation of the Commission's order—are

15

plainly of the type that Congress intended the Commission to hear, with judicial review to the Federal Circuit, in the special statutory scheme contemplated by section 337. "A claim will be found to fall outside the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions, *and* (3) the claims are beyond the expertise of the agency."[6] *Arch Coal*, 888 F.3d at 500 (emphasis added). "But even a cursory examination of" Masimo's complaint "reveals that its claim flunks the second part of the *Thunder Basin* test." *Scottsdale Capital*, 390 F. Supp. 3d at 79. None of these factors supports this Court's jurisdiction, much less all three factors.

Masimo is not deprived of all meaningful judicial review: As discussed above, enforcement proceedings, modifications, and advisory opinion proceedings are available to Masimo. These proceedings are unexceptional. In one instance, the Federal Circuit referred the infringement question as to a redesign to a modification proceeding at the Commission. *Cisco Sys., Inc. v. Int'l Trade Comm'n*, No. 17-2289, Order at 3 (Fed. Cir. Sept. 22, 2017) (ECF No. 57). Should Masimo seek judicial review from the Commission's findings, it should pursue an enforcement proceeding or modification proceeding because advisory-opinion proceedings are not subject to judicial review.

It is of no moment that judicial review, and relief through judicial review, can be obtained more quickly in this Court than through the administrative process subject to direct

---

[6] Subsequent to *Arch Coal*, the Supreme Court held that structural constitutional claims, such as separation-of-powers challenges to administrative agencies, are not subject to channeling. *Axon Enters., Inc. v. Fed. Trade Comm'n*, 508 U.S. 175, 191 (2023). The due process violation alleged by Masimo is not a structural constitutional claim, but rather a garden-variety grievance about alleged improprieties in a specific administrative proceeding.

review by the Federal Circuit.  *All* of the cases involving administrative channeling involve seeking relief directly from a district court so as not to endure administrative proceedings with a specialized judicial review scheme.   But except for structural constitutional challenges, *Axon,* 508 U.S. at 191, that is no basis for affording a district court jurisdiction.

   <u>Masimo's claims are not wholly collateral to the scope and operation of the Commission's orders</u>:   Masimo's challenge here is contingent upon what it contends is covered by the exclusion order here and by the relationship that Customs and the Commission maintain for resolving disputes about whether the Commission's exclusion order is violated.   Far from being collateral issues, these issues are at the core of the Commission's authority and are fundamental to the specialized scheme of administrative and judicial review established by Congress for section 337.   Regardless of whether Apple sought to have Customs adjudicate the present redesign, Masimo has administrative options at the Commission available to it.   *Cf. AFL-CIO*, 929 F.3d at 757 ("On the present record, it appears that the Statute provides the unions with several 'administrative options' for challenging the executive orders before the FLRA, followed by judicial review.").

   <u>The Commission's expertise</u>:   The form, scope, operation, and enforcement of the Commission's order are exactly the types of issues in which the Commission is the expert.   The relief sought by Masimo, which would require interpretation of the Commission's remedial orders "fall[s] squarely within the Commission's expertise."   *See Thunder Basin*, 510 U.S. at 214.   There is no reason why the Commission's expertise should not be "brought to bear" on the questions presented by Masimo in this Court.   *Id.* at 215 (quotation omitted).   This is particularly true since the Commission has already interpreted the patent in question as part of its original investigation, issued the limited exclusion order, and stands ready for Masimo to file a

17

petition for further proceedings at the Commission to determine whether Apple's Watch should be subject to exclusion.   Nothing in the jurisdictional provisions for this Court suggests that Congress intended parties to be able to invoke the APA or constitutional claims in a district court to collaterally attack Commission determinations, or determinations by the Federal Circuit, and thereby to "evade the statutory-review process."   *Id*. at 216.

