## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MASIMO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION *et al.*<br>Defendants,<br><br>UNITED STATES INTERNATIONAL TRADE COMMISSION,<br><br>Intervenor-Defendant. | Civil Action No. 1:25-cv-02749-ACR |

**REPLY IN SUPPORT OF THE UNITED STATES INTERNATIONAL TRADE COMMISSION'S MOTION TO DISMISS**

Intervenor-Defendant, the United States International Trade Commission ("Commission" or "ITC"), respectfully submits this reply in support of its motion to dismiss.

I. **ARGUMENT**

Masimo's opposition (Masimo Opp'n) (Dkt. 38) is predicated on its misapprehension of controlling authority and fails to rebut the Commission's showing that this Court lacks jurisdiction over this civil action.

    A. **This Court Lacks Jurisdiction Under the *Thunder Basin* Framework**

*Thunder Basin* and its progeny provide a two-step test: "Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is 'fairly discernable in the statutory scheme' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 2012 (1994) (modification in original); *accord, e.g., Am. Fed. of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019) (*"AFL-CIO"*). Both steps warrant dismissal.

        1. **Step 1: Congress's Intent Is Fairly Discernable**

Masimo asserts "that there is no special statutory scheme funneling Masimo's claim to the ITC under the first step of the *Thunder Basin* analysis." Masimo Opp'n at 12. The reasons that Masimo provides are unpersuasive. *See id.* at 11-17.

Section 337 is a specialized scheme, that, *inter alia*, provides that the Commission is empowered to confirm, modify, or revoke CBP's determinations as to whether articles should be excluded from the United States or not. Masimo recognized as much in its complaint. Compl. ¶ 82 ("[D]eterminations of the Commission resulting from the underlying investigation or *a related proceeding under 19 C.F.R. Part 210* are binding authority on CBP and, in the case of

1

conflict, will by operation of law modify or revoke any contrary CBP ruling or decision pertaining to Section 337 exclusion orders.") (emphasis added; quotation omitted).   Put plainly: all parties—Masimo, CBP, and the Commission—recognize that the Commission has the authority to review CBP's interpretations of the Commission's exclusion orders.

Congress specifically contemplated the Commission's enforcement of its orders pursuant to 19 U.S.C. § 1337(f)(2), which provides for civil penalties for violation of the Commission's cease and desist orders (such as the one that issued here), when Customs by accident or based on a noninfringement determination allows the entry of articles.  *See, e.g.*, *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1358 (Fed. Cir. 2019) ("Diebold has had nearly two years since Customs' ruling that Hyosung's [redesigned] products do not infringe to investigate whether Hyosung violated the ITC orders and to bring an enforcement proceeding at the ITC, which it has failed to do."); *see generally* 19 C.F.R. § 210.75 (Commission rule promulgated to exercise the Commission's authority over enforcement proceedings).

Congress also specifically contemplated the Commission's modification of its orders to resolve, among other things, post-issuance disputes about the proper scope of the orders.  *See* 19 U.S.C. § 1337(k); *see also* 19 C.F.R. 210.76.   Indeed, on appeal from a Commission modification proceeding, the Federal Circuit recognized that the appropriate recourse for the argument that a CBP noninfringement determination amounts to inadequate enforcement of a Commission exclusion order is for the Commission to modify its orders if warranted and to provide further guidance to Customs.  *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 386 F.3d 1095, 1107 (Fed. Cir. 2004).   Reinforcing that point, the Federal Circuit has also referred the question of whether a redesigned product infringes back to the Commission for resolution via a modification proceeding.  *Cisco Sys., Inc. v. Int'l Trade Comm'n*, No. 17-2289, Order at 3 (Fed.

