UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| MASIMO CORPORATION,<br>            Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND<br>BORDER PROTECTION; *et al*.<br>            Defendants. | Case No.: 1:25-cv-2749 |

**PLAINTIFF'S NOTICE OF DOCUMENT PRODUCTION**

Plaintiff respectfully notifies the Court of a production made on September 8, containing communications that directly contradict representations made to the Court and confirm its jurisdiction. While Plaintiff welcomes the Commission's responsiveness as expressed in the September 12 joint status report, Plaintiff's concerns about CBP's proceedings have intensified. Recently produced CBP *ex parte* communications with Apple demonstrate that CBP and Apple understood CBP's prior ruling as Masimo did: CBP's January 2025 interpretation of the Limited Exclusion Order ("LEO") required exclusion of Apple's shipment of five Redesign 2 Watches.

On September 8, 2025, the Government finally (after serial requests by Plaintiff and repeat confirmations by Apple that it was not objecting) produced to Masimo the series of email exchanges between Apple's Counsel and Mr. Terrill of CBP between March 6, 2025 and July 11, 2025. *See* Ex. 1, 2. Those emails support Plaintiff's APA challenge and render suspect Defendants' representations to the Court by showing that, between January and August 2025, both CBP and Apple understood the five Redesign 2 watches were subject to exclusion under the LEO as interpreted by CBP's January 2025 Ruling. *See, e.g.*, Ex. 1.

Specifically, the emails show that Apple and CBP made a considered judgment *not* to use the "standard certification language" to accompany Apple's shipment, which would have required

1

Apple to certify that it did not believe the articles it sought to import were excluded from entry under the LEO and to supply a reason why. *See* Ex. 1 at 3. Instead, CBP coordinated with Apple to engineer a challenge by Apple to CBP's January 2025 Ruling—with Apple shipping in products that both CBP and Apple understood to be prohibited by that ruling while eschewing a 19 C.F.R. § 177.12 reconsideration proceeding. *See* Ex. 1 at 2.

The evidence makes clear that Apple understood the shipment should be excluded:

(1) Apple's counsel agreed that it could not sign the standard certification and that supplementary language was required. *See* Ex. 1.

(2) Apple's counsel explicitly "confirm[ed] Apple's willingness to voluntarily export the shipment of Apple Watch products that had previously been discussed with eCEE and that entered before execution of the certification." Ex. 1 at 1.

(3) Apple's counsel expressly communicated to Mr. Terrill that Apple was signing the certification "for the import of devices *implementing the redesign from the [January 2025] Ruling* solely for purposes of securing CIT jurisdiction." Ex. 3 at 4 (emphasis added).

(4) Apple's final certification was unequivocal: "***In [the January 2025] ruling, the EOE Branch found that the Redesign 2 Watches are subject to the LEO.*** Apple respectfully disagrees with [the January 2025 Ruling] and is initiating the shipment referenced above solely for purposes of commencing a civil action at the U.S. Court of International Trade and not to enter the devices into U.S. commerce. ***Apple assumes, expects, and understands that the shipment will be denied entry into the United States pursuant to the LEO.***" Ex. 3-1 (emphasis added).

(5) On April 17, Apple's counsel emailed Mr. Terrill stating "Apple will be reaching out shortly to eCEE to schedule a call to discuss the forthcoming shipment *and ensure the appropriate personnel can be available to stop entry*." Ex. 3 at 1 (emphasis added).

It is equally clear that CBP shared this understanding, and, in fact, scripted Apple's language memorializing it. *See, e.g.*, Ex. 5. Specifically, Mr. Terrill himself participated in redlining the draft of the certification and contributing to the language Apple ultimately signed—demonstrating that he too had concluded that Apple's shipment of five watches was subject to the LEO under the January 2025 Ruling. *Id.*

In fact, Mr. Terrill expressly "confirm[ed]" mutual understanding following a conversation with Apple's counsel. Ex. 1 at 2–3. When doing so, Mr. Terrill stated that, "for a single shipment with a limited number of articles, Apple will enter for consumption certain Apple Watch products *that implement the redesign **found to be subject to the exclusion order in the [January 2025] Ruling***, such that *the Apple Watch products* from this single shipment *will be materially identical* to those in that ruling." Ex. 1 at 2 (emphasis added).

