# EXHIBIT 1

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of**<br>**CERTAIN LIGHT-BASED PHYSIOLOGICAL**<br>**MEASUREMENT DEVICES AND**<br>**COMPONENTS THEREOF** | Inv. No. 337-TA-1276 |

## RESPONDENT APPLE INC.'S RESPONSE TO MASIMO'S REQUEST FOR CLARIFICATION, OR IN THE ALTERNATIVE, PETITION FOR MODIFICATION AND REQUEST FOR EXPEDITED TREATMENT

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    No "Clarification" Of The 1276 Remedial Orders Is Warranted ..........................3

III.   Masimo's Request To Expand The Scope Of The Underlying Investigation
       Through "Modification" Should Be Denied ...........................................................4

       A.    Masimo's Redesign 2 Watch In Combination With The iPhone Theory
             Would Fail On The Merits ...........................................................................5

       B.    The Commission Lacks Jurisdiction To "Modify" The Remedial Orders In
             The Manner Masimo Requests .....................................................................9

             1.    The Federal Circuit Presently Has Jurisdiction Over Issues
                   Implicated In This Proceeding ..........................................................9

             2.    Section 337(k) Does Not Authorize The Proposed Modification
                   Proceeding..........................................................................................13

             3.    Modification Proceedings Cannot Expand The Scope of the Claims
                   Considered In The Underlying Investigation.....................................16

             4.    If the Commission Does Consider Masimo's New Infringement
                   Theory Based On A New Claim Construction, Apple Must Be
                   Permitted to Challenge Validity Under That Construction—And
                   The Statutory Public Interest Factors Must Be Applied To Any
                   Expansion Of The Exclusion Order......................................................19

IV.    No Good And Sufficient Reason Exists To Expedite These Proceedings........................23

V.     CONCLUSION.......................................................................................................25

## I.    INTRODUCTION

Through its parallel district court litigation and the present petition, Masimo seeks to pressure the Commission to exceed its statutory authority and prevent millions of Americans from accessing Apple's redesigned Blood Oxygen feature.  Masimo has no meaningful domestic industry product that would benefit from this exclusion—its asserted domestic industry product, the Masimo W1, has still not been sold in more than *de minimis* quantities even two years after the conclusion of the underlying Investigation, and Masimo no longer sells any version of the Masimo W1 to consumers.[1]  Whether the Commission properly applied the domestic industry requirement earlier in this investigation—including by permitting Masimo to rely on different, asymmetric "articles" for the technical and economic prongs of the domestic-industry analysis—is presently on appeal to the Federal Circuit.  Masimo's latest filings only reinforce that Masimo has been abusing the powers of the Commission by seeking to exclude important consumer products to "protect" a nonexistent domestic industry.

Indeed, Masimo's parallel complaint alleges that its "harm" from Apple's importation of the Redesign 2 Watch is "loss of negotiating position" with Apple—a far cry from what Section 337 was created to protect.  To enhance its "negotiating position," Masimo seeks to expand the scope of the exclusion order.  In particular, having earlier obtained an order barring Apple from offering Apple Watch products that can perform the Blood Oxygen measurements, i.e., the order on appeal to the Federal Circuit, Masimo now seeks a ruling barring Apple from importing redesigned Apple Watch products that could later be used with iPhones to provide a ***two-device*** version of the Blood Oxygen feature.  But those redesigned Watch products are outside the scope

---

[1] *See* Ex. 1 ("Please note that all Masimo consumer products have been discontinued. These include: … Masimo W1® Sport Watch").

of the 1276 remedial orders because they are not wearable devices that include "processors configured to" determine blood oxygen measurements.  Masimo's effort suffers from multiple substantive and procedural defects.

To begin, Masimo petitions for "clarification" of the Commission's remedial orders, but no "clarification" is needed in this case.  There is no dispute that the ***Redesign 2 Watch alone has no ability to measure blood oxygen*** and is thus outside the scope of the remedial orders.  Nor should the Commission utilize a "modification" proceeding to expand the scope of its remedial orders based on infringement theories and claim constructions never presented during the underlying Investigation.  Doing so would not only be inconsistent with Section 337, it would require addressing issues of claim construction presently within the jurisdiction of the Federal Circuit, not the Commission.

If the Commission does institute some form of proceeding to consider drastically expanding the scope of the investigation and remedial orders, it should wait until after the Federal Circuit has issued its mandate—which could moot this proceeding.  Moreover, in any further Commission proceeding, Apple must be allowed a full and fair opportunity to be heard, including through a full presentation of defenses and counterclaims, such as patent invalidity and ensnarement under any new claim construction.  Furthermore, the Commission would need to consider the statutory public-interest factors as applied to an expansion of the exclusion order to protect Masimo's nonexistent "domestic industry."  Failure to do so would violate Apple's due process rights and the Commission's statutory mandate to conduct a thorough investigation before issuing a newly-expanded exclusion order.

## II.    NO "CLARIFICATION" OF THE 1276 REMEDIAL ORDERS IS WARRANTED

Masimo's petition purports to request "clarification" of the Commission's existing remedial orders, but Masimo has not identified any ambiguity requiring clarification. *See* Pet. at 1-2, n.1. To the contrary, the Commission's orders unambiguously prohibit the importation of "wearable electronic devices ***with light-based pulse oximetry functionality and components thereof***" that infringe the claims at issue.[2]  *See Certain Light-Based Physiological Measurement Devices and Components Thereof*, 337-TA-1276, Limited Exclusion Order, DocID 807002 at 2 (Oct. 26, 2023).

The Redesign 2 Watch is plainly ***outside*** the scope of the Commission's remedial orders. As Masimo itself explained in its petition, "Customs [has] found that the redesigned watch, by itself, [does] not infringe Masimo's patents." Indeed, EOE Branch has now twice considered the Redesign 2 Watch, concluding in both instances that it does not infringe on its own. *See* CBP HQ Rulings H338254 at 35 (Jan. 7, 2025) (Pet. Ex. 1) ("EOE Branch finds that Masimo's theory of infringement for the Redesign 2 Watch, when considered alone for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the 1276 LEO."); CBP HQ Rulings H351038 at 15 (Aug. 1, 2025) (Pet. Ex. 2) ("Given the lack of a complete infringement contention, the EOE Branch found that Masimo's theory of infringement for the Redesign 2 Watch, when considered alone for purposes of claim 22 of the '502 patent, was 'not a basis to refuse the article's entry pursuant to the' limited exclusion order from the 1276 investigation.").

The central facts and reasoning underlying the EOE Branch's rulings are not seriously disputed. Apple disabled the software that calculates a user's blood oxygen saturation on the Redesign 2 Watch. Although Masimo argued to the EOE Branch that the Redesign 2 Watch would

---

[2] All emphasis is added unless otherwise stated.

be infringing *if* the preamble of claim 22 of the '502 patent was found not to be limiting, the Commission itself—at the EOE Branch's request—weighed in on that issue, clarifying that it had found the preamble to be limiting in the Final Determination. *See Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276, EDIS Doc. ID 833876, Response to Letter of Clarification (Public), at 3 (Oct. 2, 2024). No further clarification is needed.

