**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MASIMO CORPORATION,<br><br>      *Plaintiff*,<br><br>      v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; ALICE KIPEL, in her official capacity as Executive Director of Regulations and Rulings Office of International Trade, U.S. Customs and Border Protection,<br><br>      *Defendants*. | Case No.: 1:25-cv-02749-ACR |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
NOTICE OF DOCUMENT PRODUCTION**

Pursuant to the Court's minute order of September 16, 2025, defendants respectfully submit this response to address the arguments in plaintiff Masimo Corp.'s Notice of Document Production (Notice). ECF No. 47 (Sept. 12, 2025).

Masimo's Notice completely elides the purpose of the subject communications—Apple's intent to import its redesigned watch to set up a decision from U.S. Customs and Border Protection (CBP) as to whether the watches would be excluded from the United States when they reached the border. Apple's other shipments into the country, however, would contain many types of Apple products, and the purpose of the communications between CBP's Exclusion Order Enforcement (EOE) Branch and Apple's counsel was solely to distinguish a single shipment of the redesigned watches, separate from all other products. Both the head of CBP's EOE Branch and Apple's counsel confirmed that CBP was not involved in Apple's decision to

import a shipment of redesigned watches that ultimately resulted in CBP's August 2025 ruling, and that CBP did not tell Apple in advance how it would treat the shipment. *See* Hearing Tr. 41:15-42:17, 97:11-98:13.

Perhaps because Masimo misunderstands the purpose of the emails between Apple and CBP, it misinterprets the communications to insinuate two incorrect points: first, that CBP understood that "CBP's January 2025 interpretation of the Limited Exclusion Order ('LEO') required exclusion of Apple's shipment of five Redesign 2 Watches," Notice at 1; and second, that CBP somehow inappropriately "coordinated" with Apple "to engineer" a particular outcome, which, in Masimo's view, "confirm[s]" the Court's jurisdiction under an unstated rationale, *id.* at 1-2.  Masimo is wrong on both counts.

*First*, consistent with CBP's and Apple's counsel's representations to the Court, the emails show nothing more than the administrative logistics of the shipment leading to the August 2025 ruling.  Hearing Tr. at 97:15–98:13; Notice, Ex. 5 at 2-3.  The purpose of the communications was solely logistical—to work with Apple's counsel to distinguish the watches found not to be subject to the limited exclusion order by CBP's January 2024 ruling from the redesigned watches that were the subject of CBP's January 2025 ruling.  The former were entering the United States without elevated scrutiny.

Following the January 2025 ruling, Apple planned a shipment of redesigned watches to test whether CBP would admit or exclude them.  *See* Hearing Tr. 17:18–20:21, 39:10–43:3.  If CBP excluded them, Apple planned to file an administrative protest to challenge the exclusion and then, based on a denial of its protest, seek review from the U.S. Court of International Trade. *See id. at* 39:10–43:3.  Apple attempted such a test shipment after reaching out to CBP at the

port-level but the shipment was admitted without examination.  *See id.* at 94:9–95:8, 96:9–97:4; Notice, Ex. 1 at 2.

 After Apple's failed attempt to trigger an examination of its first test shipment, Apple's counsel was put into contact with Dax Terrill, Chief of CBP's EOE Branch.  Hearing Tr. at 95:4-8, 96:4-98:13.  As reflected in the emails, Mr. Terrill asked Apple to provide clarity on its intentions for the test shipment in the form of a certification.  *See* Notice, Exs. 1–5; *see also* Hearing Tr. at 97:7–97:19.  The certification satisfied CBP's needs by stating that: (1) Apple intended to send one shipment containing five redesign 2 watches that implemented the redesign that was the subject of the January 2025 ruling; and (2) that, with the exception of that one shipment, "any articles imported, entered, introduced, or attempted to be entered or introduced into the commerce of the United States by Apple and that are subject to the Commission's scope of investigation from ITC Inv. No. 337-TA-1276 will not be subject to exclusion from entry under the LEO."  Notice, Exs. 3, 3-1.