It is for all these reasons that Judge Cooper ordered dismissal of importer Wirtgen's action about five years ago.[7]   *Wirtgen*, 443 F. Supp. 3d at 210-19.   (As mentioned earlier, the dispute became moot during the pendency of the appeal, but the Commission believes that the analysis in the decision is correct and remains persuasive.)   Judge Cooper found that there were two different "Roadways"—the case involved asphalt-milling machines—that each precluded district court jurisdiction.   First was the "International Trade Commission/Federal Circuit Roadway."   *Id.* at 210-14.   Applying the facts of the case to the *Thunder Basin* framework, the Court found that "[a]t least to the extent that Wirtgen is effectively *challenging whether the exclusion order encompasses the redesigned articles* or the Commission's authority to issue such an order, the Court agrees with the Government that *those claims belong with the ITC and the Federal Circuit*."   *Id.* at 212-13 (emphasis added).   So too here.

Masimo tries to distinguish *Wirtgen* on the basis, which the Commission does not dispute, that Masimo has no recourse available to it in the Court of International Trade.   Masimo Mem. in Support of TRO at 14-17.   But the unavailability of the trade court ignores the administrative channeling at the core of *Wirtgen* decision itself ("The International Trade

---

[7] In the only other such dispute in this Court of which the Commission is aware, the Court effectively denied the emergency relief sought by not acting on the motion, and after approximately two years, the parties moved jointly to dismiss the action.   *Microsoft Corp. v. Dep't of Homeland Security*, No. 1:13-cv-01063-RWR (filed July 12, 2013).

Commission/Federal Circuit Roadway") and the cases, including *Thunder Basin*, *Elgin, Arch Coal,* and *Jarkesy* that address administrative channeling.   In *Wirtgen,* the "Customs/Court of International Trade Roadway"—the second Roadway—was an independent alternative analysis, to which the Court applied the *Thunder Basin* framework anew.[8]   *Wirtgen*, 443 F. Supp. 3d at 17-19.   In other words, there were two independent bases for this Court lacking jurisdiction, one of which (the International Trade Commission/Federal Circuit Roadway) is irrespective of the unavailability of review in the trade court, as is the case here.

Because the Court lacks jurisdiction, the Commission's motion to dismiss should be granted.

### 3.    Alternatively, This Court Should Dismiss the Civil Action Based on Primary Jurisdiction

The primary jurisdiction doctrine provides an agency with the first opportunity to decide an issue.   As this Circuit has explained:

> A district court may dismiss a suit on the ground that an agency has primary jurisdiction over it, i.e., that the agency is best suited to make the initial decision on the issues in dispute, even though the district court has subject matter jurisdiction.   . . . This doctrine is rooted in the teaching that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.

*Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd.,* 31 F.3d 1184, 1186 (D.C. Cir. 1994)

(modifications, quotations, and citations omitted). "The primary jurisdiction doctrine rests both

---

[8]  Making reliance on trade court jurisdiction even worse for Masimo, the *Wirtgen* court found (and the Government agrees) that the statutory hook by which the Court of International Trade asserts jurisdiction under some such circumstances is a misreading of the trade laws.   *Id.* at 215.   *But see Wirtgen Am., Inc. v. United States*, 447 F. Supp. 3d 1359 (Ct. Int'l Trade 2020) (disagreeing with the district court's interpretation).   It is the Commission's view that this Court was correct, but any disagreement is immaterial to the present civil action.

on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently), . . . and on the advantages of allowing an agency to apply its expert judgment." *Allnet Commc'n Serv., Inc. v. National Exch. Carrier Ass'n*, 965 F.2d 1118, 1120 (D.C. Cir. 1992) (citations omitted). Decision on primary jurisdiction obviates the need for a district court to reach subject-matter jurisdiction. *See id.* at 1119-20; *see also Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 60 (D.D.C. 2009); *Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1, 3 (D.D.C. 2000).

The primary jurisdiction doctrine applies "particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304 (1976). "Expertise, of course, is not merely technical but extends to the policy judgments needed to implement an agency's mandate." *Allnet*, 965 F.2d at 1120.