Cir. Sept. 22, 2017) (ECF No. 57). Masimo's assertion that it is not "clear that a modification proceeding would be available here" is incorrect. Masimo Opp'n at 20. A Commission modification procedure is available here, as it was in *Cisco*, to conclusively resolve whether Apple's redesigned watches are subject to the Commission exclusion order. *See* Notice, 82 Fed. Reg. 50678 (Nov. 1, 2017) (instituting a modification proceeding "to determine whether Arista's redesigned switches infringe the patent claims that are the subject of the LEO and CDO issued in this investigation");[1] *see also, e.g.*, *Certain Marine Sonar Imaging Devices, Including Downscan & Sidescan Devices, Prods. Containing the Same, & Components Thereof*, Inv. No. 337-TA-921, Comm'n Op. Modifying a Limited Exclusion Order, 2016 WL 11603660, *4-7 (Aug. 29, 2016), *dismissed as moot*, Garmin Int'l, Inc. v. Int'l Trade Comm'n, 691 F. App'x 624 (Fed. Cir. 2017) (modifying exclusion order to clarify that it includes certain components).

It does not matter under *Thunder Basin* that the Commission's findings will go to whether the articles infringe (or not) as opposed to this Court's review for whether the Customs determination is, *inter alia*, arbitrary and capricious under 5 U.S.C. § 706. *See* Masimo Opp'n at 10-11. The inquiry and end-result—exclusion or non-exclusion of the subject articles—is the same.[2] The Administrative Procedure Act cannot be used to circumvent a special statutory scheme. *AFL-CIO* made this point clear in its discussion of *Air Force*, where the unions

---

[1] The parties settled their dispute during the pendency of the modification proceeding.

[2] The Commission notes that its standard of review is more favorable to Masimo than the arbitrary and capricious test in this Court in view of the Commission's longstanding practice that the Commission will decide the issues de novo. *E.g.*, *Certain Agricultural Tractors Under 50 Power Take-Off Horsepower*, Inv. No. 337-TA-380 (Enforcement Proceeding), Comm'n Op., 1999 WL 957711, at *17 (July 28, 1999) ("Nor do we believe, as a matter of policy, that it is appropriate for the Commission to, in effect, cede its authority to interpret cease and desist orders to Customs."). Thus, the fact that a Customs decision is not, for example, arbitrary and capricious, will defeat Masimo's action under the APA here, but is not enough to defeat its grievance at the Commission.

3

brought claims under the Administrative Procedure Act that were foreclosed by the *Thunder Basin* doctrine. *AFL-CIO*, 929 F.3d at 756 (discussing *Air Force*, 716 F.3d at 636, 638). Likewise, *in Arch Coal, Inc. v. Acosta,* 888 F.3d 493 (D.C. Cir. 2018), the court expressly found that Administrative Procedure Act claims were unavailable in view of a special statutory scheme. *Id.* at 496.

It is also immaterial that when the Commission considers the issue—whether the subject redesigned articles should be excluded—that the Commission does so in a different framework with different remedies than what might be available in this Court under the APA. Masimo Opp'n at 10-11. It is settled in this circuit that challenges must be made through a specialized administrative "scheme even if that made it *impossible* to obtain particular forms of review or relief." *AFL-CIO*, 929 F.3d at 756 (emphasis in original). Again discussing *Air Force*, AFL-CIO recognizes:

> [E]ven though the scheme might not afford the unions the same relief they sought in district court, the Statute still precluded the district court from exercising jurisdiction: "[I]t is the comprehensiveness of the statutory scheme involved, not the adequacy of the specific remedies thereunder, that counsels against judicial abstention."

*AFL-CIO*, 929 F.3d at 757 (quoting *Air Force,* 716 F.3d at 638). Indeed, even in *Thunder Basin* itself, pre-enforcement review was available in the district court, but not as part of the administrative scheme. 510 U.S. at 216; *see also AFL-CIO*, 929 F.3d at 756 (discussing *Thunder Basin*).

Masimo's constitutional claim under the Due Process Clause (Count 3 of the Complaint) fares no better than its Administrative Procedure Act claims. Masimo Opp'n at 16. The Supreme Court in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), distinguished the structural constitutional claims at issue there with the constitutional claims at issue in *Thunder Basin* and

4

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012): "The challenges here . . . are not to any specific substantive decision—say to fining a company (*Thunder Basin*) or firing an employee (*Elgin*). Nor are they to the commonplace procedures agencies use to make such a decision." *Axon*, 598 U.S. at 189. Yet Masimo's complaint is entirely about a substantive determination and the procedures used to make that decision. Masimo urges this Court to misread *Axon* to equate the Due Process claim here with the claims at issue in *Axon*. Masimo Opp'n at 15 n.6, 16. No court, much less this Circuit, reads *Axon* so broadly. *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) ("*Axon* recognized a narrow exception to Congress's prescribed path for judicial review of agency action for facial challenges to the constitutional structure of administrative agencies' ability to operate. . . . Such extraordinary claims . . . charge that an agency is wielding unconstitutional authority in all or a broad swath of its work.") (quotation omitted); *see Axon*, 598 U.S. at 192 ("Nothing we say today portends newfound enthusiasm for interlocutory review.").