Thus, it is unclear how Mr. Terrill and the Defendants could have represented to the Court, as they did, that the January 25 ruling did not address exclusion of the redesigned watches alone:

- Mr. Terrill represented to the Court that the August 2025 ruling was "addressing an issue that wasn't presented in the January 2025 ruling." Tr. 66:15-68:2. In contrast, his March 2025 email exchanges demonstrate that he understood the January 2025 Ruling excluded importation of the redesigned watches alone.

- Mr. Terrill also represented that he had been communicating concerning watches Apple was "looking to import." Tr. 96:4-6. In contrast, the emails reflect a shared understanding that the watches could *not* be imported (CBP personnel needed to "be available to stop entry," as acknowledged by Apple), and that Apple was executing the certification "solely for purposes of securing CIT jurisdiction." Ex. 3 at 1, 4.

- Likewise, the Government represented in briefing that "Customs would continue to permit entry of Apple's redesigned smartwatches even if the August 2025 ruling were set aside because of the admissibility determination rendered in the January 2025 ruling." ECF 35-1 at 28. In contrast, CBP's actual position before August 2025 had recognized that the watches Apple proposed to ship would "implement the redesign found to be subject to the exclusion order in the **[January 2025]** Ruling." Ex. 1 at 2.

- Also, the Government responded to the Court's questioning by claiming that the January 2025 ruling "does not say" to Apple that "you can't bring in the watches." Tr. at 22:7-9. Yet that is, in fact, precisely what the January 2025 ruling told Apple according to CBP itself. Ex. 1 at 2.

In sum, the available record shows CBP defying its own rule, 19 C.F.R. § 177.12, by reconsidering its January 2025 Ruling *ex parte*, reversing its prior decision *sub silentio*, and violating the APA and due process. If the Court wants further assurance of its jurisdiction and a more complete record to adjudicate the merits, expedited discovery may assist. *See* Tr. at 131-32.

3

| | |
|---|---|
| Dated: September 12, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

    /s/ *Derek L. Shaffer*
Derek L. Shaffer (Bar No. 478775)
1300 I Street NW, Suite 900
Washington, DC 20005
Tel.: (202) 538-8000
Fax: (202) 538-8100
derekshaffer@quinnemanuel.com

Michael E. Swartz (*pro hac vice*)
Matthew A. Traupman (*pro hac vice*)
Samuel P. Nitze (*pro hac vice*)
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000
Fax: (212) 849-7100
michaelswartz@quinnemanuel.com
matthewtraupman@quinnemanuel.com
samuelnitze@quinnemanuel.com

Steven C. Cherny (*pro hac vice*)
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
stevencherny@quinnemanuel.com

*Counsel to Masimo Corporation*

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 12th day of September, 2025, I will cause to be served a true and correct copy of this document on all parties of record via CM/ECF.

Dated: September 12, 2025

*/s/ Derek L. Shaffer*
Derek L. Shaffer (Bar No. 478775)

**Exhibit List**

| No. | Description |
|---|---|
| 1 | Produced Email Communication 01 |
| 1-1 | Attachment to Produced Email Communication 01 |
| 2 | Produced Email Communication 10 |
| 2-1 | Attachment to Produced Email Communication 10 |
| 3 | Produced Email Communication 06 |
| 3-1 | Attachment to Produced Email Communication 06 |
| 4 | Produced Email Communication 05 |
| 4-1 | First Attachment to Produced Email Communication 05 |
| 4-2 | Second Attachment to Produced Email Communication 05 |
| 5 | Produced Email Communication 08 |
| 5-1 | Attachment to Produced Email Communication 08 |