To the extent Masimo seeks a ruling about whether the Redesign 2 Watch *when combined with an iPhone* is a "covered article," there is no need for "clarification" on that issue either, for several reasons. *First*, Masimo itself has already conceded that the combination was outside the scope of the underlying Investigation and outside the scope of the asserted claims. *See, e.g.*, Ex. 2 [Dec. 28, 2023 Oral Discussion Tr.] at 119:15-22 ("The system is not relevant here. The claims relate to the watch itself."). Masimo never accused an iPhone of direct infringement, nor did it argue that Apple induced infringement for any of the claims referenced in the instant petition. *See generally* Complainants' Initial Post Hr'g Br. (June 27, 2022). *Second,* Apple has not imported, and does not seek to import, the Redesign 2 Watch together with any iPhone (and Masimo does not allege that any violation of the remedial orders has taken place). *See, e.g.*, CBP HQ Rulings H351038 at 5. Rather, Apple Watch and iPhone products are packaged, shipped, and sold separately from one another. Thus, there is no need to "clarify" whether that combination is within the scope of the remedial orders. Accordingly, the Commission should deny Masimo's request for "clarification."

## III. MASIMO'S REQUEST TO EXPAND THE SCOPE OF THE UNDERLYING INVESTIGATION THROUGH "MODIFICATION" SHOULD BE DENIED

Masimo's request seeks in the alternative to expand the Commission's remedial orders through "modification" based on new infringement theories never before presented to the

Commission. Although those theories fail on the merits, the Commission should not consider them at all because it lacks jurisdiction to do so, both because the arguments implicate issues already on appeal to the Federal Circuit, and because nothing in Section 337 authorizes the Commission to expand its remedial orders through a modification proceeding.

### A. Masimo's Redesign 2 Watch In Combination With The iPhone Theory Would Fail On The Merits

Masimo argues in support of its request to expand the remedial orders that the Redesign 2 Watch in combination with the iPhone is "a user-worn device" that falls within the scope of the LEO. But this theory fails on the merits. The relevant preambles—which the Commission has confirmed and Masimo does not currently dispute *are limiting*—require "*a* user-worn device configured to non-invasively measure the oxygen saturation of a user" where "*the* user-worn device" further comprises the additional listed limitations, including one or more processors that determine blood oxygen saturation. *See, e.g.*, '648 patent, cls. 8, 12. This preamble language, when considered in the context of the full claims, requires that all claim limitations, including the calculating and measuring of blood oxygen, *must occur within a single device*. The Redesign 2 Watch is a separate device from an iPhone—and when a Watch is with an iPhone the two devices are still separate devices—and they are not a singular device as unambiguously required by the limiting preambles.

Notably, the preambles are *not* directed to systems, even though the patentee could have drafted them as such. The patentee demonstrated that it knew how to claim multi-device systems, but it declined to do so in the '502 and '648 patents. For instance, U.S. Patent No. 9,277,880, an earlier patent in the same family, covers "a signal processing system . . . the *system* comprising a noninvasive clip-type optical sensor . . . a monitor . . . and a cable connected to the monitor." The patentee's awareness of other possible claim formulations demonstrates the patentee intentionally

made the choice to claim "a" singular "device" in the adjudicated patent claims. The choice to claim a "device" instead of a "system" is meaningful. Because the patentee understood that there could be multi-device systems, it is not surprising that such systems would be described in the adjudicated patents' specifications, even if not covered by the claims. As always, it is the claims that define the bounds of the adjudicated patents. The Commission cannot now rewrite the claims to expand their scope.

This conclusion as to the scope of the adjudicated claims is confirmed by the preamble language. The Federal Circuit has explained that "a" is properly limited to "one" when the patentee "evince[s] a clear intent" to that effect. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008); *see also Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011). Here, the patents show such intent to limit "a" to a particular device because the claims are written to require "[a] user worn device" where "the user worn device compris[es]" the recited claim elements. The antecedent basis rule requires that there exists one "user-worn device" with all enumerated claim limitations. *See Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1317 (Fed. Cir. 2023) (when claim introduces element with indefinite article and then refers back to that element and further describes its functionality, ***single instance*** of element must possess all recited features). By writing the claims in this way, the patentee indicated that the enumerated claim elements must be part of "the" same "user-worn device," i.e., part of a single device. *See Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963, 974 (Fed. Cir. 2023) (recognizing subsequent references to "a computer" necessarily referred back to the same single computer).

As the Federal Circuit explained in *Traxcell Technologies, LLC v. Nokia Solutions & Networks Oy*, 15 F.4th 1136, 1143-44 (Fed. Cir. 2021), it would make "little sense—indeed, it would defy the concept of antecedent basis," for a claim to identify "a computer," identify the

functions performed by "*the* computer," and then allow those functions to be performed on a second computer. The same logic applies here. It would be nonsensical for the claims to identify as their scope "a device," require the limitations necessary for "the" claimed device, and then interpret the claim as covering systems where no single device contains all recited elements for "the device." *See Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016) (holding reference to "the processor," which referred back to "a processor" recited in preamble, required claimed user interface to work with same processor for all recited steps); *Salazar*, 64 F.4th at 1317 (holding that when claim limitations refer back to "said microprocessor," claims require "that at least one microprocessor be capable of performing each of the claimed functions"). To do so would be akin to finding a patent claim for "a hybrid vehicle" wherein "the hybrid vehicle" comprises "a gas-powered engine" and "an electric engine" infringed by a combination of two separate cars—one gas-powered and one electric.

This is especially true here where the key language occurs in limiting preambles that provide "essential structure" and "give[s] life, meaning, and vitality to the claims." *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1327 (Fed. Cir. 2019) (internal quotation omitted). In the adjudicated claims, the phrase "a user-worn device" occurs before the "comprising" that could allow for a "one or more" reading of the indefinite article. That is, here "a user-worn device" is not itself subject to the open-ended claiming implied by the "comprising." The Federal Circuit has found that structures initially identified in a preamble must carry out all subsequent claim limitations. *See Convolve*, 812 F.3d at 1321 (holding that claims covering "'a processor' in the preamble before recitation of 'comprising'" required same processor to perform all recited steps in claim body); *Finjan*, 84 F.4th at 975 (holding "plain language of the claims requires at least one of those computers to perform all the functions listed" when preamble recited "a computer to

perform the" claimed steps); *see also Equil IP Holdings LLC v. Akamai Techs., Inc*, 2024 WL 3273494, at *4-5 (D. Del. July 2, 2024) (finding "a host computer" recited in preamble "must perform all steps of the method" even without antecedent reference to "the computer" in claim body).