Masimo argues, without support, that the certification was somehow a departure from the "standard certification language."  Notice at 1–2.  Masimo misunderstands the purpose of certifications provided for with respect to Section 337 exclusion orders.  The ITC often includes certification provisions in its exclusion orders, just as it did for the LEO in this case.  *See* LEO at 3, ¶ 4.  Such provisions generally authorize CBP to permit an importer to certify that articles being imported are not subject to an exclusion order.  The certifications provide CBP with clarity on what is being imported, and they assist with CBP's exclusion order enforcement efforts.  And that is exactly what Apple's certification did by identifying what Apple would and would not be importing in future shipments.  *See* Notice, Ex. 3-1.

Contrary to Masimo's argument, nowhere in the emails did "Apple's counsel agree[] that it could not sign the standard certification and that supplementary language was required." Notice at 2, citing Ex. 1 at 1.  Rather, the cited email from Apple's outside counsel states that, "as requested" by CBP personnel, "[w]e will prepare a draft certification that supplements the language provided with specific details regarding future importations…"  Notice, Ex. 1. (email of March 13, 2025 at 9:59 PM); *see also* Notice, Ex. 1 at 4 ("At your earliest convenience, could you please send us the language you would like us to review for the certification we discussed?").

Masimo also points to portions of Mr. Terrill's communications regarding the description of the redesigned watches as evidence that CBP and Apple agreed that the shipment would be excluded under the January 2025 ruling.  Notice at 2-3.  But Masimo takes the statements out of context.  Mr. Terrill was simply confirming his understanding of Apple's intentions for purposes of drafting the certification.  Notice, Ex. 1 at 2-3 ("To confirm our prior discussion and Apple's representations that will be reflected in the supplemented certification, my understanding is that . . .").

It is hardly surprising that Apple and Mr. Terrill described the redesigned watch as having been "found to be subject to the exclusion order in the [January 2025] Ruling" considering that the certification also concerned Apple's importation of watches from the January 2024 ruling (Notice, Ex. 3-1).  Regardless of how Mr. Terrill described the redesigned watches, nowhere in the emails did Mr. Terrill indicate how CBP would apply the January 2025 ruling to Apple's test shipment or tell Apple that the question had already been decided.  *See* Notice, Exs. 1–5.  Instead, consistent with Mr. Terrill's and Apple's counsel's representations to the Court, the emails reflect that the communications were limited to the logistics of the

shipment and to providing clarity for CBP so that it could distinguish Apple's test shipment from its other shipments.  Hearing Tr. at 18:17–20:10, 41:15-42:17, 97:15–98:13; Notice, Exs. 1–5. The question of how CBP would treat actual shipments of just the redesigned watches was ultimately decided in the August 2025 ruling, which was issued in response to a request for internal advice from CBP personnel at the port.

While Masimo wrongly argues that CBP defied 19 C.F.R. § 177.12 by issuing the August 2025 ruling, that regulation only applies when CBP modifies or revokes a prior ruling.  19 C.F.R. § 177.12.  CBP's August 2025 ruling did neither.  CBP's January 2025 ruling stated that "the Redesign 2 Watch, when considered *alone* for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the 1276 LEO," H338254 (Jan. 7, 2025) at 35 (emphasis in original) and, consistent with that statement, CBP's August 2025 ruling letter cites the January 2025 ruling in support of the conclusion that when "imported alone, the redesigned Apple Watches are not subject to exclusion from entry and, for purposes of Section 337 administration, they are to be released since, by themselves, they do not satisfy all of the relevant claim limitations and therefore cannot directly infringe the asserted patent claims."  H351038 (Aug. 1, 2025) at 16.