This case strikes at the heart of the primary jurisdiction doctrine. As discussed above, for more than a hundred years, the Commission has been charged with investigating "unfair methods of competition and unfair acts in the importation of articles." Tariff Act of 1922, Pub. L. No. 318, § 316, *codified as reenacted and amended at* 19 U.S.C. § 1337. The underlying dispute, on collateral challenge here, involves issues of patent infringement that were the subject of extensive proceedings at the Commission. Masimo's challenge here reaches judgments that fall uniquely within the Commission's expertise and experience. The Commission has exclusive authority to investigate unfair practices (including patent infringement) under the trade laws, and to set the appropriate scope of its remedial orders, recognizing that adjudged infringers may be likely to try to evade their scope. The Commission also has the exclusive authority to modify its own decisions, as provided in its own organic statute, 19 U.S.C. § 1337(k).

20

Likewise, these same issues fall within the Federal Circuit's experience in administering and adjudicating disputes concerning the scope of Commission orders.

Moreover, any decision by this Court risks creating conflict later. Customs itself and Masimo both recognize that Customs' decisions are subject to later contrary determinations by the Commission. Compl. ¶ 82. Aware of these conflicts, federal courts have routinely deferred to the Commission's decision-making and the direct review therefrom in the Federal Circuit. *See, e.g.*, *Meditech Int'l Co. v. Minigrip, Inc.*, 648 F. Supp. 1488, 1494 (S.D.N.Y. 1986) ("[I]t would be entirely inappropriate for this Court to resolve questions within [the] Commission's special competence before [the] Commission has had the opportunity even to examine those issues."); *Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9, 14 (2d Cir. 1981) ( "We find no reason, therefore, not to give the Commission the opportunity to resolve in the first instance the major issues in this litigation."); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984) ("The decision before [the ITC] could very well resolve the issues presented in this case. In any event, discretion dictates caution for the moment lest our exercise of respective jurisdictions entangles us in a morass of legal process.") (footnote omitted).[9]

For the foregoing reasons, the Court should respect the Commission's primary jurisdiction over Masimo's dispute and decline to proceed. Given the lack of any dispute about the Commission's jurisdiction to resolve this dispute and the Federal Circuit's review therefrom, the Commission believes that, should the Court find that it has jurisdiction despite *Thunder*

---

[9] In 1994, Congress enacted 28 U.S.C. § 1659(a) as part of the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994), which took effect in 1996. Section 1659(a) provides for mandatory stays of district court litigation in favor of allowing Commission actions to proceed to their conclusion first. As a result of the Uruguay Round, the issue of the Commission's primary jurisdiction has since seldom arisen.

*Basin*, dismissal without prejudice is warranted pursuant to the doctrine of primary jurisdiction. *See, e.g.*, *United States v. Mich. Nat'l Corp.*, 419 U.S. 1, 5 (1974) ("Dismissal rather than a stay has been approved where there is assurance that no party is prejudiced thereby."); *Allnet*, 965 F.2d at 1123 ("Although courts often apply the primary jurisdiction doctrine by holding the lawsuit in abeyance so that the parties may turn to the relevant agency, . . . we see no need to do so here" because "we can discern no present prejudice to either party from dismissal.") (citations omitted). Dismissal is in the interest of efficient judicial administration, because any review of a Commission modification proceeding should be made by the Federal Circuit, pursuant to 19 U.S.C. § 1337(c) and 28 U.S.C. § 1295(a)(6), as opposed to collaterally by this Court.

## C. OPPOSITION TO THE MOTION FOR A TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION

### 1. Legal Standard

"[T]he decision to grant injunctive relief is a discretionary exercise of the district court's equitable powers." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 201 (D.D.C. 2017) (quoting *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209 (D.C. Cir. 1989)). "A preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Friends of Animals v. BLM*, 232 F. Supp. 3d 53, 59–60 (D.D.C. 2017) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). And the same standards apply to both temporary restraining orders and preliminary injunctions. *See Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 412 (D.D.C. 2018) (citing *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003)).