It is also irrelevant that one agency's decision (Customs') is to be adjudicated by another agency (the Commission). Masimo Opp'n at 10, 14. This was true in *Thunder Basin* itself, where the Mine Safety and Health Administration (a part of the Department of Labor) developed and enforced safety regulations in mines, whereas the Federal Mine Safety and Health Review Commission (an independent agency) adjudicated disputes. *Thunder Basin*, 510 U.S. at 207-09. Likewise, in *AFL-CIO*, the Federal Labor Relations Authority oversaw the propriety of certain executive orders. *AFL-CIO*, 929 F.3d at 753. And it was true in *Wirtgen* as well, where Judge Cooper found that section 337 is a specialized administrative scheme by which

5

Customs determinations arising from the Commission's orders must go back through the Commission. *Wirtgen*, 443 F. Supp. 3d at 210-14.

Masimo does not argue that *Wirtgen* was wrongly decided. Masimo Opp'n at 11-17. Rather, Masimo argues that *Wirtgen* should be distinguished because Customs sided with the importer here, as opposed to with the patentee in *Wirtgen*, and, as such, the importer in *Wirtgen* could obtain review through the Court of International Trade. But that is a misreading of *Wirtgen*. *Wirtgen* concluded that two independent avenues of review were available to the importer—the first through the Commission and the Federal Circuit and the second through the Court of International Trade. *Wirtgen*, 443 F. Supp. 3d at 216, 219. Masimo's suggestion that the availability of review by the Court of International Trade was the critical factor in *Wirtgen* renders Judge Cooper's discussion of the Commission/Federal Circuit roadway meaningless. *Id.* at 210-14.

The fact that trade-court review is unavailable to Masimo does not open the door for this Court to exercise general Administrative Procedure Act jurisdiction. And that is true whether this Court sits to interpret the reach of the Commission's orders issued under section 337 or to consider what Customs believes is the appropriate limit for its enforcement versus the Commission's. *Cf.* Masimo Opp'n at 7 (seeking to "require CBP to apply indirect infringement when enforcing exclusion orders"). These matters are the province of the Commission—which can instruct Customs how to enforce not only the orders in this case but also the Commission's orders more generally—and the further province of the Federal Circuit, sitting in review of the Commission's determinations.

Likewise, the specific reasoning of Customs in *Wirtgen* cannot be fairly distinguished from the reasoning here. Masimo Opp'n at 13-14. As Judge Cooper recognized, at "least to

the extent that *Wirtgen is effectively challenging whether the exclusion order encompasses the redesigned articles*," those "claims belong with the ITC and the Federal Circuit." *Wirtgen*, 443 F. Supp. 3d at 212-13 (emphasis added). So too here. The entirety of the subject Customs determinations dealt with that same issue—whether the exclusion order encompasses the redesigned Apple products—and it is that same issue that will be addressed in any forthcoming ITC proceeding.

### 2. Step 2: Masimo's Claims Are of the Type Congress Intended to be Reviewed Within the Section 337 Scheme

The second *Thunder Basin* step is also met here. "A claim will be found to fall outside the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions, *and* (3) the claims are beyond the expertise of the agency." *Arch Coal*, 888 F.3d at 500 (emphasis added).

All meaningful judicial review is not foreclosed: As to foreclosure of meaningful judicial review, Masimo relies on framing its claims under the APA and Constitution as opposed to section 337. Masimo Opp'n at 18. We have addressed that extensively above. *See supra* pp. 1-3. This factor is about *judicial* review, however, and Masimo never once mentions the Federal Circuit—whose review of the Commission is indisputable, 19 U.S.C. § 1337(c), 28 U.S.C. § 1295(a)(6)—or explains how the Federal Circuit's judicial review would be inadequate. Masimo Opp. at 18-22. Accordingly, Masimo's argument fails. *See generally, e.g.*, *AFL-CIO*, 929 F.3d at 756 (explaining of *Thunder Basin* that the review there "was held meaningful even though there was no way for the company to assert its pre-enforcement challenge").