The dependent claims further confirm that "a user-worn device" in the adjudicated claims must be a single device. For example, claim 24 of the '502 patent requires "[t]he user-worn device of claim 19 further comprising: a network interface configured to wirelessly communicate at least the measurements of oxygen saturation to at least one of: a mobile phone or a computer network" along with other elements. The recitation of "a mobile phone" indicates that the "user-worn device of claim 19" is not itself (and does not include) "a mobile phone." Other claims also require a mobile phone independent from the "user-worn device." *See, e.g.*, '502 patent, cl. 28 (requiring "a user-worn device" with "a network interface configured to wirelessly communicate the oxygen saturation measurement to at least one of a mobile phone or an electronic network"); '648 patent, cl. 9 (requiring "a user-worn device" with "a network interface configured to wirelessly communicate the measurements of the physiological parameter to at least one of a mobile phone or a computer network").

Until presented with the Redesign 2 Watch, Masimo understood the adjudicated patent claims to require a single device that practices all recited limitations. As Masimo explained to the EOE Branch in connection with Apple's first Part 177 request, "when we're thinking about infringement, when we're evaluating Apple's arguments about changes, modifications that were made, ***we need to be looking at the watch*** hardware and software ***and not anything else***, ***because that's what these claims are directed to***, and that's what needs to be evaluated for direct infringement." Ex. 2 [Dec. 28, 2023 Oral Discussion Tr.] at 100:2-8. Masimo presented the below

slide, which emphasizes that "All Claims [Are] Limited to **Watch** Hardware and Software" because each preamble recites "*A user-worn device*" (Masimo's emphasis):



Masimo expressly represented that the claimed functionality must be performed on Watch without regard to any processing that may occur on the iPhone, explaining "[t]he system is not relevant here. The claims relate to the watch itself, relate to the watch hardware and software." Ex. 2 [Dec. 28, 2023 Oral Discussion Tr.] at 119:15–120:1.

For all these reasons, the adjudicated patents demonstrate the claimed "a user-worn device" must be limited to a single device. There is no merit to Masimo's argument that the Redesign 2 Watch in combination with the iPhone practices the adjudicated patents.

### B. The Commission Lacks Jurisdiction To "Modify" The Remedial Orders In The Manner Masimo Requests

#### 1. The Federal Circuit Presently Has Jurisdiction Over Issues Implicated In This Proceeding

The Commission cannot rule on Masimo's request for modification because it implicates issues presently under the Federal Circuit's jurisdiction. *Gilda Indus. v. United States*, 511 F.3d

1348, 1350 (Fed. Cir. 2008) ("Ordinarily, the act of filing a notice of appeal confers jurisdiction on an appellate court and divests the trial court of jurisdiction over matters related to the appeal." (*citing Griggs v. Provident*, 459 U.S. 59 (1982)). Specifically, the appeal from the underlying investigation directly implicates the meaning of the term "user worn device," the meaning of which is relevant to at least two issues pending on appeal: (1) whether Masimo's alleged domestic industry devices satisfied the "user worn device" limitation; and (2) whether the Lumidigm prior art reference—RX-0411 [U.S. Patent No. 7,620,212] ("Lumidigm")—taught the "user-worn device" limitation and renders the relevant asserted claims invalid. *See* Appellant's Brief, *Apple v. ITC*, No. 24-1285 at 33-34, 36-37 (Fed. Cir. Apr. 28, 2024); Brief of Appellee International Trade Commission, *Apple v. ITC*, No. 24-1285 at 10-11 (Fed. Cir. Jun. 28, 2024) ("ITC's Federal Circuit Brief") ("The Commission's non-obviousness conclusion is supported on two independent grounds relevant to all claims subject to appeal: (1) Apple failed to show that the prior art teaches or suggests the "***user-worn device***" configured to measure "oxygen saturation" limitations"); *id.* at 20-21 (arguing that domestic industry devices were user-worn).

Notably, Masimo's petition now equates "user-worn" with "wearable," a new term that does not appear in any claims nor even in the shared specification of the '502 and '648 patents.[3] Pet. at 16-17. Masimo construes the term "wearable"—even though "wearable" devices are not what is claimed—using dictionary definitions to mean "suitable for being worn" or "merely capable of being worn." Masimo then urges the Commission to find under that construction that

---

[3] The word "wearable" only appears in the titles of certain prior art references cited on the face of the patents.

the iPhone is "user-worn" even though it cannot be "worn" without modification. Pet. at 16-17.[4]

Masimo's interpretation renders the "user-worn" limitation meaningless, as anything could be

hypothetically modified to allow it to be attached to a person.

     Neither Masimo nor the Commission identified that construction to the Federal Circuit for

purposes of evaluating the domestic industry or invalidity issues on appeal.  Moreover, Masimo's

theory that the iPhone is "user-worn," despite being strapless, is inconsistent with the manner in

which the Commission itself argued to the Federal Circuit that Masimo's domestic industry

devices allegedly met the "user-worn" limitation.  *See* ITC's Federal Circuit Brief at 20-21

(arguing Masimo's devices were "user-worn" because they had a "mechanism for attaching a

strap" and also "had [a strap] at one point in time"); Brief of Intervenors Masimo and Cercacor,

*Apple v. ITC*, No. 24-1285 at 35 (Fed. Cir. June 28, 2024) (similar).

     Although the Commission has previously held that it retains the ability to enforce its

remedial orders while its final determination is on appeal, *see Certain Marine Sonar Imaging*

*Devices*, USITC Inv. No. 337-TA-921, Comm'n Op. (Aug. 29, 2016), the present case is

---

[4] Masimo's new claim revision and construction are improper for a host of reasons.  For one, it is erroneous to rewrite the claim language by substituting "wearable" for "user-worn."  The Federal Circuit has rejected attempts to re-draft claim language in such a manner.  *See In re Shafovaloff*, 2025 WL 1779173, at *2 (Fed. Cir. June 27, 2025) ("'It is not our function to rewrite claims …' and construing 'bent' as 'bend*able*' would rewrite the claim language to include what is foreclosed by the plain meaning" (citation omitted)).  Additionally, Masimo's revision would materially broaden the "user-worn device" claims into claims drawn to mere capability—even though claims 22 and 28 of the '502 patent and claims 22 and 28 of the '648 patent do not use the word "capable of" (or wear*able*) and instead use the term "*configured to*."  *E.g.*, '502 patent, cl. 19 ("A user-worn device configured to"); '648 patent, claim 8 (same); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (explaining that claims drawn to "capable of" are "broader" than "configured to"/"designed to").  Masimo's claim construction approach is also erroneous because it relies on extrinsic, dictionary definitions (Petition at 17) instead of the intrinsic record.  *See Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (use of extrinsic evidence improper when intrinsic evidence unambiguous); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1321-22 (Fed. Cir. 2005) (en banc) (holding that claim construction does not start with the dictionary definitions of a word).