Therefore, Masimo is wrong that in CBP's August 2025 ruling the agency "reconsider[ed] its January 2025 Ruling *ex parte*, reversing its prior decision *sub silentio*, and violat[ed] the APA and due process."  Notice at 3.  Had Masimo not waited for seven months before seeking review at the U.S. International Trade Commission (ITC) of Apple's redesigned watch, it would almost certainly have had an answer by now as to whether the ITC agreed with CBP that "the Redesign 2 Watch, when considered *alone* for purposes of claim 22 of the '502 patent, is not a basis to refuse the article's entry pursuant to the 1276 LEO," H338254 at 35.  As

noted in the parties' joint status report, the ITC is now considering expedited proceedings for the very purpose of reviewing Apple's redesigned watch at Masimo's belated request.  ITC Letter, ECF No. 46-1.

There is nothing in the emails that supports Masimo's hinted allegation of outside influence, an issue that was laid to rest at the hearing on September 2.  Hearing Tr. at 64:14-18, 73:15-20; *see also* Compl. ¶¶ 59-60.  The emails between CBP and Apple are not "*ex parte* communications*,*" Notice at 1, as the matter was not in litigation, and the emails reflect nothing more than an importer sharing its importation logistics with CBP, which are routinely treated as business confidential information.  *See generally* Trade Secrets Act (18 U.S.C. § 1905), and Freedom of Information Act (FOIA), Exemption 4 (5 U.S.C. § 552(b)(4)); *see also Watkins v. United States Bureau of Customs*, 643 F.3d 1189, 1192 (9th Cir. 2011) ("'Making entry' consists of providing information to [CBP], including the port of entry, description of the merchandise, the quantity of merchandise, and the name and address of both the exporter and the importer. [CBP] largely maintains the confidentiality of this information because it is important that it receive accurate information from importers.").

More importantly, the argument that the communications "confirm" the Court's jurisdiction is wrong.  The Court lacks jurisdiction to hear Masimo's Administrative Procedure Act (APA) claims challenging CBP's August 2025 ruling under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), as exemplified by *Wirtgen America, Inc. v. United States*, 443 F. Supp. 3d 198 (D.D.C. 2020).  And nowhere in its complaint or in its briefing has Masimo ever suggested any other ground for this Court's jurisdiction, much less a ground that might require some sort of jurisdictional discovery.  The Court should not look for perceived "wrongs to right" through novel theories of jurisdiction that have never been raised by the parties.  *United States v.*

*Sineneng-Smith*, 590 U.S. 371, 376 (2020) (quotation omitted); *see NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) (explaining that "arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice").

Masimo insinuates that the Court could review Masimo's APA claim under some theory that CBP exceeded its legal authority. Nowhere is this argument pleaded in Masimo's papers, and our independent research shows that Masimo's argument is unsupported by law. The Supreme Court standard on post-APA *ultra vires* review is *Leedom v. Kyne*, 358 U.S. 184 (1958), *NRC v. Texas*, 605 U.S. 665, 681-82 (2025). Masimo has never suggested that this Court has jurisdiction pursuant to *Leedom v. Kyne*, and regardless, as we demonstrate below, this argument cannot serve as an excuse for Masimo to conduct roving jurisdictional discovery.

Indeed, Masimo's complaint revolves around its claims that CBP violated the APA, offering unsupported assertions that CBP acted unreasonably, or that it deprived Masimo of process to which it is not entitled, or by purportedly exceeding its statutory authority to rule on the scope of limited exclusion order. "Even if one were to" conclude that Customs exceeded its *statutory* authority—not merely its *regulatory* authority—that "statutory argument falls well shy of a meritorious *Leedom v. Kyne* claim." *Texas*, 605 U.S. at 682; *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.) (explaining that *Leedom* applies only where, among other preconditions, "the agency plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in the' *statute* that is 'clear and mandatory.'" (emphasis added) (quoting *Leedom*, 358 U.S. at 188)). Even if Masimo had alleged a *Leedom* claim or some other theory of jurisdiction, Masimo offers no rational for how this Court could order "jurisdictional discovery" in light of the emails produced.

For these reasons, and those explained in our fully briefed motion to dismiss, the Court should dismiss this case.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
EDWARD F. KENNY
MONICA TRIANA
Senior Trial Counsel
U.S. Dept. of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9230

Dated: September 22, 2025                    *Attorneys for Defendants*