To warrant preliminary injunctive relief, the moving party must show that: (1) "it is likely to succeed on the merits"; (2) "it is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in its favor"; and (4) "an injunction is in the public interest." *Friends of Animals*, 232 F. Supp. 3d at 60 (citing *Winter*, 555 U.S. at 20)

(internal quotations omitted).   This Court has explained that after *Winter*, it is unclear in this Circuit whether a "sliding-scale or independent-factor approach" is appropriate.   *Talbott v. Untied States*, 775 F. Supp. 3d 283, 311 (D.D.C. 2025) (Reyes, J.); *see also NTEU*, 2025 WL 2371608, at *4 (D.C. Cir. Aug. 15, 2025) ("We have reserved the question whether a strong showing on one of the *Winter* factors may compensate for a weaker showing on another, despite expressing some skepticism on that point.").

But regardless of which approach is adopted, irreparable harm is a prerequisite for issuing a preliminary injunction.   As *Winter* itself explains, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   *Winter*, 555 U.S. at 22; *accord, e.g.*, *Alpine Securities Corp. v. Financial Indus. Reg. Auth.*, 121 F.4th 1314, 1336-37 (D.C. Cir. 2024); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").   In view of the dispositive effect of lack of irreparable harm, this Brief addresses that factor first.

## 2.    Masimo Has Failed to Show Irreparable Harm

Masimo has failed to provide any facts in support of its alleged irreparable harm, much less the clear showing of irreparable harm that is required for the relief that it seeks.   The very title of Masimo's memorandum in support of its motion is a nod to that fact, it is a self-described "Memorandum of Law," Dkt. 3-1; it includes no affidavits or other evidence.   Masimo's complaint likewise fails to present evidence, and Masimo's counsel chose not to verify it.   *See generally* Fed. R. Civ. P. 65(b)(1) (requiring for a temporary restraining order without notice

"specific facts in an affidavit or verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition").

These same considerations apply in connection with preliminary injunctions. Pursuant to this Court's local rules, an application for a preliminary injunction "shall be supported by all affidavits on which the plaintiff intends to rely." Local Civ. R. 65.1(c). This requirement is especially important because the "practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible." Local Civ. R. 65(d). Masimo chose the present schedule, which the Commission understands to be faster than what the Government first proposed. In so doing, Masimo also chose to proceed with bare attorney argument unsupported by the requisite factual showing for this (or any other) court.[10] Masimo's decision to proceed with no evidence in support of the preliminary injunction it seeks is fatal to its motion. *Wis. Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur. The movant must provide proof … that the harm is certain to occur in the near future.").

The principal support for Masimo's theory of irreparable harm is what it calls "Loss of Statutory Right to Exclusion." Masimo Mem. in Support of TRO at 30-31. Masimo contends that it has a vested right to exclusion, which necessarily is irreparable. But as Wright & Miller explain, there are no such presumptions permissible here. 11A Wright § 2948.1, at 25 (Apr. 2025 supp.); *eBay*, 547 U.S. 388, 393-94 (rejecting presumption in favor of injunctive relief in

---

[10] As of the filing day of the present submission, Masimo has not sought the Commission's consent (or provided any other notice) of forthcoming affidavits or live testimony. The Commission submits that a movant's withholding of evidence until after its adversary responds—should Masimo so attempt in its reply—finds no basis in this Court's precedent.

patent cases).   Indeed, the Federal Circuit has reiterated this point unequivocally:   "We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief."   *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).   The Federal Circuit likewise recognized that "*eBay* abolishes our general rule that an injunction normally will issue when a patent is found to have been valid and infringed."   *Id.*   Although *eBay* and *Bosch* were permanent injunction cases, the Federal Circuit has extended these principles to the preliminary-injunction context.   *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1373 (Fed. Cir. 2013).   Masimo's theory of a "loss of statutory right to exclusion" is nothing more than a presumption that, because it believes that the Apple watches infringe its patent claims, it is irreparably harmed.   Masimo's theory fails as a matter of law.[11]