The claim is not wholly collateral to the statutory review provision: Masimo's claim is not wholly collateral to the statutory review provision, *see* Masimo Opp'n at 22-23, which

7

governs whether the redesign infringes and the relationship between CBP and the ITC in enforcing orders as to redesigns. *E.g.*, Compl. ¶ 73 (Count 1) (criticizing CBP's "self-imposed rule against considering indirect infringement theories"); *id.* ¶ 74 (Count 1) (asserting that CBP's acts violated Masimo's "patent rights, which were specifically protected by the ITC's LEO"); *id.* ¶ 83 (Count 2) ("the ITC has exclusive authority to determine whether imported articles infringe valid and enforceable U.S. patents"); *id.* ¶ 85 (Count 2) ("CBP has exceeded its statutory authority and impermissibly encroached on the ITC's exclusive jurisdiction to determine patent infringement"); *id.* ¶ 92 (Count 3) ("The ITC's issuance of an LEO in Plaintiff's favor following a full adjudicatory proceeding created a legitimate expectation of enforcement that is protected by due process."). Because each of the counts is tethered, at least in part, to the Commission's authority, Customs' authority, and the scope of the Commission's orders, this action cannot be wholly collateral to the section 337 scheme. That is readily distinguished from the claims in *Axon*, which had "nothing to do with the enforcement-related matters the Commissions regularly adjudicate—and nothing to do with whose they would adjudicate in assessing the charges against Axon and Cochran." *Axon*, 598 U.S. at 193 (quotation and modification omitted).

The claims are not beyond the expertise of the agency: The first two counts of the complaint under the APA hew closely to the Commission's responsibility to enforce its orders, and to instruct Customs how to enforce the Commission's orders, subject to the specific procedural requirements set forth by statute and in the Commission's rules. They are well within the Commission's expertise. As to Count 3, Due Process, *see* Masimo Opp'n at 23, the Commission routinely decides due process issues and ensures that its own proceedings comport with due process requirements. *See, e.g.*, *Certain Bio-Layer Interferometers and Components Thereof*, Inv. No. 337-TA-1344, Comm'n Op., 2024 WL 4145092, at *11 (July 16, 2024). But

even that is more than what the cases require. The Commission's proceedings, comported in an inter partes process, would "obviate the need to address the constitutional questions," which is enough under *Elgin*. *Elgin*, 567 U.S. at 22-23; *see also Axon*, 598 U.S. at 195.

Because the foregoing factors favor channeling the present dispute through the specialized scheme of 19 U.S.C. § 1337, this Court lacks jurisdiction to proceed with this action.

### B.   Primary Jurisdiction Warrants Referral to the Commission

Masimo's arguments concerning primary jurisdiction are succinct and largely echo its jurisdictional arguments to which we respond above. Masimo Opp'n at 24-26. In view of the developments at the hearing, in which Masimo accepted the Commission's invitation to proceed at the Commission, the Commission rests on its opening brief as to primary jurisdiction.

## II.   CONCLUSION

The Commission respectfully requests that the Court grant the Commission's motion to dismiss for lack of jurisdiction.

Dated:   September 4, 2025

Respectfully submitted,

Sidney A. Rosenzweig
D.C. Bar No. 460778

By: */s/* Sidney A. Rosenzweig
MARGARET D. MACDONALD
General Counsel
BENJAMIN S. RICHARDS
Acting Assistant General Counsel
SIDNEY A. ROSENZWEIG
Attorney Advisor
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436
Email: sidney.rosenzweig@usitc.gov
Phone: (202) 708-2532
*Counsel for the United States International
   Trade Commission*

## CERTIFICATE OF SERVICE

I certify that on September 4, 2025, I caused a copy of the foregoing document to be served via the Court's CM/ECF system upon counsel of record.

*/s/ Sidney A. Rosenzweig*
Sidney A. Rosenzweig