distinguishable.  In *Marine Sonar*, the Commission expressly acknowledged that the modification proceeding would not "affect the Commission's findings concerning indirect infringement, which are at issue in Navico's appeal."  *Id*. at 6.  By contrast, the Commission's applied scope of "user-worn device" is directly at issue in these proceedings in the two ways outlined above.  Although styled as a request for "modification" or "clarification," Masimo's request asks the ITC to adopt a significantly broader scope of "user-worn device," arguing that it should cover not only a single wristwatch, but also a pair of two devices, including a mobile phone that is not even user-worn.  *See* Pet. at 16 ("The question in this proceeding is whether a combination of the Redesign 2 Watch and a paired iPhone meets [the user-worn device limitation].").  Adopting that sweeping new claim scope would go far beyond what is permissible during an appeal—i.e., "preserving the status quo or otherwise supervising compliance."  *See Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC,* 985 F. Supp. 2d 23, 30 (D.D.C. 2013).  Masimo's petition asks the Commission to fundamentally change the meaning of a disputed claim term (an issue which the Federal Circuit reviews *de novo*) and apply it to a new product at a time when the parties have already briefed and argued the issues under the original claim scope the Commission applied in the underlying Investigation.  Granting Masimo's petition would therefore improperly impinge upon the Federal Circuit's jurisdiction.  *Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177 (1922) (during pendency of appeal, trial court "may not finally adjudicate substantial rights directly involved in the appeal").  The proper course of action is for the Commission to defer ruling on Masimo's petition until after the Federal Circuit has issued its opinion and resulting mandate.[5]

---

[5] Delaying resolution of Masimo's petition would also conserve Commission resources in the event that the Federal Circuit overturns any portion of the Commission's Final Determination.

2.      **Section 337(k) Does Not Authorize The Proposed Modification Proceeding**

The Commission also lacks the statutory authority to initiate a modification proceeding that ***expands*** the scope of its remedial orders, as Masimo seeks—modification proceedings are solely for ***contracting*** the scope of remedial orders.  Section 337(k), which Masimo invokes as the authority for its proposed modification proceeding (Petition at 13), states as follows:

> (k) Period of effectiveness; termination of violation or modification or rescission of exclusion or order
>
>> (1) Except as provided in subsections (f) and (j), any exclusion from entry or order under this section shall continue in effect until the Commission finds, and in the case of exclusion from entry notifies the Secretary of the Treasury, that the ***conditions which led to*** such exclusion from entry or order ***no longer exist***.
>>
>> (2) If any ***person who has previously been found by the Commission to be in violation of this section petitions*** the Commission for a determination that the petitioner is no longer in violation of this section or for a modification or rescission of an exclusion from entry or order under subsection (d), (e), (f), (g), or (i)—
>>
>>> (A) the burden of proof in any proceeding before the Commission regarding such petition shall be on the petitioner; and
>>>
>>> (B) relief may be granted by the Commission with respect to such petition—
>>>
>>>> (i) on the basis of new evidence or evidence that could not have been presented at the prior proceeding, or
>>>>
>>>> (ii) on grounds which would permit relief from a judgment or order under the Federal Rules of Civil Procedure.

19 U.S.C. § 1337(k).

Instituting Masimo's proposed "modification" proceeding would be improper for several reasons.  ***First,*** Masimo does not even suggest that "the conditions which led to" the exclusion orders "no longer exist" as required by Section 337(k)(1).  Masimo argues the contrary.  Masimo

asserts not only that the underlying conditions still exist, but that the remedial orders should be *expanded*. Pet. at 16 ("The Commission Should Clarify that the Redesign 2 Watch is Within the Scope of the Remedial Orders Because It Infringes When Paired With an iPhone"). Nothing in Section 337(k) permits a modification proceeding where the circumstances leading to the remedial orders continue to exist. ***Second,*** and relatedly, nothing in Section 337(k) permits the Commission to modify its remedial orders to cover a combination of devices (Apple Watch + iPhone Combination) that was not within the scope of the original investigation (which was limited to "wearable electronic devices with light-based pulse oximetry functionality and components thereof" that "infringe one or more claims")—a point Masimo itself has conceded before Customs. *See* Apple's Part 177 Ruling Request at 3, 13-14 (Mar. 26, 2024) (collecting Masimo's statements that iPhone is outside scope of the 1276 LEO). Rather, the language concerning modification from Section 337(k)(2) contemplates only a modification proceeding brought by a "person who has previously been found by the Commission to be in violation of this section." Plainly, the legislative intent behind that language was to permit those subject to remedial orders to seek modifications that *narrowed* the scope of relief, not expand it.

Masimo's reliance on 19 C.F.R. § 210.76 cannot overcome the statutory language. Although 19 C.F.R. § 210.76 states that "any person" or the Commission itself can initiate a modification proceeding, such a proceeding is—like the Section 337(k) statute—limited to "a determination that the conditions which led to the issuance of an exclusion order, cease and desist order, consent order, or seizure and forfeiture order ***no longer exist.***" 19 C.F.R. § 210.76. In other words, the regulation implementing the statute permits persons who have previously been found to be in violation to argue that conditions leading to remedial order "no longer exist." *See id.*; 19 U.S.C. § 1337(k)(1)-(k)(2). To the extent Masimo urges the Commission to interpret 19 C.F.R.

§ 210.76 as permitting "any person" to petition for any modification, that interpretation of the regulation would have no basis in the statutory language, is entitled to no deference, and would be invalid. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (Courts will "set aside any [agency] action inconsistent with the law as they interpret it"); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 485 (2001) (an agency "may not construe the statute in a way that completely nullifies textually applicable provisions meant to limit [the agency's] discretion").

The Commission has in certain investigations mistakenly held that it may "amend the notice of investigation [to include new products] 'at any time,'" under 19 C.F.R. §210.14(c). *See* Comm'n Op., *Certain Movable Barrier Operators*, Inv. No. 337-TA-1208 at 10 (March 30, 2022) ("*Movable Barrier Operators*"). The statutory text does not support such a sweeping view of the Commission's authority—indeed it plainly forecloses that reading, and a court would be justified in nullifying the agency's actions on that basis, *see Loper Bright,* 603 U.S. at 392; *Whitman*, 531 U.S. at 485—and neither does the cited regulation itself. To the contrary, Section 210.14(c) limits the Commission's ability to amend the Notice of Investigation to situations arising "during the taking of evidence." 19 C.F.R. § 210.14(c). Because the evidentiary record in this Investigation is closed and the Investigation itself has been terminated, there is no basis for the Commission to amend the notice of Investigation. *See* Comm'n Op., *Certain Light-Based Physiological Measurement Devices and Components Thereof*, 337-TA-1276 at 123 (Nov. 14, 2023) ("1276 Comm'n Op.") ("terminating" the investigation). Moreover, this case is procedurally different than *Movable Barrier Operators*. There, the Commission found that the respondent had acquiesced to the inclusion of additional products in the investigation (gate operators and commercial operators) by failing to raise the scope of the investigation (which plainly included gate and commercial operators) in its petition for review. *See Movable Barrier Operators* at 4-5.

Here, the original Investigation indisputably focused on Apple Watch alone, not on the watch/phone combination that is the subject of Masimo's petition. *See* 1276 Comm'n Op. at 13-14 (Complainants accused certain Apple Watches of infringing the Asserted Patents). Accordingly, the Commission may not simply amend the Notice of Investigation to include mobile phones.