The cases on which Masimo relies do not state otherwise.   In *Endo Par Innovation Co. v. Becerra*, this Court found a likelihood of irreparable harm in the form of irreversible price erosion and loss of goodwill resulting from the FDA's failure to observe a statutorily mandated 30-month stay of approval for a competing drug while patent infringement proceedings played out.   *See* No. CV 24-999 (TJK), 2024 WL 2988904, 6-9 (D.D.C. June 10, 2024).   The Court did not hold that the loss of a statutory right alone, and without proof of tangible consequences like price erosion, suffices to show irreparable harm.   *See id.*   If anything, *Endo Par* reinforces what is lacking in Masimo's application.   Where the movant there carried its burden to demonstrate irreparable harm with credible evidence of price erosion stemming from the FDA's actions, *id.* at 8 (crediting movant's "sworn assertions that the effects of even just six-weeks of price erosion

---

[11]   Additionally, the fact that the scope of the exclusionary right is controlled by Federal Circuit caselaw provides added justification for dismissing this civil action.   The dispute is channeled to the Commission and to the Federal Circuit on review therefrom.

will be permanent"), here Masimo has no evidence at all.  *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1 (D.D.C. 2008), and *Apotex, Inc. v. FDA*, 2006 WL 1030151 (D.D.C. Apr. 19, 2006), are much the same.   Each dealt with statutorily mandated periods of marketing exclusivity, the loss of which this Court acknowledged could be unrecoverable.  *See Hi-Tech Pharmacal Co.*, 587 F. Supp. 2d at 11-12; *Apotex*, 2006 WL 1030151 at 17.   Neither, however, held that the loss of exclusivity alone, without concrete evidence of harmful consequences stemming from that loss, sufficed to demonstrate irreparable harm sufficient to receive injunctive relief.  *See Hi-Tech Pharmacal Co.*, 587 F. Supp. 2d at 11-13 (denying injunctive relief despite finding that lost marketing exclusivity could not be recaptured); *Apotex*, 2006 WL 1030151 at 18 (denying injunctive relief based on *intervenor-defendants*' potential loss of marketing exclusivity and resultant "considerable economic injury").   Masimo's failure to tie the loss of its "statutory right to exclusion" to any actual harm supported by concrete evidence is dispositive.

Masimo offers no support for a proposition that the "Right to Exclusion" should follow a different rule in connection with section 337 as opposed the Federal Circuit's review of district courts discussed earlier.   Masimo cites *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331 (Fed. Cir. 2010), in support of its right to exclude.   Masimo Mem. in Support of TRO at 31.  *Spansion* holds that *the Commission* in determining whether to issue relief does not apply the injunctive factors of *eBay*, *Spansion*, 629 F.3d at 1359-60, but does not even purport to upset the requirement that federal courts apply the injunction factors as in *eBay* before granting equitable relief.[12]

---

[12] Given that the Commission's review is directly by the Federal Circuit, preliminary injunctions do not arise from Commission proceedings.   But the Federal Circuit applies the same equitable four-factor test to determine whether to stay the enforcement of orders pending appeal.  *See, e.g.*, *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed.

Masimo's second argument—that it has suffered unrecoverable economic injuries because CBP is immune from suit—fares no better than its first.   Here, Masimo argues that it cannot recover its economic damages from CBP due to sovereign immunity yet fails to provide actual evidence that it will suffer an economic injury in the first place.   Masimo Br. at 32.   By contrast, in the cases on which Masimo relies, the movant identified concrete economic losses *and* demonstrated that they were unrecoverable due to the operation of sovereign immunity.   *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 192 (D.D.C. 2021) (crediting declaration establishing loss of key customers and revenue losses exceeding $10 million dollars); *Brendsel v. Office of Fed. Housing Enters. Oversight*, 339 F. Supp. 2d 52, 66 (D.D.C. 2004) (finding irreparable harm where movant was deprived of stock options that would expire before resolution of administrative hearing); *Regeneron Pharms., Inc. v. United States Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 39 (S.D.N.Y. 2020) (finding irreparable harm based on lost revenue resulting from HHS rule).   As this Court has already explained, "it proves too much to suggest that 'irreparable' injury exists, as a matter of course, whenever a regulated party seeks preliminarily to enjoin the implementation of a new regulatory burden."   *Cal. Ass'n of Priv. Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018).   "To permit the Court to evaluate the nature and extent of the alleged irreparable injury, the movant bears the burden of presenting specific details regarding the extent to which its business will suffer."   *Id.* (cleaned