### 3. Modification Proceedings Cannot Expand The Scope of the Claims Considered In The Underlying Investigation

Masimo's requested clarification or modification proceeding should also be rejected because Masimo asks the Commission to stray well beyond the infringement allegations in the original investigation. It is well established that a party "cannot seek to broaden (or narrow) the scope of the asserted claims during [an] enforcement proceeding." *Certain Pers. Data & Mobile Commc'ns Devices & Related Software*, Ord. No. 128, Inv. No. 337-TA-710, 2012 WL 7961881 at *2 (Nov. 1, 2012). Thus, in the *Certain Personal Data* case, the Commission precluded the patent owner from "attempting to broaden the scope of the asserted claims in [an] enforcement proceeding." *Id.* That sound practice is consistent with Federal Circuit precedent in the analogous situation of a patent owner attempting to enforce district court injunctions, in contempt proceedings, against a defendant's modified, design-around device. In such cases, the Federal Circuit has emphasized:

> [T]he [original] injunction must be interpreted in light of the rulings of the court on the scope of the claims. The patent owner ***may not***, in contempt proceedings, seek to ***broaden the scope*** of the claims which were adjudicated ***and, thereby, catch the modified device***.

*KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1529 (Fed. Cir. 1985), *overruled-in-part on other grounds by TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc).[6]

Masimo's petition improperly seeks to broaden the scope of the asserted claims in at least three ways.

***First***, Masimo's petition seeks to broaden the literal scope of the claim limitations "a ***user-worn*** device" and "the ***user-worn*** device," which claims 22 and 28 of the '502 patent and claims 22 and 28 of the '648 patent require. Pet. at 17. As noted above, Masimo attempts to re-write those limitations by equating "user-worn" with a new term, ***"wearable"—that does not appear in any claims*** nor even in the shared specification of the '502 and '648 patents—as a springboard into its new, erroneous claim construction. *See supra* pp. 10-11.

Masimo's new claim revision and construction—and request that the Commission find that a paired iPhone "meets" the "user-worn device" limitation (Pet. at 16) because it is allegedly wearable—are also inconsistent with the ALJ's and Commission's prior reasoning that Masimo's domestic industry devices satisfied the "user-worn" limitation because they either (1) "have straps that allow these devices to be worn," or (2) "had straps 'at one point in time'" and retained "attachment mechanisms for a strap." *Certain Light-Based Physiological Measurement Devices and Components Thereof*, 337-TA-1276, Final Initial Determination, DocID 787653 at 63; *see also supra* pp. 9-11. In contrast, it is undisputed that the paired iPhone has no straps, nor "attachment mechanisms for a strap," that facilitate attachment to a patient. Masimo's argument that the iPhone may be further modified with an "armband" so that it could be worn (Pet. at 17)

---

[6] In *Tivo*, the Federal Circuit clarified that the alleged infringer "is entitled to a new infringement proceeding" if the modified, design-around device has "more than colorable differences between" the original device, instead of an enforcement or contempt proceeding on the original injunction. 646 F.3d at 883-84.

does not mean the iPhone itself is a "user-worn device. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) ("[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim."). That argument would vitiate the limitation as nearly all physiological monitoring devices could be modified to add straps, or put into a purse or backpack.

*Second*, Masimo's petition also seeks to broaden the literal scope of "*a* user-worn device" and "*the* user-worn device" by allowing the claimed singular "device" to be distributed over *two* physically distinct devices, only one of which (the Watch) is "user-worn." *See supra* pp. 5-8. The written description does not support—and never refers to—two physically separate and unconnected devices being "a user-worn device" when only one of those devices is "user-worn."[7] Masimo's new theory of claim scope flatly contradicts its repeated representations to CBP that its asserted patent claims are directed only to the accused "watch hardware and watch software" and not to the iPhone. *See supra* pp. 8-9.

*Third*, Masimo's petition also attempts to broaden the claims beyond their literal scope to accuse Apple's Redesign 2 Watch and paired iPhone under the doctrine of equivalents. *See* Pet. at 19-21. That goes well beyond the scope of the original investigation because Masimo did not argue, and the ALJ's Final Initial Determination and the Commission Opinion did not find, infringement under the doctrine of equivalents. There was no need to address doctrine of

---

[7] Masimo points to "monitoring device 200B" (Pet. at 18), but that is primarily a singular device that includes physically connected components: "a finger clip sensor 201b connected to a monitor 209b via a cable 212." *See* '502 patent, 17:27-62 & Fig. 2C. Although the specification states that the "sensor 201b and the monitor 209b can be coupled together via a wireless link," that configuration would no longer be a singular "user-worn device," though each component would still be user-worn because the monitor includes "a belt clip or straps (*see, e.g.*, Fig. 2C)" and the sensor is a "finger clip." *Id.*; *see also id.* at 10:22-25 ("Many of the foregoing arrangements allow the sensor to be attached to the measurement site while the device is attached elsewhere on the patient, such as the patient's arm, or placed at a location near the patient").

equivalents for the "user-worn device" limitation in the original investigation because it was focused on watches that were undisputably worn by users and ***themselves*** performed blood oxygen measurements. Masimo's new arguments under the doctrine of equivalents would inherently "expand . . . exclusive rights" beyond the literal "limited claims." *Sage Prods., Inc. v. Devon Indus.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997). Because arguing doctrine of equivalents would "broaden the scope of the asserted claims," Masimo is precluded from advancing that new theory for the first time under the guise of a "clarification" or "modification" proceeding. *Certain Pers. Data*, 2012 WL 7961881 at *2; *cf. KSM Fastening Sys.*, 776 F.2d at 1529 (patent owner may not "broaden the scope of the claims which were adjudicated and, thereby, catch the modified device" in an injunction enforcement/contempt proceeding).

4. **If the Commission Does Consider Masimo's New Infringement Theory Based On A New Claim Construction, Apple Must Be Permitted to Challenge Validity Under That Construction—And The Statutory Public Interest Factors Must Be Applied To Any Expansion Of The Exclusion Order**

If the Commission does conduct a proceeding pursuant to Masimo's request, Apple should have an adequate opportunity to investigate and respond with invalidity defenses in a proceeding based on Masimo's new arguments. For example, in the *Certain Personal Data* case, the Commission prevented the respondent from "asserting its invalidity defense" but only did so because it (correctly) precluded the patent owner from "attempting to broaden the scope of the asserted claims." 2012 WL 7961881 at *2. If the Commission were to allow Masimo to broaden the scope of "user-worn device" literally or through the doctrine of equivalents (and it should not) at minimum, under the logic of *Certain Personal Data,* Apple should be fairly permitted to assert prior art and invalidity defenses.