---

Cir. 1990); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009).   In applying this test to the Commission, we are unaware of any instance in which the Federal Circuit has presumed a "right to exclusion," including in the stay at issue in related proceedings.   *Apple Inc. v. Int'l Trade Comm'n*, No. 2024-1285, Order (Fed. Cir. Jan. 17, 2024) (Dkt. 33) (denying motion to stay). Rather, and consistent with *eBay*, the Federal Circuit engages in case-by-case determinations without the improper presumption that Masimo seeks to apply.

up).   Put plainly:   the impossibility of recovering economic damages from CBP is irrelevant when Masimo has failed to establish its economic damage in the first place.[13]

Masimo's third argument—that it has suffered a loss of negotiating position—is more of the same.   It urges acceptance of a presumption that Masimo is harmed without actual evidence in support thereof.   Every patentee can assert that its negotiating position is harmed by allegedly ineffective enforcement of patent rights, but, as discussed earlier with "loss of statutory right to exclude," no such presumption is permissible under governing law.   The Supreme Court's decision in *eBay* was itself about a patentee who "sought to license its patent to eBay" and others.   *eBay*, 547 U.S. at 390.   Yet, rather than adopt a "categorical rule" concerning injunctions by those who seek to license rather than practice their patents, the Supreme Court required that the four-factor test for injunctions be applied on a case-by-case basis.   *Id.* at 393-94 (explaining the district court's and Federal Circuit's categorical tests and rejecting both of them).

Masimo's argument here, as with the "loss of statutory right to exclude" is vague attorney argument devoid of evidentiary substantiation.   For example, Masimo alleges unspecified injuries to unspecified "contractual relationships" and its ability to negotiate with "others."   Masimo Br. at 32.   Masimo's failure to even allege, let alone show, how its contractual relationships and ability to negotiate have been injured is at odds with this jurisdiction's requirement that an irreparable injury must be "certain and great."   *Wis. Gas Co,*, 758 F.2d at

---

[13] Masimo's variation on its sovereign immunity argument—that it cannot recover damages from Apple—makes little sense.   Masimo contends that it cannot recover damages from Apple because CBP determined that Apple's redesigned watches do not infringe.   But Masimo fails to explain how that fact precludes it from seeking monetary relief in district court for patent infringement.   In any event, this variation fails for the same reason the primary argument fails:   Masimo's focus is wholly on its perceived inability to recover from Apple to the exclusion of demonstrating that it is likely to incur an economic loss in the first place.

674.   Moreover, the cases Masimo cites drive home the importance establishing, with evidence, the injury it has or likely will incur.   For example, in *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 49 (D.D.C. 2013), this Court found irreparable harm to Fox's negotiating position both with advertisers and with content retransmitters due to FilmOn X's unauthorized internet streaming of copyrighted video programming.   Unlike Masimo's vague allusion to unspecified contractual rights and negotiations, Fox anchored its argument in damages to specific negotiations with specific parties, explained exactly how FilmOn X's conduct effected those negotiations, and supported its allegations with actual evidence.   *See id.* Masimo's theory of irreparable harm is not comparable to Fox's.[14]

Masimo's irreparable harm arguments conclude by stating that "Masimo by definition suffers irreparable harm from CBP's violation of its rights."   Masimo Br. at 33.   That statement, and its implication that Masimo can establish irreparable harm through unsupported allegations of possible harm, has no support in the law.   Masimo has not met "high standard for irreparable injury" that controls in this jurisdiction.   *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

### 3.    Masimo Has Failed to Show Likelihood of Success

As this dispute can and should return to the Commission, the Commission does not wish to prejudge the issues that may be raised before it.   For purposes of this factor, the lack of this

---

[14]   The other cases Masimo relies on are similarly specific about the particular negotiation position being harmed and the manner of harm.   *See N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 2025 WL 1423610, at *14 (D.D.C. May 16, 2025) (labor organization's negotiations with specific contractors damaged by elimination of Public Labor Agreement mandate); *Fox Television Stations, Inc. v. BarryDriller Content Sys.*, PLC, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) (damage to Fox's negotiating position in retransmission consent agreements and advertising agreements); *Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011) (damage to copyright holder's negotiation of performance rights); *Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 273 (D.D.C. 2015) (damage in the form of sales lost to Airbus).