That is also required by due process and the Administrative Procedure Act (APA).  The APA provides that, in formal adjudications such as ITC proceedings,[8] "agency shall give all interested parties opportunity for ... the submission and consideration of facts [and] arguments," 5 U.S.C. § 554(c), and to permit a party "to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts," *id*. § 556(d).  In *Axonics, Inc. v. Medtronic, Inc*., 75 F.4th 1374, 1382-83 (Fed. Cir. 2023), the Federal Circuit explained that, in an APA formal adjudication, a "[patent challenger] is entitled under the APA to respond to new claim construction arguments made by a patent owner or adopted by the" agency and, "under the APA, when the [agency] adopts a new claim construction … the [patent challenger] must be afforded a reasonable opportunity … to present argument and ***evidence under that new construction***").  Thus, if the ITC conducts a proceeding, Apple "must be afforded a reasonable opportunity" to present invalidity "argument and evidence under [a] new construction."  *Id*. at 1383; *cf*. *Tivo*, 646 F.3d at 884 (explaining that when a modified, design-around device is "more than colorably different" from the original product subject to an injunction, the alleged infringer is "entitled to a ***new*** infringement proceeding").

Here, Masimo presents a new claim construction of "user-worn" to be synonymous with "wearable" and to mean "suitable for being worn" or "merely capable of being worn."  *See supra* pp. 9-11.  Due process and the APA requires that Apple be permitted to present prior art evidence

---

[8] Peter S. Menell, "The International Trade Commission's Section 337 Authority," Patently-O Patent Law Journal (2010), *available at* https://patentlyo.com/media/docs/2010/05/menell.itc.pdf (noting that the 1974 Act "brought ITC investigations within the formal adjudication provisions of the Administrative Procedure Act").

and arguments under Masimo's new claim construction.[9] *Axonics*, 75 F.4th at 1382; *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (patent claims must be "given the same meaning for purposes of both validity and infringement analyses" because "[a] patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement"). Masimo also accuses a new combination of devices—now including an iPhone—under the new claim scope that "the user-worn device" can be split into two physically distinct devices and only one of which needs to be "user-worn. Apple must also be permitted to present prior art and Section 112 arguments in response to Masimo's new claim scope, as applied to a combination of the iPhone and Watch that is colorably different from Watch alone. *See id.*; *Tivo*, 646 F.3d at 884. Masimo also argues, for the first time, that the combination of the iPhone and Watch meets the "user-worn device" limitation under the doctrine of equivalents. Apple is entitled to present prosecution history estoppel and prior art-based ensnarement defenses against this new doctrine of equivalents infringement theory. *See, e.g.*, *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017) (explaining that "[a] doctrine of equivalents theory cannot be asserted if it will encompass or 'ensnare' the prior art" and that the patentee should first "propose[] a hypothetical claim," which then shifts the "burden of producing evidence of prior art to challenge a hypothetical claim [to] an accused infringer").

---

[9] For example, the Lumidigm, which Apple cited during the Investigation—disclosed "cellular telephone," "personal data assistant" and "combined cellular telephone/personal digital assistant" embodiments that included a "biometric sensor." *See, e.g.*, Lumidigm at 5:9-15, Fig. 8C-8E. The "biometric sensor" included a blood oxygen functionality. *Id.* at 3:35-59 ("personal data assistant" with "hemoglobin-monitor function"); 19:16-28 (explaining "hemoglobin monitor" allows "quantif[ication of] oxygenation levels"). Had Masimo argued during the Investigation that a smartphone meets the "user-worn" limitation because such devices are allegedly "worn," or could be attached to an armband or belt clip, then Apple would have emphasized those embodiments of Lumidigm as having taught the claimed "user-worn device," and searched for other prior art references under Masimo's current apparent claim scope and claim construction.

Given Masimo's new infringement arguments and Apple's due process and APA rights, if the Commission is inclined to conduct a proceeding Apple respectfully submits that such proceedings be conducted as a new Investigation under Section 337(b). That is consistent with the en banc Federal Circuit's *Tivo* decision, which requires a "new infringement proceeding" when a modified device is colorably different from an originally enjoined device. And it is consistent with Section 337, which contemplates the Commission instituting a new Investigation with a different scope, which include provisions to safeguard the respondents' due process rights and the public interest, including requiring publication of a notice in the Federal Register, permitting a respondent to raise "all legal and equitable defenses [and] counterclaim[s]," mandating a consideration of the public interest factors, imposing Presidential review, and others. *See e.g.,* 19 U.S.C. § 1337(b), (c), (j). Accordingly, if a proceeding is to be conducted, the appropriate vehicle for addressing Masimo's request would be a proceeding under that section of the statute.

Whatever vehicle—if any—the Commission selects to adjudicate the merits of these issues, the Commission will also need to assess the statutory public interest factors as applied to a new expansion of the exclusion order. *See* 19 U.S.C. § 1337(d)(l), (f)(1). The Commission would need to consider whether the public interest would be served by depriving consumers of access to the modified, two-device version of Apple's Blood Oxygen feature—and the health-and-wellness benefits of that feature—as compared to Masimo's nonexistent "domestic industry" and Masimo's naked request that the Commission enhance Masimo's "negotiating position" with Apple or with "'existing and prospective licensees.'" Masimo's Memorandum Of Law In Support of Plaintiff's Motion for Temporary Restraining Order And Preliminary Injunction, *Masimo v. United States Customs and Border Protection, et al.*, No. 1:25-cv-2749, Dkt. 3-1 at 32-33 (D.D.C. Aug. 20, 2025) (citations omitted).

## IV.  NO GOOD AND SUFFICIENT REASON EXISTS TO EXPEDITE THESE PROCEEDINGS

Masimo's proposed clarification/modification proceeding has the potential to deprive millions of consumers of the ability to access Apple's Blood Oxygen feature.  By contrast, Masimo has not made any allegation in this proceeding, much less any showing, that it has suffered or will suffer any irreparable harm during its pendency.  Pet., Ex. 5 at 114:2-11 (district court stating, "[W]hile you may be irreparably annoyed . . . you are not irreparably harmed if we're just talking about money damages, [and] that is what we're talking about.").  Indeed, Masimo's purported harm from "loss of bargaining power" with Apple or "'existing and prospective licensees'" of the asserted patents is inconsistent with the testimony of Masimo's former CEO, Joe Kiani, who confirmed at his deposition that                                                    

                Ex. 3 [2/1/22 Kiani Dep.] at 201:3-5, and with the testimony of Chief Financial Officer Micah Young, who likewise confirmed at his deposition that                                          

                                                                        Ex. 4 [2/23/22 Young Dep.] at 25:22-25.

Moreover, Masimo has barely sold any watch products ever, and Masimo is not even alleging that Apple's Redesign 2 Watch would impair Masimo's watch sales as it has discontinued them, *see* Ex. 1, despite having represented to the Commission that Masimo's watches could be reasonable substitutes for the Apple Watch's Blood Oxygen feature, *see* 1276 Comm'n Op. at 88, 91.  In short, this investigation has proceeded under a flawed domestic-industry analysis from the outset—as is presently on review by the Federal Circuit—and Masimo's latest requests would only reinforce the domestic-industry errors, by expanding the exclusion order to protect a nonexistent "domestic industry" and to further harm the public interest.