Court's jurisdiction should be dispositive.   There is already a decision of this Court, in *Wirtgen*, that finds no such jurisdiction, and Masimo is not likely to demonstrate the existence of jurisdiction, and thereby a likelihood of prevailing in this civil action.

As to the merits, which are best reserved for the Federal Defendants, the Commission has already explained above, in Part II.A. of this Brief, *supra,* that it does not agree with Masimo's characterizations of the Customs proceedings, and further disagrees that the solution for Masimo is to seek relief in this Court.

### 4.    The Balance of Harms and Public Interest Do Not Support Masimo

The two remaining factors for a preliminary injunction—balance of harms and the public interest—merge when the United States is the opposing party.   *Nken v. Holder,* 556 U.S. 418, 435 (2009).   Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction."   *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982).

Masimo attempts to support these factors based on its so-called "statutory right to exclusion."   Masimo Mem. in Support of TRO at 34.   As discussed extensively above, such a presumption of harm is contrary to the case-by-case equitable decision-making required here. More than that, the Commission disagrees that the August 2025 Customs decision "irremediably negated" that alleged statutory right to exclude.   *Id.* at 34.   "Irremediably" means "in a way that is impossible to correct or cure."   Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/irremediably (last visited Aug. 27, 2025). But there is nothing irremediable about the Customs decision here, which the Commission indisputably has the authority to remediate.   Masimo's other assertion, for example, about "countless market participants who count on" CBP decisions, and "the United States" losing its

"role as the leading hub of innovation and investment" is uncreditable hyperbole.    Masimo Mem. in Support of TRO at 34.

The Commission has a significant interest in the proper interpretation of its orders.    The Commission also has a significant interest in ensuring the exhaustion of administrative remedies and preserving the fairness and effectiveness of proceedings that can and should return to the Commission.    Those interests are undermined when a party such as Masimo seeks relief from a district court, instead of directly from the Commission. The harm to the Commission if this Court were to grant the requested injunction would be substantial and would threaten to upend the enforcement of orders from other Commission investigations, threatening the Commission's and the Federal Circuit's ability to adjudicate these disputes.

Furthermore, to the extent that Masimo is harmed by the remedial orders, Apple, which is not a party to these proceedings, would appear to be commensurately harmed by an injunction compelling the exclusion of Apple's watches.

## III.    <u>CONCLUSION</u>

The Commission respectfully requests that the Court deny Masimo's motion for a temporary restraining order and preliminary injunction and instead grant the Commission's motion to dismiss for lack of jurisdiction.

Dated:   August 27, 2025                    Respectfully submitted,

                                            Sidney A. Rosenzweig
                                            D.C. Bar No. 460778

                                            By: _/s/ Sidney A. Rosenzweig_____
                                            MARGARET D. MACDONALD
                                            General Counsel
                                            BENJAMIN S. RICHARDS
                                            Acting Assistant General Counsel
                                            SIDNEY A. ROSENZWEIG
                                            Attorney Advisor
                                            U.S. International Trade Commission
                                            500 E. Street SW
                                            Washington, D.C. 20436
                                            Email: sidney.rosenzweig@usitc.gov
                                            Phone: (202) 708-2532

                                            *Counsel for the United States*
                                            *International Trade Commission*

## II.  CERTIFICATE OF SERVICE

I certify that on August 27, 2025, I caused a copy of the foregoing document to be served via the Court's CM/ECF system upon counsel of record.

*/s/ Sidney A. Rosenzweig*
Sidney A. Rosenzweig