Against this backdrop, the Commission's September 9, 2025 decision to shorten Apple's time to respond to Masimo's request was both unwarranted and improper. Although 19 C.F.R. § 210.4(b) permits the Commission to waive certain rules upon a determination of "good and sufficient reason," it does not permit rule changes absent adequate justification. *Loper Bright*, 603 U.S. at 395 (courts "ensur[e that] the agency has engaged in reasoned decision-making within [statutory] boundaries") (quotations omitted); *see also* 5 U.S.C. § 706(2) (specifying conditions under which Courts will set aside agency action). In analogous contexts, the Federal Circuit has previously criticized the Commission for failing to justify its invocation of 210.4(b). *Align Tech., Inc. v. ITC*, 771 F.3d 1317, 1324 (Fed. Cir. 2014) (Commission's goals "cannot trump the need for the Commission to follow its own rules and regulations, absent identifying sufficient grounds for waiver or suspension of those rules.") (citing *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943))). As in *Align Tech*, the Commission's letter articulated no specific "good and sufficient reason" justifying its decision to shorten Apple's response time.

Expedition must not come at the sacrifice of Apple's rights to due process—including the opportunity to develop the record in connection with Masimo's requested expansion of the remedial orders—e.g., to develop evidence that that Masimo's claims are invalid or that the public interest factors cannot be reconciled with an expansion of the exclusion order. *See* 19 U.S.C. § 1337(c) ("All legal and equitable defenses may be presented in all cases."). Nor should the Commission accelerate its decision-making in a way that undermines its ability to fully and fairly resolve the technical and procedural questions at issue, as required by statute. *Id.* § 1337(b)(1)-

(2).  Accordingly, these proceedings should be adjudicated under the ordinary timing provisions set forth in the Commission's rules.

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Commission find that the Redesign 2 Watch is not within the scope of the 1276 remedial orders.

Dated:  September 15, 2025                Respectfully submitted,

*/s/ Sarah R. Frazier*
Mark D. Selwyn
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6031

Joseph J. Mueller
Sarah R. Frazier
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

Derek A. Gosma
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Ave
Suite 2400
Los Angeles, CA 90041
Telephone: (213) 443-5308

*Counsel for Respondent Apple Inc.*

# EXHIBIT 1

**Masimo**                                                                                      ENGLISH ˅

Technology˅    Products˅    Care Areas˅    Clinical Evidence˅    Company˅    Contact & Support˅                    Search 🔍

# Consumer Product Support & Warranty

## Product Support

Please note that all Masimo consumer products have been discontinued. These include:

> MightySat®
> Masimo W1 ® Sport Watch
> Opioid Halo˜ / Masimo SafetyNet Alert˜
> Radius T°® Continuous Thermometer
> Masimo Stork® Vitals, Masimo Stork Vitals+, and Masimo Stork Baby Monitor

For product support for all products, please contact Masimo Support at:

| ✉ Email: customercare@masimo.com | 📞 Call Us                    ˅ |
| --- | --- |

*See below for Warranty Information for specific products.*

## Limited Warranty Policy

*Revised: March 2023*

This Limited Warranty Policy applies to the Masimo products (each, a "Product") listed below and is given by Masimo Americas, Inc. ("Masimo") only to the original purchaser of the Product from Masimo or any Masimo authorized reseller. Except where prohibited by law, this Limited Warranty does not extend to any subsequent Product owner or other person to who the Product is transferred.

### Limited Warranty

Subject to the limitations below and as long as used in accordance with the directions for use, Masimo warrants to the original purchaser of a Product for the time period below ("Warranty Period") that any new component included with a Product will be free from defects in materials and workmanship (the "Limited Warranty").

The Limited Warranty gives you specific legal rights and you may have other rights that vary from state to state.

Masimo limits the duration and remedies of all implied warranties, including without limitation, the warranties of merchantability and fitness for a particular purpose to the duration of the Warranty Period. Some states do not allow limitations on how long an implied warranty lasts, so this limitation may not apply to you.

| Product | Warranty Period of Product or Component |
| --- | --- |
| Opioid Halo / Masimo SafetyNet Alert | > **Chip**: 1 year from date of purchase<br>> **Sensor**: End of the specified battery life or the expiration date, both as listed on the packaging, whichever occurs first<br>> **Home Medical Hub**: 1 year from date of purchase |

| Radius T° Continuous Thermometer | **Sensor**: End of the specified battery life or the expiration date, both as listed on the packaging, whichever occurs first |
| MightySat | **MightySat**: 2 years from date of purchase |
| Masimo Stork (whether bundled or purchased individually) | > **Sensor**: 1 year from date of purchase<br>> **Camera**: 1 year from date of purchase<br>> **Hub**: 1 year from date of purchase<br>> **Boot**: 1 year from date of purchase (ordinary wear and tear excepted) |

Masimo may change the availability of the Limited Warranty at its discretion, but any changes will not be retroactive.

This Limited Warranty does not apply to (a) any non-Masimo product, even if included or sold with a Product; (b) any software or application used with the Product, even if packaged or sold with the Product or embedded in the Product or (c) any non-Masimo network or system on which the Product operates. You should refer to the Terms of Use for the specific Product for additional details.

If a component of a Product becomes defective during the warranty Period, Masimo will, at its sole option, either repair or replace the defective component or Product, free of charge to you. Masimo will also pay for shipping and handling fees to return the repaired or replacement Product to you. The Warranty Period is not extended if Masimo repairs or replaces the Product. The Limited Warranty will apply to the repaired or replaced component for the remainder of the original Warranty Period, or 30 days from the date of replacement, whichever is longer, or for any additional period of time that may be required by applicable law.

To request Product repair or replacement under the Limited Warranty, please follow the steps under "How to Return a Product or Obtain Warranty Service" below.

### What is Not Covered?

The Limited Warranty above does not apply to: (a) any component of the Product that is: (i) not new or in its original packaging when supplied to you; (ii) modified; (iii) used with non-Masimo supplied or approved devices (including unsupported mobile devices), components, accessories, or software; (iv) disassembled or repaired by anyone other than a person authorized by Masimo; (b) normal wear and tear; (c) damage resulting from accident, misuse, abuse, negligence; or (d) failure to use the Product in accordance with the instructions and warnings provided with the Product or any published documentation.

### Limitation of Remedies & Liability

The remedies in the Limited Warranty are your only remedies and Masimo's entire liability for any breach of the Limited Warranty. Masimo's liability under any circumstances will not exceed the actual amount paid by you for the defective Product, and under no circumstances will Masimo be liable for any consequential, incidental, special, or punitive damages or losses, whether direct or indirect.

Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. In these states, the liability of Masimo, its licensors, and affiliates will be limited to the greatest extent permitted by law.

If you have questions or want to obtain warranty service, please contact Masimo Customer Support by phone at (800) 916-1270 and email at customercare@masimo.com.

Under the Limited Warranty service, Masimo will ship a repaired or replaced Product to you free of charge. You are responsible for all other shipping costs unless prohibited by law.

### Other Important Notices

The rights provided to you under the Limited Warranty are provided in addition to your rights and remedies under consumer protection laws and do not affect your legal (statutory) rights under applicable law.

The Limited Warranty is offered subject to Masimo's Terms of Service for the applicable Product, which may change from time to time. You can find the latest version of the Terms of Service for each Product in the Product App, in the Product manual or packaging, or by calling Masimo Customer Support at (800) 916-1270. If there is a conflict between the Terms of Service for a Product and the Limited Warranty, the Limited Warranty will prevail. No Masimo reseller, distributor, agent or employee is authorized to make any modification, extension, or addition to the Limited Warranty.

Any product returned to Masimo without a valid warranty claim or without an RMA number may be rejected, returned at sender's cost (subject to prepayment), or kept for 30 days and then disposed of at Masimo's option.

PLCO-007791-IPLM-152594-0725



| INSIDE MASIMO | SUPPORT | LEGAL & PRIVACY |
| --- | --- | --- |
| About | Contact Us | Compliance |
| Guiding Principles | Technical Services | Patents |
| Corporate Brochure | Additional Resources | Website Terms of Use |
| Company Evolution | Consumer Product Support & | Privacy Notice |
| Investor Relations | Warranty page | CA Privacy |
| News & Media | | WA Health Privacy Notice |
| Video Library | | Cookie Notice |
| OEM Solutions | | Cookie Preferences |
| Careers | | |
| Newsletter sign-up | | |

**Corporate**

52 Discovery, Irvine, CA 92618
+1 (949) 297-7000

Improve Life™
Improve patient outcomes and reduce cost of care®
Take noninvasive monitoring to new sites and
applications™

Sitemap © 2025 Masimo. All Rights Reserved.

# EXHIBIT 2

Page 1

UNITED STATES INTERNATIONAL TRADE COMMISSION

_____

In the Matter of,                    )

                                     )

CERTAIN LIGHT-BASED PHYSIOLOGICAL  ) Investigation No

MEASUREMENT DEVICES AND COMPONENTS ) 337-TA-1276

THEREOF,                             )

                                     )

_____)



CONTAINS APPLE CONFIDENTIAL BUSINESS INFORMATION



TRANSCRIPT OF PROCEEDINGS

IRVINE, CALIFORNIA

THURSDAY, DECEMBER 28, 2023

10:05 A.M.


Stenographically reported by:

Kayla Lotstein

California CSR No. 13916, CRR, RPR, CRC

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

# EXHIBIT 3

1      UNITED STATES INTERNATIONAL TRADE COMMISSION

2               WASHINGTON, D.C.

3   --------------------------x

4   In the Matter of      :

5   CERTAIN LIGHT-BASED     :  Inv. No. 337-TA-1276

6   PHYSIOLOGICAL MEASUREMENT :

7   DEVICES AND COMPONENTS   :

8   THEREOF             :

9   --------------------------x

10

11        CONFIDENTIAL BUSINESS INFORMATION

12         SUBJECT TO PROTECTIVE ORDER

13

14    Videotaped Deposition of MASIMO CORPORATION

15   By and Through their Designated Representative

16            JOSEPH KIANI

17        Friday, February 11, 2022

18            9:44 a.m.

19

20

21

22   Job No.: 430717

23   Pages: 1 - 254

24   Reporter: DEBRA BOLLMAN FARFAN, RDR-RMR-CRR-CRC

25         CA CSR NO. 11648

# EXHIBIT 4

1            UNITED STATES INTERNATIONAL TRADE COMMISSION

2                       WASHINGTON, D.C.

3      --------------------------x

4      In the Matter of           :

5      CERTAIN LIGHT-BASED         :   Inv. No. 337-TA-1276

6      PHYSIOLOGICAL MEASUREMENT   :

7      DEVICES AND COMPONENTS      :

8      THEREOF                     :

9      --------------------------x

10

11            CONFIDENTIAL BUSINESS INFORMATION

12               SUBJECT TO PROTECTIVE ORDER

13

14      Videotaped Deposition of MASIMO CORPORATION

15            and CERCACOR LABORATORIES, INC.

16     By and Through their Designated Representative

17                     MICAH YOUNG

18            Wednesday, February 23, 2022

19                     9:08 a.m.

20

21

22     Job No.: 430732

23     Pages: 1 - 294

24     Reporter: DEBRA BOLLMAN FARFAN, RDR-RMR-CRR-CRC

25            CA CSR NO. 11648

*CERTAIN LIGHT-BASED PHYSIOLOGICAL MEASUREMENT*
*DEVICES AND COMPONENTS THEREOF*

Inv. No. 337-TA-1276

<u>CERTIFICATE OF SERVICE</u>

I, Lanta M. Chase, hereby certify that true and correct copies of the foregoing, **RESPONDENT APPLE INC.'S RESPONSE TO MASIMO'S REQUEST FOR CLARIFICATION, OR IN THE ALTERNATIVE, PETITION FOR MODIFICATION AND REQUEST FOR EXPEDITED TREATMENT**, have been filed and served on this 15th day of September 2025, on the following in the manner indicated:

| | |
|---|---|
| The Honorable Lisa R. Barton<br>Secretary<br>**U.S. International Trade Commission**<br>500 E Street, S.W.<br>Washington, DC 20436 | ☒ Via Electronic Filing<br>  Via Hand Delivery (2 Copies)<br>  Via Overnight Delivery |
| The Honorable Monica Bhattacharyya<br>Administrative Law Judge<br>**U.S. International Trade Commission**<br>500 E Street, S.W., Room 317<br>Washington, DC 20436 |   Via Hand Delivery (2 Copies)<br>  Via Overnight Delivery<br>  Via Facsimile<br>☒ Via Electronic Mail |
| Stephen C. Jensen<br>Joseph R. Re<br>Sheila N. Swaroop<br>Ted. M. Cannon<br>Alan G. Laquer<br>Kendall M. Loebbaka<br>**KNOBBE, MARTENS, OLSON & BEAR, LLP**<br>2040 Main Street<br>Fourteenth Floor<br>Irvine, CA 92614<br><br>William R. Zimmerman<br>Jonathan E. Bachand<br>**KNOBBE, MARTENS, OLSON & BEAR, LLP**<br>1717 Pennsylvania Avenue N.W., Suite 900<br>Washington, DC 20006<br><br>Brian C. Horne<br>**KNOBBE, MARTENS, OLSON & BEAR, LLP**<br>1925 Century Park East<br>Suite 600<br>Los Angeles, CA 90067<br>Karl W. Kowalis | ☐ Via Hand Delivery (2 Copies)<br>☐ Via Overnight Delivery<br>☐ Via Facsimile<br>☒ Via Electronic Mail<br>masimo.appleitc@knobbe.com |

Matthew S. Friedrichs
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1155 Avenue of the Americas
24th Floor
New York, NY 10036

*Counsel for Complainants*

_/s/ Lanta M. Chase_____
Lanta M. Chase